No. 23-10362

_____

IN THE UNITED STATES COURT OF
APPEALS FOR THE FIFTH CIRCUIT
_____

ALLIANCE FOR HIPPOCRATIC MEDICINE, *et al.*,

*Plaintiffs-Appellees*,

v.

U.S. FOOD AND DRUG ADMINISTRATION, *et al.*,

*Defendants-Appellants,*

and

DANCO LABORATORIES, LLC,

*Intervenor-Appellant.*

_____

On Appeal from the United States District Court for the
Northern District of Texas, Amarillo Division
Case No. 2:22-cv-00223-Z, Judge Matthew J. Kacsmaryk
_____

IN SUPPORT OF PLAINTIFFS-APPELLEES
_____

**BRIEF OF *AMICI CURIAE*
WOMEN INJURED BY ABORTION\***

_____

ALLAN E. PARKER, JR.
THE JUSTICE FOUNDATION
8023 VANTAGE DRIVE
SAN ANTONIO, TEXAS 78230

*(Identities listed in Tab 1)*

## CORPORATE DISCLOSURE STATEMENT

The Justice Foundation is a non-profit public interest litigation corporation with no parent corporation and no stockholders. *Amici* Women Injured By Abortion names or initials are listed in Tab 1 of the Brief are mostly Texas individuals who suffered abortion-related physical and psychological injuries.

## NO CONTRIBUTIONS BY PARTIES TO AMICUS

No party's counsel authored this brief in whole or in part;

No party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and

No person – other than The Justice Foundation, a Texas non-profit legal services provider – contributed money that was intended to fund preparing or submitting the brief.

## SUPPLEMENTAL CERTIFICATE OF INTERESTED PARTIES

The *Amici* listed in Tab 1 are the only interested parties.


/s/ Allan E. Parker_____
Allan E. Parker, Jr.,
Lead Attorney for *Amici Curiae*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 6,782 words, according to the word count feature in Microsoft Word, excluding the part of the brief exempted by Fed. R. App. P. 32(f).  This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(7)(B)(ii) because it has been prepared in a monospaced typeface using Microsoft Word in 14 point Courier New font, and contains  lines of text.

      /s/ Allan E. Parker, Jr.      
Allan E. Parker, Jr.
Lead Attorney for *Amici Curiae*

Dated April 12, 2023

**CERTIFICATE OF SERVICE**

I certify that this document was filed electronically with the Court's CM/ECF system on April 12, 2023. Service will be effectuated by the Court's electronic notification system upon all parties and counsel of record

 /s/  Allan E. Parker, Jr.

Allan E. Parker, Jr.
Lead Counsel for *Amici Curiae*

# TABLE OF CONTENTS

CORPORATE DISCLOSURE, PARTY CONTRIBUTION STATEMENT AND SUPPLEMENTAL CERTIFICATE OF INTERESTED PERSONS ..................... ii

CERTIFICATE OF COMPLIANCE WITH RULE 32(A) ................................... iii

CERTIFICATE OF SERVICE ............................................................................ iv

TABLE OF CONTENTS ..................................................................................... v

TABLE OF AUTHORITIES ............................................................................... vi

INTEREST OF *AMICI CURIAE* WOMEN INJURED BY ABORTION ............... 1

SUMMARY OF ARGUMENT ............................................................................ 4

ARGUMENT ....................................................................................................... 5

I.    Surgical abortion is less dangerous for women and less traumatic than chemical abortion because the injury from surgical abortion does not occur in her own home, and does not involve actually seeing the aborted infant.  The stay is justified because there is a substantial threat of irreparable injury and harm to multitudes of women. This injury outweighs any harm that will result if this injunction is granted since there is less harm to other women who can obtain surgical abortions and the injunction is in the public interest ............................ 5

    A. Abortion Irreparably Injures Significant Numbers of Women, as Amici Can Show from Personal Experience and a Large Body of Scientific Evidence .. 9

    B. The Failure To Have Contact With The Physicians Increases The Risk Of Unduly Pressured, Coerced Or Forced Abortions ........................................ 18

II.   There is no harm to women if the injunction or stay is continued in effect since in addition to surgical abortions still available in states where abortion is legal, all fifty states have Safe Haven laws which eliminate all burden of parenting of an unwanted child and provide a no-abortion related, safe alternative to abortion ....................................................................................................... 20

PRAYER .......................................................................................................... 29

# TABLE OF AUTHORITIES

**Cases**

*Dobbs v. Jackson Women's Health Org*., 142 S. Ct. 2028 (2022) .............. 8, 20, 22

*Doe v. Bolton*, 410 U.S. 179 (1973)......................................................................1, 9

*Gonzales v. Carhart,* 550 U.S. 124 (2007) ..................................................... passim

*June Med. Servs. L.L.C. v. Russo*, 140 S. Ct. 2103 (2020) .......................................8

*June Medical Services, LLC v. Russo*,  140 S. Ct. 2103,  2167 (2020) .................20

*Planned Parenthood v. Casey*, 505 U.S. 833 (1992).........................................2, 25

*Planned Parenthood v. Rounds*, 686 F. 3d. 889 (Eighth Cir. 2012)......................28

*Roe v. Wade*, 410 U.S. 113 (1973).............................................................. passim

*Tex. Med. Providers Performing Abortion Services v. Lakey*, 667 F.3d 570 (5th Cir. 2012) ..................................................................................27

**Statutes**

Rev. Stat. Ann. § 13-3623.01 (2013); Ark. Code Ann. §§ 9-34-201, -202 (2013); Cal. Health & Safety Code § 1255.7 (West 2013); Cal. Penal Code § 271.5 (West 2013); Colo. Rev. Stat. § 19-3-304.5 (2013); Conn. Gen. Stat. §§ 17a-57, -58 (2012); Del. Code. Ann. tit. 16, §§ 902, 907-08 (2013); D.C. Code §§ 4-1451.01 to .08 (2013); Fla. Stat. § 383.50 (2013); Ga. Code Ann. §§ 19-10A-2 to -7 (2013) Hawaii Rev. Stat. §§ 587D-1 to -7 (2013); Idaho Code Ann. §§ 39-8201 to -8207 (2013); 325 Ill. Comp. Stat. 2/10, 2/15, 2/20, 2/27 (2013); Ind. Code § 31-34-2.5-1 (2013); Iowa Code §§ 233.1, .2 (2014); Kan. Stat. Ann. § 38-2282 (2012); Ky. Rev. Stat. Ann. §§ 216B.190, 405.075 (LexisNexis 2013); La. Child. Code Ann. arts. 1149-53 (2013); Me. Rev. Stat. tits. 17-A, § 553, 22 § 4018 (2013); Md. Code Ann. Cts. & Jud. Proc. § 5-641 (LexisNexis 2013); Mass. Gen. Laws Ch. 119, § 39 1/2 (2013); Mich. Comp. Laws §§ 712.1, .2, .3, .5, .20 (2013); Minn. Stat. §§ 145.902, 260C.139, 609.3785 (2013); Miss. Code Ann. §§ 43-15-201, - 203, -207, -209 (2013); Mo. Rev. Stat. § 210.950 (2013); Mont. Code Ann. §§ 40-6-402 to -405 (2013); Neb. Rev. Stat. § 29-121 (2012); Nev. Rev. Stat. §§ 432B.160, .630 (2013); N.H. Rev. Stat. Ann. §§ 132-A:1 to :4 (2013); N.J. Stat. Ann. §§ 30:4C-15.6 to -15.10 (West 2013); N.M. Stat. Ann. §§ 24-22-1.1, -2, -3, -8 (2013); N.Y. Penal Law §§ 260.00, .10 (McKinney 2013); N.Y. Soc. Serv. Law § 372-g (McKinney 2013); N.C. Gen. Stat. § 7B-500 (2012); N.D. Cent. Code §§ 27-20-02, 50-25.1-15 (2013); Ohio Rev. Code Ann. §§ 2151.3515, .3516, .3523 (LexisNexis 2013); Okla. Stat. tit. 10A, § 1-2-109 (2013) Or. Rev. Stat. § 418.017 (2011); 23 Pa. Cons. Stat. §§ 4306, 6502, 6504, 6507 (2013); R.I. Gen. Laws §§ 23-13.1-2, -3 (2012); S.C. Code Ann. § 63-7-40 (2012); S.D. Codified Laws §§ 25-5A-27, -31, -34 (2013); Tenn. Code Ann. §§

36-1-142, 68-11-255 (2013); Tex. Fam. Code Ann. §§ 262.301, .302 (West 2013); Utah Code Ann. §§ 62A-4a-801, -802 (LexisNexis 2013); Vt. Stat. Ann. tit. 13, § 1303 (2013); Va. Code Ann. §§ 8.01-226.5:2, 18.2-371.1, 40.1-103 (2013); Wash. Rev. Code § 13.34.360 (2013); W. Va. Code § 49-6E-1 (2013); Wis. Stat. § 48.195 (2013); Wyo. Stat. Ann. §§ 14-11-101, -102, -103, - 108 (2013) ....................................................................................................22

**Other Authorities**

A Clinicians Guide to Medical and Surgical Abortion ...........................................26

Elliott Institute, http://abortionrisks.org/index.php?title=Index .............................27

Elliott Institute: www.afterabortion.org, "*Psychological Risks: Traumatic After Effects of Abortion*" ..............................................................................................29

Management of Unintended and Abnormal Pregnancy," lists "Risk Factors for Negative Emotional Sequelae By Maureen Paul, E. Steve Lichtenberg, Lynn Borgatta, David Grimes, Phillip Stubbelfield, and Mitchell D. Creinin. (UK 2009) ...................................................................................................................26

National Safe Haven Alliance, www.nationalsafehavenalliance.org .....................22

**ATTACHMENTS:**

List of *Amici Curiae* Women Injured by Abortion………………….…..…TAB 1

### INTEREST OF *AMICI CURIAE*

### Women Injured By Abortion

*Amici Curiae* Women Injured by Abortion are mostly Texas residents[1] who were injured by their own abortions. The Supreme Court has recognized that "… *some women come to regret aborting the infant life they once created and sustained… Severe depression and loss of esteem can follow.*" *Gonzales v. Carhart,* 550 U.S. 124, at 159 (2007). The Supreme Court cited to the *Amici* Brief of Sandra Cano, the former Mary Doe of *Doe v. Bolton* and 180

---

[1] Attached as Tab 1 is the list of the initials, first names, or full names of the *Amicus Curiae* with Texas residents listed first, then the other Women Injured By Abortion. In order to protect their identities, some of the women have requested that we use initials only or first name only. Each of these women's sworn affidavits or declarations are on file at The Justice Foundation. Protecting the identity of women who have had abortions or seek abortions has been customary since *Roe v. Wade*, 410 U.S. 113 (1973) and *Doe v. Bolton*, 410 U.S. 179 (1973) with *Roe* and *Doe* both being pseudonyms. Some of the *Amici* Women Injured by Abortion also wish their names listed on behalf of or in memory of their aborted children and have supplied the names they have given to the children they aborted. Many feel it is important for their proper grieving and healing process to recognize the humanity of the child they, and those around them, undervalued and diminished by not treating as human.

1

Women Injured By Abortion some of whom are now some of the *Amici* in this case.   *Amici* are thus particularly well suited to say that easy access to under-regulated abortion does not protect them or help them; it damaged them severely.   Nor should abortionists be the only ones given standing to speak for women in court.

As early as 1992, the Supreme Court has recognized that abortion can cause "devastating psychological consequences" to some women. *Planned Parenthood v. Casey*, 505 U.S. 833 at 882, (1992).

*Amici* Women Injured by Abortion know from their personal experience that in balancing the harms, irreparable injury will occur to women if the stay below in this case is lifted.   Allowing unlimited, under-regulated access to chemical abortion will mean countless Texas women will suffer devastating psychological injuries which may last a lifetime, and a greater risk of death, as the Court below correctly found.

*Amici* Women Injured by Abortion have an interest

in informing this Court from the perspective of women
who personally have experienced abortion. They were
injured by the actions of the abortion industry which
lied to them and did not adequately represent their
interest. Their unique perspective as women injured by
abortion will aid the Court in achieving justice.

A woman's abortion experience is often a deep,
dark, and painful secret. The information being offered
to this Court by *Amici* is crucial. For years, even
decades following abortion, most women who have
experienced an abortion are still not willing to speak
publicly even when they are tormented by thoughts of
suicide, guilt, shame, nightmares, sleeplessness, and
depression. Clearly, the best information regarding
**the effect of abortion** is not from the abortionists,
but from their patients. The scientific descriptions
in the record of increased risk of chemical abortion is
important, but cannot adequately describe in human
terms the true pain and risks of abortion.

## SUMMARY OF THE ARGUMENT

### I.

Surgical abortion is less dangerous for women and less traumatic than chemical abortion because the injury from surgical abortion does not occur in her own home, and does not involve actually seeing the aborted infant. The stay is justified because there is a substantial threat of irreparable injury and harm to multitudes of women. This injury outweighs any harm that will result if this injunction is granted since there is less harm to other women who can obtain surgical abortions and the injunction is in the public interest.

### II.

There is no harm to women if the injunction or stay is continued in effect since in addition to surgical abortions still available in states where abortion is legal, all fifty states have Safe Haven laws which eliminate all burden of parenting of an unwanted child and provide a no-abortion related, safe alternative to abortion.

**ARGUMENT**

I.  **Surgical abortion is less dangerous for women and less traumatic than chemical abortion because the injury from surgical abortion does not occur in her own home, and does not involve actually seeing the aborted infant. The stay is justified because there is a substantial threat of irreparable injury and harm to multitudes of women. This injury outweighs any harm that will result if this injunction is granted since there is less harm to other women who can obtain surgical abortions and the injunction is in the public interest.**

As the judge's careful Opinion and the evidence below indicate, there is substantially more risk and trauma to women from the chemical abortion essentially unregulated protocol which the FDA has now allowed for political reasons. Women's healthcare has been sacrificed for accessibility, at the cost of safety and women's health. This ignores the fact that surgical abortion is still available in those states which have continued to keep abortion legal.

In any state where abortion is legal, women will still have access to the less dangerous, surgical abortion. In this respect, there is no irreparable harm

5

to women as a class from the unavailability of the far riskier and more emotionally damaging chemical abortion procedure.

Why is chemical abortion more dangerous and emotionally traumatic to women?  As *Amici* can testify, chemical abortion is different in that the woman becomes an abortionist, because she administers the chemicals to herself - usually in the privacy of her own home, a boyfriend's or friend's home.  The guilt that is often associated with abortion, simply because it is the taking of a "infant life" per *Gonzales v. Carhart*, at 159, 550 U.S. 124 (2007), can be compounded after the abortion by the fact that she did the abortion to herself and observed the bloody results in her home.

In addition, the abortion industry misrepresents the level of pain and the fact that what is discarded, the product of conception, is actually a human being that looks like a human baby upon expulsion from the mother's womb into her bed or her toilet.  Women have been known to state upon seeing the child in their hand, if they

6

pick-up the baby or retrieve the baby from the toilet, such things as "My God!  They lied to me.  It is a baby."

The Opinion below documents this on page 8 citing a study which shows 14% of women and girls reporting having received insufficient information about side effects, the intensity of cramping and bleeding, the next steps after expelling the aborted human life, and the potential negative emotional reactions like fear, uncertainty, sadness, regret and pain.

*Amici* are extremely grateful to the Plaintiff physicians and medical organizations in this case who have asserted proper medical protections for their patients.  Unlike the abortion industry, which misrepresents the facts about the nature and consequences of abortion to women, these medical doctors want their patients to be fully informed as to the nature and consequences of abortion.  The FDA chemical abortion protocol eliminates this informed consent for women.

*Amici* strongly support the right of these medical doctors and associations to represent their rights as

injured parties from abortion, rather than having their rights often neglected or struck down by the abortion industry which wants to make the procedure more common, more high volume, less safe and more profitable for the abortion industry. *Amici* strongly concur with the Court's decision below that Alliance for Hippocratic Medicine doctors should have third party standing on their behalf. Even with surgical abortions, there is usually no clear doctor-patient relationship between the women and their abortionist, and this problem is exacerbated by chemical abortions where they never see a doctor. Most of the time the women never see their doctor until he is performing the abortion. *See June Med. Servs. L.L.C. v. Russo*, 140 S. Ct. 2103, 2168 (2020) (Alito, J., dissenting) abrogated by *Dobbs v. Jackson Women's Health Org*., 142 S. Ct. 2028 (2022). Now the abortion doctors have created a process through chemical abortion to avoid seeing the woman at all while delegating it to non-physicians. Where is the doctor-patient relationship in this commercial transaction

8

other than the doctor that is getting the money may have a professional license?  Alliance for Hippocratic Medicine doctors do not perform abortions and their desire for safety aligns with their patients' interests unlike abortionists.  High volume, low contact, chemical abortions by pill distribution increases profits and the risk of harm and death to women.  Operation Outcry has collected 4,728 legally admissible declarations under penalty of perjury and affidavits of this incredible deception by the abortion industry which were provided to the U.S. Supreme Court in the *Dobbs* case.[2]

## A. Abortion Irreparably Injures Significant Numbers of Women, as Amici Can Show from Personal Experience and a Large Body of Scientific Evidence

Abortion severely injures significant numbers of women, as *Amici* can show from personal experience and a large body of scientific evidence.  The abortion

---

[2] *See* 4,728 testimonies of Women Injured By Abortion collected by Operation Outcry, a project of The Justice Foundation beginning in 2000 for Norma McCorvey, the "*Roe*" of *Roe v. Wade* and Sandra Cano, the "*Doe*" of *Doe v. Bolton*, as they eventually asked this Court to reverse their own cases through Rule 60 Motions.
https://www.dropbox.com/sh/p2fi4taxmrbivyz/AAAP_aenldXwXb34Ktcq_X8la?dl=0

experiences of *Amici* Women Injured by Abortion have been collected by a project of The Justice Foundation, called Operation Outcry, in the form of sworn affidavits and declarations under penalty of perjury.

The following are illustrative examples of the irreparable and personal consequences of abortion, in the women's own words. These are all Texas *Amici* women injured by abortion.  The women were asked: "*How has your abortion affected you?*"

**<u>D.K.</u>**

"I have suffered guilt and shame throughout my adult life, I have cried endless tears for the baby that I wasn't allowed to have."

**Rhonda**

"At that time in my life I had an ongoing problem with drugs.  After the abortion, my drug use escalated, I became depressed and out of control.  I felt very guilty about the abortion even though I told myself it was the right think [sic] *(hereafter grammatical errors are not corrected nor indicated by "sic", but accurately*

*reflect the women's actual written testimony)* to do.  I eventually ended up in long term rehabilitation."

**Marsha**

"Shame did want to remember what happened.  Great sadness, I didn't want anyone to know!"

**K.M.**

"It has left me with a profound sense of loss and shame.  My belief is that I committed an abortion, not had an abortion.  Although I have been through what was to be a healing retreat …  my grief remains.  My child would be 23, an adult who I am sure would enhance my life greatly as my other children do."

**Nona**

"It ruined any chance of giving birth.  As a result, I had 5 miscarriages, 3 of them tubal pregnancies, requiring emergency surgery and were very near- death experiences.  "

"The abortion industry lied to me about my baby being a blob of tissue. The abortion industry did not tell me the high risk of miscarriages and ectopic

11

pregnancies or breast cancer risks. After my abortion at age 15, I suffered 5 miscarriages, 3 of them ectopic pregnancies, very near-death experiences. I believe I also suffered with breast cancer as a result of that abortion, I had genetic testing proving I am not a carrier of the breast cancer gene.  I have suffered from several bouts of depression and attempted suicide, self-mutilation and an 18 year-long abusive marriage as an aftermath of the abortion."

**Jennifer**

"Abortion has been the most destructive and hurtful thing in my life.  I wasn't told about the many emotional consequences, I was expected to just move on. After my abortion, I felt hollow on the inside.  A part of me died that day, physically and emotionally in addition to the killing of my own baby.  Looking back I wish this "right" I had was never given in the first place.  Abortion destroyed my life for 12 years.  I had issues with severe depression, I had suicidal thoughts shortly after, I hated myself for choosing the

abortion.  It boggles my mind how people call abortion healthcare – the truth is:  abortion kills babies and hurts men and women deeply.   I have walked with this secret for so long and felt such shame and anguish over it.  I believed that I deserved to be treated badly and entered    into    dangerous    physically    abusive relationships.  I had no regard for my own life because of the abortion."

**A.G.**

"I felt guilty for a long time.  It also was a source of shame, guilt, and awkwardness between my husband and I when I was pregnant with our child.  Every time I went to the doctor I had to say how many times I had been pregnant, how many I carried to term and those I didn't why I didn't."

**K.F.**

"Not a day has passed that I have not thought about my baby.  I still pray for the baby.  I still long for this child.  I married the father and we both regret this loss.  We were told not to talk about this and we

13

have four more children.  The oldest three know and we
have expressed our sorrow to them.  The loss for us is
as if the child had been born to us."

**Trina**

"I value life more.  I am living a life of regret,
guilt and shame.  I constantly wonder what if.  I thank
God every day for His forgiveness and try to make the
very best out of what I have.  But, I continue to grieve
over my loss."

**Christine**

"I never focused on the 3 abortions for years
(about 25 years) and then after a marital separation
these memories started to come back.  I am forgiven
for the 3 abortions, and using the iud's, and the
consequences are that I am divorced, I have to
constantly work thru depression, I feel very
inadequate and empty with no real purpose in life as
a women. I know Jesus still has plans for me and I am
grateful that He cont to keep me going forward in a
beautiful life with Him."

14

**Jennifer**

"Listed above-shame, anger, guilt, fears, physical reprucussions including preterm delivery, severe depression, unhealthy relationships with men and my child. Nightmares."

**Michelle**

"It has negatively affected every relationship in my life. Anger, irritable, guilt, shame, crying, suicidal thoughts, depression, regret, nightmares, flashbacks, alcohol, drugs."

**Lynn**

"I have great remorse. I am terribly sorry I took my own child's life. I've asked God to forgive me. And I know He has, but when I started after years of ignoring what I had done, realizing that I done this horrible thing to my innocent baby, it took a while to forgive myself. I still cry at times and wonder was the baby a girl or boy."

**Debra**

"I feel like a murderer of the worst kind, a killer

15

of children, nothing worse."

**Leella**

"That was 29 years ago and it still haunts me. I have asked God to forgive me and I know he has, but I don't think I have ever been able to forgive myself. I was never able to get pregnant again. And when I see somebody that age I freak out and wonder what could have been.  Have gone thru major bouts of depression.

**L.S.**

"I was depressed and responded by intentionally getting pregnant again, just months later, to have a baby to replace the one I had killed.  As a teen, I talked to my baby in heaven and told her I was sorry. I have felt guilty and regretted my abortion for the majority of my life. Somehow my abortion made me feel unloved, and displaced. Only in the last 5 years have I forgiven myself."

**Dion**

"If it wasn't the deliverence Jesus provided for me from drug addiction, I would have done committed

suicide already. I know this because I was consumed by suicidal thoughts, if I hadn't submitted to the Lord at that time I would have succombed  to the destroyer. It breaks my heart to know of all the women in bondage right now, and I pray for their chains to be broken and to be healed by our Lord Jesus."

**Mary Lee**

"The moment I walked out the door of the abortion clinic I was different. Not only the physical pain I had but the emotional pain was so deep I didn't understand. I started drinking heavily to deaden the pain. I kept it a secret for 20 years and it ate a huge hole in my heart. Every time I saw or heard the word abortion I would cry and go into a dark depression period.  Every Year around the anniversary of my abortion I would sob uncontrollably and would be depressed for weeks."

**Shanna**

"Brought me more pain than I could ever imagine."

17

**B. The Failure To Have Contact With The Physicians Increases The Risk Of Unduly Pressured, Coerced Or Forced Abortions**

One of the factors mentioned in the decision below as grounds for staying the chemical abortion regime, is that it does not adequately screen for the risk for an unduly pressured, coerced or forced abortions. Of its Operation Outcry collected 4,728 testimonies of Women Injured By Abortion, approximately half of the women say that they were pressured by someone into having abortions. *See* FN 2. Coerced abortion is a common problem around the United States, and the FDA's new procedure make that even more likely to occur. The three most common types of forced abortions are:

- Adult parents forcing a minor teen to abort her child;

- Adult male forcing a woman to abort his child;

- Human trafficking or prostitution.

However, the FDA's approval of unsupervised abortions and mail order abortions increase the danger and risk that women may be forced into an abortion.

18

Minors have reported to *Amici* that they were pressured by their parents to take mail order abortion pills. One Texas mother has been arrested for forcing her child to take an abortion pill which will be more frequent if they can be obtained by mail.[3] Men who want their girlfriends to abort, can order mail order abortion pills and deliver it into the food or drink of their girlfriends, thus procuring an abortion to meet the man's need, not the woman's desires. This is one of the reasons why the decision below stayed the FDA regime and enforced the U.S. law against mailing or using a commercial carrier to send abortion-inducing drugs through the mail. This is good for women and prevents irreparable harm.

Justice Alito cited some of the *Amici* women's testimony in their brief in *June Medical Services, LLC v. Russo*, 140 S. Ct. 2103, 2167 (2020) Alito, J., dissenting, abrogated by *Dobbs v. Jackson Women's Health*

---

[3] https://www.lmtonline.com/local/article/laredo-police-woman-tried-forcing-teen-daughter-17880448.php

*Org.*; 142 S. Ct. 2028 (2022). *Amici* deeply appreciate the Plaintiffs and the Court below for taking into account the concerns, true health, and safety of women. *Amici* know from personal experience that the complications from abortion could take thousands of pages to describe.

**II. There is no harm to women if the injunction or stay is continued in effect since in addition to surgical abortions still available in states where abortion is legal, all fifty states have Safe Haven laws which eliminate all burden of parenting of an unwanted child and provide a no-abortion related, safe alternative to abortion**

Since 1999 a new reality with respect to the perceived burdens of parental responsibility has developed in America. In 1999, Texas passed the first "Baby Moses" or "Safe Haven" laws which eliminate the need for any pregnant woman to care for a child she does not want.

Under Texas' Safe Haven law, a woman can, after the child's birth, leave her child with no questions asked at any hospital or other emergency medical services provider. Texas will see that care is provided for

20

that child for at least 18 years.[4]  In a remarkable
social evolution that dramatically changed the law of
criminal child endangerment or abandonment, every state
now has such laws.[5]  This evolution completely

---

[4] Tex. Fam. Code Ann. §§ 262.301-302 allows a woman 60
days after birth to turn over the child to an emergency
medical services provider; a hospital; or a child-placing
agency licensed by the Department of Protective and
Regulatory Services.

[5] Ala. Code §§ 26-25-1 to -5 (2013); Alaska Stat. §§
47.10.013, .990 (2013); Ariz. Rev. Stat. Ann. § 13-
3623.01 (2013); Ark. Code Ann. §§ 9-34-201, -202 (2013);
Cal. Health & Safety Code § 1255.7 (West 2013); Cal.
Penal Code § 271.5 (West 2013); Colo. Rev. Stat. § 19-3-
304.5 (2013); Conn. Gen. Stat. §§ 17a-57, -58 (2012);
Del. Code. Ann. tit. 16, §§ 902, 907-08 (2013); D.C. Code
§§ 4-1451.01 to .08 (2013); Fla. Stat. § 383.50 (2013);
Ga. Code Ann. §§ 19-10A-2 to -7 (2013) Hawaii Rev. Stat.
§§ 587D-1 to -7 (2013); Idaho Code Ann. §§ 39-8201 to -
8207 (2013); 325 Ill. Comp. Stat. 2/10, 2/15, 2/20, 2/27
(2013); Ind. Code § 31-34-2.5-1 (2013); Iowa Code §§
233.1, .2 (2014); Kan. Stat. Ann. § 38-2282 (2012); Ky.
Rev. Stat. Ann. §§ 216B.190, 405.075 (LexisNexis 2013);
La. Child. Code Ann. arts. 1149-53 (2013); Me. Rev. Stat.
tits. 17-A, § 553, 22 § 4018 (2013); Md. Code Ann. Cts.
& Jud. Proc. § 5-641 (LexisNexis 2013); Mass. Gen. Laws
Ch. 119, § 39 1/2 (2013); Mich. Comp. Laws §§ 712.1, .2,
.3, .5, .20 (2013); Minn. Stat. §§ 145.902, 260C.139,
609.3785 (2013); Miss. Code Ann. §§ 43-15-201, - 203, -
207, -209 (2013); Mo. Rev. Stat. § 210.950 (2013); Mont.
Code Ann. §§ 40-6-402 to -405 (2013); Neb. Rev. Stat. §
29-121 (2012); Nev. Rev. Stat. §§ 432B.160, .630 (2013);
N.H. Rev. Stat. Ann. §§ 132-A:1 to :4 (2013); N.J. Stat.
Ann. §§ 30:4C-15.6 to -15.10 (West 2013); N.M. Stat. Ann.
§§ 24-22-1.1, -2, -3, -8 (2013); N.Y. Penal Law §§ 260.00,

eliminates any legal need in such states, including
Texas, for an actual abortion to eliminate the burden
of parenting. *See* National Safe Haven Alliance,
www.nationalsafehavenalliance.org. The Supreme Court in
*Dobbs* at 2259, reversal of *Roe v. Wade* remarked on the
availability of Safe Haven laws.

If a woman is unable to obtain a less dangerous
surgical abortion, or does not want one, all 50 states
will now **totally remove the burden of parenting as
soon as the baby is born.** If she cannot find an
abortionist in her area, any woman afraid that a child

---

.10 (McKinney 2013); N.Y. Soc. Serv. Law § 372-g
(McKinney 2013); N.C. Gen. Stat. § 7B-500 (2012); N.D.
Cent. Code §§ 27-20-02, 50-25.1-15 (2013); Ohio Rev. Code
Ann. §§ 2151.3515, .3516, .3523 (LexisNexis 2013); Okla.
Stat. tit. 10A, § 1-2-109 (2013) Or. Rev. Stat. § 418.017
(2011); 23 Pa. Cons. Stat. §§ 4306, 6502, 6504, 6507
(2013); R.I. Gen. Laws §§ 23-13.1-2, -3 (2012); S.C. Code
Ann. § 63-7-40 (2012); S.D. Codified Laws §§ 25-5A-27, -
31, -34 (2013); Tenn. Code Ann. §§ 36-1-142, 68-11-255
(2013); Tex. Fam. Code Ann. §§ 262.301, .302 (West 2013);
Utah Code Ann. §§ 62A-4a-801, -802 (LexisNexis 2013); Vt.
Stat. Ann. tit. 13, § 1303 (2013); Va. Code Ann. §§ 8.01-
226.5:2, 18.2-371.1, 40.1-103 (2013); Wash. Rev. Code §
13.34.360 (2013); W. Va. Code § 49-6E-1 (2013); Wis.
Stat. § 48.195 (2013); Wyo. Stat. Ann. §§ 14-11-101, -
102, -103, - 108 (2013). *See also* National Safe Haven
Alliance, www.nationalsafehavenalliance.org.

would interfere with her life in any way, can simply give the child to Texas at birth or within 60 thereafter days and she will have no impediment to her future education, lifestyle or career plans.  All "burden" of parenting has been removed as a matter of law.  Texas and all states even have programs in place to assist with the burden of medical care and nutrition for all low-income pregnant mothers and the expenses of childbirth

Now the current law in every state shifts the entire burden of parenting to the state, if the woman so desires.  Total sexual freedom for her if she chooses; total state responsibility by current law if she chooses.  *Amici* are not saying this is good or bad law, but **it is the law** in all 50 states, including Texas. These new Baby Moses' laws eliminate any burden on women to care for the children they conceive as a matter of law.  The entire burden of care, feeding, education, medicine: every financial and social obligation of parenting can now be borne by the state, at no cost to

23

the mother; thus it is less expensive than abortion.

This is quite an evolution for society and women. In *Casey*, 1992, **the states imposed by criminal law the responsibility of 18 years of child care on women.** The Court was very concerned about this impact on women. But now, all women can have full liberty from maternal responsibility after birth. Freedom from career impediments, the lifestyle choices of sexual freedom and liberty are now fully available to any woman without severely injuring herself or killing the "*infant life she once created and sustained,*" or driving over 150 miles. *See Gonzales* at 159*.*

This still leaves the significant, but vastly lessened, burden of pregnancy itself. Even under *Roe*, the Supreme Court consistently held that requiring the woman to bear the hardest part of the pregnancy (the last three months) was not an "undue burden" because it allowed bans on abortion **after viability.**[6]    Thus,

---

[6] *Roe v. Wade*, 410 U.S 113, "*If the state is interested in protecting fetal life after viability, it may go so far to proscribe abortion during that period, except when*

24

carrying a child is not irreparable injury. After viability at 24 weeks, even under *Roe* and *Casey* jurisprudence, women were already required to bear the last three months burden of pregnancy because of the "profound respect" for the human life of the child in her womb. *See Gonzales,* at 146*.* At the first moment that the state can actually remove all her burden, without killing the child, i.e. birth, Texas now does so. All States do. This shifts all the responsibility that can be safely shifted from women to society. Regardless of one's view of the social utility of such a law; it is the law in all fifty states.

All of the *Amici* Women Injured by abortion know that feeling responsible for the death of your own child can produce devastating psychological consequences. All the *Amici* women relay abortion experiences similar to these Texas women with varying consequences.

No one claims abortion is easy. Even ardent abortion

---

*it is necessary to preserve the life or health of the mother.*" At 163-65.

25

defender Justice Ginsburg agreed that abortion is "painful and difficult." *Gonzales* , *supra* at 83, n7 (Ginsburg, J., dissenting). Why? Not because a woman is removing a wart, but because abortion is killing a child. If women want freedom from parental responsibility and its burdens, abortion is no longer the only solution. With Baby Moses laws, women do not need to go through the trauma of abortion to obtain the freedom from child care responsibility.

The psychological risks are real, as an abortion textbook endorsed by the National Abortion Federation, "Management of Unintended and Abnormal Pregnancy," lists "Risk Factors for Negative Emotional Sequelae."[7] *See* also "A Clinicians Guide to Medical and Surgical Abortion," listing 14 risk factors for mental health problems after abortion, Ch. 3, p. 28-29, 1999.

Historically, as the Court below noted, Opinion at p. 61 and *passim*, the secrecy and shame involved in

---

[7] By Maureen Paul, E. Steve Lichtenberg, Lynn Borgatta, David Grimes, Phillip Stubbelfield, and Mitchell D. Creinin. (UK 2009) Table 5.4, p. 57.

abortion has prevented public disclosure of many of the
ill-effects suffered by women in the aftermath of
abortion, and – most notably – the psychological effects.
As the 5th Circuit has already acknowledged in *Tex. Med.*
*Providers Performing Abortion Services v. Lakey*, 667 F.3d
570 (5th Cir. 2012) (abortion cannot be performed in a
way that enhances women's dignity).  As the words of the
Women Injured by Abortion detailed above demonstrate,
many years– even decades – of silent suffering can occur
after abortion.  These women are often unable to share
the horror of their experience with anyone and are
tormented by their thoughts of suicide, guilt, shame,
nightmares, sleeplessness, and depression.

The most comprehensive bibliography of studies
showing abortion risks is included in Elliott Institute,
http://abortionrisks.org/index.php?title=Index.  Though
some of these studies provide background information,
most include statistically significant results linking
one or more adverse effects to abortion.  There are
hundreds of studies worldwide documenting the harm to

27

women from abortion.

As more and more women come out of the darkness, science and courts have now documented extensively that abortion has irreparable adverse psychological consequences. For example, following *Gonzales,* the Eighth Circuit has already held that adequate scientific evidence exists to support the statutorily required disclosure that **abortion increases a woman's risk for suicide and suicidal ideation.** *See Planned Parenthood v. Rounds,* 686 F. 3d. 889 (Eighth Cir. 2012) (*en banc*). After extensive scientific review, the Court rejected the abortion industry and American Psychological Association assertion that this statement was false and misleading. Money damages for all these women would be impossible to recover and pointless in repairing the guilt of causing the death of one's child.

As *Amici* know from personal experience, abortion increases the risk of depression, trauma, eating disorders and substance abuse, guilt, repressed grief, divorce and chronic relationship problems, unresolved

trauma, repeat abortions, self-punishment, and child abuse of their other children.[8]  Regardless of one's position regarding whether or not a child in the womb is a human being worthy of legal protection, clearly anyone can empathize with the grief and sorrow of a mother, as shown above, who comes to believe she has murdered her child.

---

[8]     Elliott    Institute:    www.afterabortion.org, "*Psychological Risks: Traumatic After Effects of Abortion*", with many citations.

## PRAYER

*Amici* respectfully pray this Court affirm the District Court's decision below to  issue the stay on mifepristone approval below, or issue a preliminary injunction in the alternative.

Respectfully submitted,

/s/ Allan E. Parker, Jr.

Allan E. Parker, Jr.
Lead Attorney for *Amici Curiae*
The Justice Foundation
8023 Vantage Drive, Suite 1275
San Antonio, TX 78230