No. 23-10362

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

ALLIANCE FOR HIPPOCRATIC MEDICINE; AMERICAN ASSOCIATION OF
PRO-LIFE OBSTETRICIANS & GYNECOLOGISTS; AMERICAN COLLEGE OF
PEDIATRICIANS; CHRISTIAN MEDICAL & DENTAL ASSOCIATIONS; SHAUN
JESTER, D.O.; REGINA FROST-CLARK, M.D.; TYLER JOHNSON, D.O.;
GEORGE DELGADO, M.D.,

Plaintiffs-Appellees,

v.

U.S. FOOD AND DRUG ADMINISTRATION; ROBERT M. CALIFF, Commissioner
of Food and Drugs; JANET WOODCOOK, M.D., in her official capacity as Principal
Deputy Commissioner, U.S. Food and Drug Administration; PATRIZIA
CAVAZZONI, M.D., in her official capacity as Director, Center for Drug Evaluation
and Research, U.S. Food and Drug Administration; UNITED STATES
DEPARTMENT OF HEALTH AND HUMAN SERVICES; XAVIER BECERRA,
Secretary, U.S. Department of Health and Human Services,

Defendants-Appellants,

DANCO LABORATORIES, L.L.C.,

Intervenor-Appellant.

BRIEF OF LOCAL GOVERNMENTS AS *AMICI CURIAE* IN
SUPPORT OF THE GOVERNMENT'S AND INTERVENOR'S
REQUESTS FOR A STAY PENDING APPEAL

JOSHUA A. ROSENTHAL
AADIKA SINGH
HILARY BURKE CHAN
JONATHAN B. MILLER
  *Public Rights Project*
  *490 43rd Street, Unit #115*
  *Oakland, CA 94609*
  *Counsel for Amici Curiae*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

*Alliance for Hippocratic Medicine, et al. v. U.S. Food and Drug  Administration, et al.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

<u>Plaintiffs-Appellees:</u>

Alliance for Hippocratic Medicine

American Association of Pro-Life Obstetricians &

Gynecologists American College of Pediatricians

Christian Medical & Dental Associations

Shaun Jester, D.O.

Regina Frost-Clark, M.D.

Tyler Johnson, D.O.

George Delgado, M.D.

i

Defendants-Appellants:

    U.S. Food and Drug Administration

    U.S. Department of Health and Human Services

    Robert M. Califf, M.D., in his official capacity as
    Commissioner of Food and Drugs, U.S. Food and
    Drug  Administration

    Janet Woodcock, M.D., in her official capacity as
    Principal Deputy Commissioner, U.S. Food and
    Drug  Administration

    Patrizia Cavazzoni, M.D., in her official capacity as Director,  Center
    for Drug Evaluation and Research, U.S. Food and
    Drug  Administration

    Xavier Becerra, in his official capacity as Secretary,  U.S.
    Department of Health and Human Services

Intervenor Defendant-Appellant:

    Danco Laboratories LLC

Counsel:

For plaintiffs-appellees:

    Erik Christopher Baptist
    Alliance Defending Freedom
    440 First Street NW
    Washington, DC 20001

    Christian D Stewart
    Morgan Williamson LLP
    701 S Taylor Suite 440 Lb 103
    Amarillo, TX 79101

Denise Harle
Alliance Defending Freedom
1000 Hurricane Shoals Rd., NE Ste D1100
Lawrenceville, GA 30043

Erica Steinmiller-Perdomo
Alliance Defending Freedom
440 First Street NW Suite 600
Washington, DC 20001

Erin Morrow Hawley
Alliance Defending Freedom
440 First Street NW Suite 600
Washington, DC 20001

Julie Marie Blake
Alliance Defending Freedom
44180 Riverside Pkwy
Landsdowne, VA 20176

Matthew S Bowman
Alliance Defending Freedom
440 First Street NW Suite 600
Washington, DC 20001

For defendant-appellant:

Brian M. Boynton
Leigha Simonton
Sarah E. Harrington
Michael S. Raab
Cynthia A. Barmore
Noah T. Katzen
Christopher A. Eiswerth
Daniel Schwei
Emily B. Nestler
Julie Straus Harris
Kate Talmor

For intervenor defendant-appellant Danco Laboratories

      Catherine Emily Stetson
      Hogan Lovells US LLP
      555 13th Street NW
      Washington Dc, DC 20004

      Jessica Lynn Ellsworth
      Hogan Lovells US LLP
      555 Thirteenth Street NW
      Washington, DC 20004

      Kaitlyn Golden
      Hogan Lovells US LLP
      555 13th St NW
      Washington, DC 20004

      Lynn Whipkey Mehler
      Hogan Lovells US LLP
      555 13th Street NW
      District Of Columbia, DC 20004

      Marlan Golden
      Hogan Lovells US LLP
      555 13th Street NW
      Washington, DC 20004

      Philip Katz
      Hogan Lovells
      555 Thirteenth Street NW
      Washington, DC 20004

      Ryan Patrick Brown
      Ryan Brown Attorney at Law
      1222 S Fillmore St
      Amarillo, TX 79101

<u>Amici and Counsel:</u>

The Chattanooga National Memorial for the Unborn

> Darald John Schaffer
> Samples Jennings Clem & Fields PLLC
> 130 Jordan Avenue
> Chattanooga, TN 37421

> Michael S Jennings
> Samples Jennings Clem & Fields PLLC
> 130 Jordan Drive
> Chattanooga, TN 37421

Doctors for America

> Christopher Morten
> Columbia Law School
> 435 W 116th St (Jerome Greene Hall)
> New York, NY 10027

> Thomas S Leatherbury
> Thomas S Leatherbury Law PLLC
> 1901 N Akard St
> Dallas, TX 75201

American Center for Law and Justice

> Edward Lawrence White , III
> American Center for Law & Justice
> 3001 Plymouth Road Suite 203
> Ann Arbor, MI 48105

State of Missouri

> Joshua Divine
> Office of The Missouri Attorney General
> 207 W High St Po Box 899

Jefferson City, MO 65102
Case: 23-10362 Document: 20 Page: 7 Date Filed: 04/10/2023

Human Coalition

Elissa Michelle Graves
1907 Bonanza Drivce
Sachse, TX 75048

State of Mississippi, State of Alabama, State of Alaska, State of Arkansas, State of Florida, State of Georgia, State of Idaho, State of Indiana, State of Iowa, State of Kansas, State of Louisiana, State of Kentucky, State of Montana, State of Nebraska, State of Ohio, State of Oklahoma, State of South Carolina, State of South Dakota, State of Tennessee, State of Texas, State of Utah, State of Wyoming

Justin Lee Matheny
Mississippi Attorney General Office
550 High Street Suite 1200
Jackson, MS 39205

States of New York California, Colorado, Connecticut, Delaware, Hawaii, Illinois, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, North Carolina, Oregon, Pennsylvania, Rhode Island, Washington, Wisconsin, Washington DC

Galen Sherwin
NYS Office of The Attorney General
Executive State Capital
Albany, NY 12224

Life Collective Inc

Darren L McCarty
McCarty Law PLLC
1410b W 51st Street
Austin, TX 78756

vi

Family Research Council

> Michael F Smith
> The Smith Appellate Law Firm
> 1717 Pennsylvania Ave NW Suite 1025
> Washington, DC 20006

Judicial Watch Inc

> Meredith Di Liberto
> Judicial Watch Inc
> 425 Third Street SW, Suite 800
> Washington, DC 20024

Advancing American Freedom

> John Marc Wheat
> Advancing American Freedom
> 801 Pennsylvania Ave NW Suite 930
> Washington, DC 20004

Concerned Women for America

> Mario Diaz
> Concerned Women for America
> Legal 1000 N Payne St
> Alexandria, VA 22314

Greer Donley, R. Alta Charo, I. Glenn Cohen, Marsha Cohen, Nathan Cortez, Rebecca Eisenberg, Henry Greely, George Horvath, Peter Barton Hutt, Joan Krause, Holly Fernandez Lynch, Elizabeth McCuskey, Jennifer Oliva, Jordan Paradise, Christopher Robertson, Joanna Sax, Allison Whelan, Diana Winters, Patricia Zettler

> Robert John Winson
> Covington & Burling LLP
> 1999 Avenue Of The Stars
> Los Angeles, CA 90067

Alysia Brianna Cordova
Mullin Hoard & Brown LLP
500 S Taylor Suite 800
Amarillo, TX 79101

Beth E Braiterman
Covington & Burling LLP
850 10th Street NW
Washington, DC 20001

Denise Esposito
Covington and Burling LLP
850 10th Street NW
Washington, DC 20001

Emile Katz
850 10th St NW
Washington, DC 20268

Guillaume Julian
Covington & Burling
850 Tenth Street NW
Washington, DC 20001

Julia F Post
Covington & Burling LLP
850 Tenth Street NW
Washington, DC 20001

Lewis A Grossman
Covington & Burling LLP
850 10th St., NW
Washington, DC 20268

Richard Biggs
Mullin Hoard & Brown LLP
500 S Taylor Suite 800
Amarillo, TX 79109

Robert A Long , Jr
Covington & Burling LLP
850 Tenth Street NW
Washington, DC 20001

American College of Obstetricians and Gynecologists

Molly A Meegan
ACOG
General Counsel's Office 409 12th Street SW
Washington  Washington, DC 20024

Adam Bresler Aukland-Peck
Debevoise & Plimpton LLP
66 Hudson Boulevard
New York, NY 10001

Matthew W Sherwood
McCarn & Weir
905 S. Fillmore Suite 530
Amarillo, TX 79101

Megan McGuiggan
Debevoise & Plimpton LLP
801 Pennsylvania Avenue NW Ste 500
Washington, DC 20004

Shannon Rose Selden
Debevoise & Plimpton LLP
66 Hudson Boulevard
New York, NY 10001

Susan B. Anthony Pro-Life America, Catholic Health Care
Leadership Alliance, The National Catholic Bioethics Center, Catholic
Bar Association, Catholic Benefits Association, Christ Medicus Foundation

      Murphy S Klasing
      Weycer, Kaplan, Pulaski & Zuber, P.C.
      11 Greenway Plaza Suite 1400
      Houston, TX 77046

67 Members of Congress

      Fernando M Bustos
      Bustos Law Firm PC
      P.O. Box 1980
      Lubbock, TX 79408-1980

      Carolyn McDonnell
      Americans United for Life
      1150 Connecticut Ave. NW Ste 500
      Washington, DC 20036

American Medical Association, Society of Maternal and Fetal
Medicine, American Academy of Family Physicians, American Gynecological
& Obstetrical Society, American Society for Reproductive Medicine, Council of
University Chairs of Obstetrics & Gynecology, North American Society for
Pediatric and Adolescent Gynecology, Nurse Practitioners in Women's Health,
Society of Family Planning, Society of Gynecologic Oncology, Society of
OB/GYN Hospitalists

      Adam Bresler Aukland-Peck
      Debevoise & Plimpton LLP
      66 Hudson Boulevard
      New York, NY 10001

      Matthew W Sherwood
      McCarn & Weir
      905 S. Fillmore Suite 530
      Amarillo, TX 79101

Megan McGuiggan
Debevoise & Plimpton LLP
801 Pennsylvania Avenue NW Ste 500
Washington, DC 20004

Shannon Rose Selden
Debevoise & Plimpton LLP
66 Hudson Boulevard
New York, NY 10001

Ethics and Public Policy Center

M Edward Whelan
1730 M Street NW Suite 910
Washington, DC 20036

Charles W Fillmore
The Fillmore Law Firm LLP
201 Main Street Suite 801
Fort Worth, TX 76102

H Dustin Fillmore , III
The Fillmore Law Firm LLP
201 Main Street Suite 801
Fort Worth, TX 76102

Texas Business Leaders

John Clay Sullivan
S|L Law PLLC
610 Uptown Boulevard, Suite 2000
Cedar Hill, TX 75104

Charlotte Lozier Institute

> Cristina Martinez Squiers
> Schaerr | Jaffe LLP
> 1717 K Street NW Suite 900
> Washington, DC 20006

> Gene C Schaerr
> Schaerr | Jaffe LLP
> 1717 K Street NW Suite 900
> Washington, DC 20006

Coalition For Jewish Values Healthcare Council

> Murphy S Klasing
> Weycer, Kaplan, Pulaski & Zuber, P.C.
> 11 Greenway Plaza Suite 1400
> Houston, TX 77046

State of Arizona

> Joshua Bendor
> Office of the Arizona Attorney General
> 2005 N Central Avenue
> Phoenix, AZ 85004

Objector and Counsel:

News Media Coalition

> Peter Blackmer Steffensen
> SMU Dedman School of Law
> P.O. Box 750116
> Dallas, TX 75275-0116

> */s/ Joshua A. Rosenthal*
> Joshua A. Rosenthal
> *Counsel for Amici Curiae*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................ xiv

STATEMENT OF INTEREST ............................................................ 1

SUMMARY OF ARGUMENT ............................................................ 2

ARGUMENT ........................................................................................ 4

  I.   THE GOVERNMENT IS LIKELY TO SUCCEED ON
       THE MERITS BECAUSE PLAINTIFFS DO NOT
       HAVE STANDING .................................................................. 4

     A.   Plaintiffs have not suffered an injury in fact. ..................... 4

     B.   Plaintiffs' claims are not redressable in this litigation. ...... 8

  II.  PLAINTIFFS' DELAY IN SEEKING AN INJUNCTION
       AGAINST FDA APPROVAL UNDERMINES THE
       ISSUANCE OF A PRELIMINARY INJUNCTION AS A
       MATTER OF LAW ............................................................... 10

  III.  COMPETING COURT RULINGS AND CONFUSION
       ABOUT IMPLEMENTATION OF AN IMMEDIATE
       INJUNCTION DEMONSTRATE THAT A STAY IS
       IMPERATIVE ....................................................................... 12

  IV.  THE PUBLIC INTEREST DEMANDS THE ISSUANCE
       OF A STAY .......................................................................... 13

CONCLUSION .................................................................................. 17

ADDITIONAL COUNSEL .............................................................. 18

APPENDIX A — LIST OF AMICI .................................................. 21

CERTIFICATE OF COMPLIANCE ................................................ 23

## <u>TABLE OF AUTHORITIES</u>

CASES

*Adams & Boyle, P.C. v. Slatery*,
494 F. Supp. 3d 488 (M.D. Tenn. 2020) ........................................ 6

*Alliance for Hippocratic Medicine, et al., v. U.S. Food and Drug Administration, et al.,*
No. 2:22-CV-223 (N.D. Texas Apr. 7, 2023) ................................. 7

*Benisek v. Lamone*,
138 S. Ct. 1942 (2018) ................................................................ 10

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ....................................................................... 9

*Crossover Mkt. LLC v. Newell*,
A-21-CV-00640-JRN, 2022 WL 1797359 (W.D. Tex. Jan. 12, 2022) ..................................................................................... 10

*Dobbs v. Jackson Women's Health Org.*,
142 S. Ct. 2228 (2022) .............................................................. 3, 5

*Food & Drug Admin. v. Am. Coll. of Obstetricians & Gynecologists*,
141 S. Ct. 578 (2021) ................................................................... 14

*In re Murchison*,
349 U.S. 133 (1955) ..................................................................... 15

*June Med. Services L.L.C. v. Russo*,
140 S. Ct. 2103 (2020) .................................................................. 5

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ....................................................................... 5

*Nken v. Holder*,
556 U.S. 418 (2009) ....................................................................... 4

*Planned Parenthood of Indiana & Kentucky, Inc. v. Comm'r, Indiana State Dep't of Health*,
273 F. Supp. 3d 1013 (S.D. Ind. 2017) ......................................... 6

*Roe v. Wade*,
410 U.S. 113 (1973) ....................................................................... 11

*State of Washington v. U.S. Food and Drug Admin.*,
No. 1:23-CV-3026-TOR (E.D. Wash. Apr. 7, 2023) ..................... 11

*Steel Co. v. Citizens for a Better Env't*,
523 U.S. 83 (1998) ......................................................................... 8

*Univ. of Texas v. Camenisch*,
451 U.S. 390 (1981) ....................................................................... 10

*Veasey v. Perry*,
769 F.3d 890 (5th Cir. 2014) .......................................................... 4

*West Virginia v. B.P.J.*,
598 U. S. _____ (2023) .................................................................. 11

**STATUTES**

42 U.S.C. § 1395dd .............................................................................. 7

**OTHER AUTHORITIES**

Biggs MA, Brown K, Foster DG, *Perceived abortion stigma
and psychological well-being over five years after receiving
or being denied an abortion*, PLoS ONE (15)(1), Jan. 29,
2020 ................................................................................................. 7

*Charles Alan Wright & Arthur R. Miller, et a.,* 11A Federal
Practice & Procedure § 2948.1 (3d ed., Apr. 2017 update). .......... 10

Corinne H. Rocca et al., *Emotions and decision rightness
over five years following an abortion: An examination of
decision difficulty and abortion stigma*, Social Science and
Medicine (2020) .............................................................................. 7

Elizabeth Raymond, et al., *The comparative safety of legal
induced abortion and childbirth in the United States*, Obstet
Gynecol., 215-19, (Feb. 2012),
http://unmfamilyplanning.pbworks.com/w/file/fetch/11931
2553/Raymond%2520et%2520al-
Comparative%2520Safety.pdf ....................................................... 9

# STATEMENT OF INTEREST

Over 20 years ago, the U.S. Food and Drug Administration (FDA) reviewed robust scientific evidence and determined that mifepristone is safe under the approved conditions of use. Since its approval, more than five million pregnant people in the United States have used mifepristone and a companion medication, misoprostol, to safely terminate their pregnancies. Indeed, over half of all abortions are now performed with this safe, effective medication. If allowed to take effect, the district court's order would run counter to decades of clear scientific evidence and upend legal precedent. The impacts of this order would be felt across the United States, including in *amici*'s jurisdictions, since mifepristone has legal uses in every state.

*Amici* are cities, counties, and local government entities from across the country.[1] We file this brief to highlight the shared interest and responsibility of local governments in protecting the health and safety of our residents, including access to essential healthcare such as reproductive healthcare. Some *amici* administer public health systems that depend on the availability of healthcare, including access to mifepristone. Without access to mifepristone, *amici* will bear heightened health and

---

[1] All parties have consented to the filing of this brief. No counsel for a party authored this brief in whole or in part, and no party or counsel for a party made a monetary contribution intended to fund its preparation or submission. No person other than *Amici* or *Amici*'s counsel made a monetary contribution to the preparation or submission of this brief. A list of all *Amici* is available at Appendix A.

economic costs. Restrictions on medication abortion will overburden health systems. Pregnant people who are unable to access medication abortion care in a timely manner will have worse outcomes. If denied access to mifepristone, pregnant people will undergo procedural abortion, will delay abortion care, terminate their pregnancies using alternative means that present additional risks or side effects or complication, or may be forced to carry pregnancies to term against their will.

In all instances, there will be devastating consequences for *amici*. With an increase in procedural abortions, clinics will become overwhelmed with individuals traveling to access care. Abortions that are performed later in pregnancy increase cost and risk. And medication abortions that are performed without mifepristone carry increased risk of side effects, harming *amici*'s residents and increasing the strain on local governments.

What is more, the district court's opinion is at odds with bedrock precedent governing Article III standing and the preliminary injunction standard. Putting aside the facts of the case, which are in and of themselves consequential, *amici* fear significant disruption to litigation across the country if the district court's reasoning on these issues is allowed to stand.

## SUMMARY OF ARGUMENT

Just nine months ago, the U.S. Supreme Court overruled 50 years of precedent in order to "return the issue of abortion to the people's elected representatives."

*Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2243 (2022). *Amici* local government entities do not agree with the conclusion in *Dobbs* but take the decision's words at face value. Now, the ink barely dry, that admonition rings hollow as a result of the district court's order and the threat it poses to abortion access across the country. In rewriting standing jurisprudence and overlooking other procedural infirmities in the plaintiffs' lawsuit, the decision contains many grievous errors that warrant a stay of the injunction. The outcome is an overreach of judicial authority, wrong as a matter of law, and clearly unjustified on the merits.[2]

But even if the decision below presented a closer call, the specific context of this decision, coming nearly 23 years after FDA approval of mifepristone, necessitates a stay pending appeal. There is too much uncertainty surrounding the order and too much abruptness for immediate implementation of the district court's groundless order. Thus, for the reasons that follow and for the reasons provided by the Government and Intervenor, a stay should issue immediately.

---

[2] By *amici*'s count, the district court's decision included at least seven clear errors of law. Among other things, plaintiffs lacked standing (injury in fact, causation, and redressability), the claims are time-barred, plaintiffs' failed to administratively exhaust, the FDA's decision was legally sound, a preliminary injunction is not warranted because of plaintiffs' delay, and—given the FDA's specific authority to unwind approval through its own processes—the remedy is wrong under federal law. Any of these errors would be sufficient for a stay. *Amici* local governments focus on only some of them given their particular interests at stake and that many are well-covered by parties and other *amici* in the case.

# **ARGUMENT**

In deciding a motion to stay pending appeal, the Court considers the following factors: "(1) whether the stay applicant has made a strong showing that [they are] likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Veasey v. Perry*, 769 F.3d 890, 892 (5th Cir. 2014) (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)). While the first two factors are often considered the most significant, all four factors fall in favor of the stay in these proceedings.

## I.  THE GOVERNMENT IS LIKELY TO SUCCEED ON THE MERITS BECAUSE PLAINTIFFS DO NOT HAVE STANDING

The district court clearly erred in its conclusion that the plaintiffs had standing in this suit. The decision rests on flawed logic, misconstruction of precedent, and a tortured understanding of Article III's requirements when it comes to injuries in fact and redressability. *Amici* local governments are concerned that such a precedent, if affirmed, would enable actors with no direct connection to the law or regulation to sue if they come into contact with third parties affected in some way by said regulation.

### A.  Plaintiffs have not suffered an injury in fact.

The district court's decision failed to identify harm cognizable under Article III. *First*, the court's third-party standing analysis is illogical. Plaintiffs purport to

be suing to vindicate the rights of patients. But the remedy sought in this case would restrict patients' rights, by making unavailable a medication that they would otherwise have chosen to use. That hardly fits the mold of third-party standing. *See, e.g.*, *June Med. Services L.L.C. v. Russo*, 140 S. Ct. 2103, 2118–19 (2020), *abrogated by Dobbs*, 142 S. Ct. 2228 (The Supreme Court has "generally permitted plaintiffs to assert third-party rights in cases where the enforcement of the challenged restriction against the litigant would result indirectly in the violation of third parties' right.") (internal quotation omitted).

*Second*, the district court's logic effectively eliminates the principle that "the party seeking review be himself among the injured." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 563 (1992). Instead, under the analysis of the district court, any parties would enjoy Article III standing so long as they could conjure up some downstream effect (however speculative) that might affect them at some point. Imagine, for example, that a municipality exercises eminent domain over an undeveloped parcel of land in order to build a public playground. The property owner declines to bring a Fifth Amendment takings claim. Nevertheless, a doctor who lives nearby—and opposes the construction of a park near her home—files a lawsuit asserting an unconstitutional taking. She asserts that she fears (1) the playground will lead to children being injured; (2) those injured will seek care from her; and (3) she will have to divert time and resources from other patients. That doctor's standing theory

is indistinguishable from plaintiffs' theory here. By allowing such suits to proceed, the district court's logic would not just open the standing floodgates, it would eliminate them entirely.[3]

*Third*, the district court relied upon discredited research to assert that psychological harm from abortions made these patients less likely to assert their interests in court. The court's reliance on Priscilla Coleman was clearly erroneous, as her research falls outside of the mainstream of the scientific academy and her opinions have been found to be unreliable by both state and federal courts. *See, e.g.*, *Adams & Boyle, P.C. v. Slatery*, 494 F. Supp. 3d 488, 538 (M.D. Tenn. 2020); *Planned Parenthood of Indiana & Kentucky, Inc. v. Comm'r, Indiana State Dep't of Health*, 273 F. Supp. 3d 1013, 1036 (S.D. Ind. 2017). Based upon another study, the district court made assertions about lack of informed consent. Yet that entire sample consists of anonymous blog posts on a website designed for women who regret their

---

[3] The district court's standing analysis would effectively provide doctors with an atextual exception to Article III's case-or-controversy requirements. *See* Gov't Mot. for Stay at 7 (highlighting that an "association of doctors" could "challenge the licensing of federal firearms dealers" or "allegedly inadequate highway safety standards"). But the district court's logic is not limited to claims asserted by medical professionals. Assume a school district issues a set of procedures around pupil suspensions and expulsions. No students (or their parents) challenge those procedures on due process grounds. Nevertheless, a group schoolteachers from a *neighboring* school district files a lawsuit alleging due process violations, asserting that they fear (1) more students will be suspended or expelled from the nearby school district; (2) students will then enroll in their school district; and (3) the teachers will then need to divert time and resources away from other students.

abortions. *See Alliance for Hippocratic Medicine, et al., v. U.S. Food and Drug Administration, et al.,* No. 2:22-CV-223, at 8, (N.D. Texas Apr. 7, 2023) (order granting in part plaintiffs' motion for preliminary injunction). In fact, longitudinal studies have found that people who are *denied* abortions—including access to medication abortion—are more likely to experience psychological harms.[4]

*Fourth*, to the extent the harm that plaintiffs seek to remedy is having to see less of "these types of patients," that is not cognizable. Caring for patients is what doctors do. They do not get to choose which complications they like or do not like. They may not care for the choices their patients make, but their obligation to provide care exists nonetheless. Patients may be smokers, obese, have a history of untreated disease in their families, not exercise, drink excessively or make many other choices about their lives and their health that a doctor might not agree with. But when a patient arrives seeking care, it must be provided. *See, e.g.*, 42 U.S.C. § 1395dd (requiring the provision of appropriate screening and stabilizing treatment when *any* patient arrives at an emergency department and requests treatment). To the extent plaintiffs have a religious objection to providing specific care to a particular patient,

---

[4] *See, e.g.*, Corinne H. Rocca et al., *Emotions and decision rightness over five years following an abortion: An examination of decision difficulty and abortion stigma*, Social Science and Medicine (2020); and Biggs MA, Brown K, Foster DG, *Perceived abortion stigma and psychological well-being over five years after receiving or being denied an abortion*, PLoS ONE (15)(1), Jan. 29, 2020.

the answer is not to take a sledgehammer and eliminate FDA-approval for safe and effective medicine to millions of people across the country.

### B.   Plaintiffs' claims are not redressable in this litigation.

The district court also failed to address a core component of the standing analysis—whether their claims were redressable. Redressability demands that a dispute be particular and that a remedy impact actual legal rights. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court; that is the very essence of the redressability requirement."). Here, there are two core flaws in any assessment that plaintiffs' claims are redressable.

*First,* making mifepristone unavailable will not end medication abortions—and may cause more patients to suffer complications. A two-medicine regimen comprising of mifepristone and misoprostol is the most common and effective, and least painful means of providing a medication abortion. But patients can also terminate pregnancies by taking misoprostol alone. The availability of a misoprostol-only abortion protocol undercuts plaintiffs' assertion that their "injury" can be redressed by limiting patients' access to mifepristone. Put simply: if plaintiffs prevail in this lawsuit, it will result in many more misoprostol-only medication abortions. And side effects from misoprostol-only abortions that could lead to patients seeking additional medical care are (if anything) more frequent and severe

than abortions that involve mifepristone. At bottom, the harms about which plaintiffs complain are not fairly traceable to mifepristone itself, but are connected to the small chance of complications from pregnancy termination overall. A "win" for plaintiffs in this lawsuit will therefore not redress plaintiffs' asserted "injury" of caring for patients with medication-abortion complications. To the contrary, it may exacerbate that injury. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413 (2013) (injury must be fairly traceable to the complained-of conduct).

*Second*, plaintiffs' diversion-of-resources theory is undercut by the fact that more pregnant people experience complications as a result of childbirth than those who have abortions.[5] Mifepristone is eminently safe and used by millions of people across the country. Plaintiffs may *prefer* to help patients who are experiencing complications from childbirth (or other medical issues). But that is not about diversion of resources. The removal of mifepristone from the market will not change plaintiffs' need to treat patients, nor will it reduce the number of patients experiencing pregnancy-related complications.

---

[5] *See, e.g.*, Elizabeth Raymond, et al., *The comparative safety of legal induced abortion and childbirth in the United States*, Obstet Gynecol., 215-19, (Feb. 2012), http://unmfamilyplanning.pbworks.com/w/file/fetch/119312553/Raymond%2520et%2520al-Comparative%2520Safety.pdf.

## II.    PLAINTIFFS' DELAY IN SEEKING AN INJUNCTION AGAINST FDA APPROVAL UNDERMINES THE ISSUANCE OF A PRELIMINARY INJUNCTION AS A MATTER OF LAW

*Amici* local governments regularly respond to requests for preliminary injunctions. The district court's decision creates concern about broadening the availability of this remedy beyond what Rule 65 and this Court's jurisprudence require.

*First*, the two-decades-long delay between the initial approval and this litigation should end any possibility of a preliminary injunction. Delays by plaintiffs of far shorter duration have regularly undermined their requests for preliminary relief. *See, e.g.*, *Benisek v. Lamone*, 138 S. Ct. 1942, 1944 (2018) ("a party requesting a preliminary injunction must generally show reasonable diligence"). Delays within the plaintiffs' control often eliminate the availability of this extraordinary remedy. *See Charles Alan Wright & Arthur R. Miller, et a.,* 11A Federal Practice & Procedure § 2948.1 (3d ed., Apr. 2017 update). Decisions from district courts across Texas repeatedly have reached a similar conclusion in far less extenuating circumstances. *See, e.g.*, *Crossover Mkt. LLC v. Newell*, A-21-CV-00640-JRN, 2022 WL 1797359, at 1-2 (W.D. Tex. Jan. 12, 2022) (collecting cases).

Moreover, a preliminary injunction is supposed to maintain the status quo—which, in this case, is the availability of mifepristone nationwide. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction

is merely to preserve the relative positions of the parties until a trial on the merits can be held."). Instead, plaintiffs seek to avail themselves of a change in legal circumstances—the overturning of *Roe v. Wade*—as the basis for this new relief on old government action. The complained-of harms relating to mifepristone (if they existed at all) existed long before plaintiffs instituted suit. There is nothing in the record that excuses this delay or allows for the issuance of a preliminary injunction here.[6]

*Second*, modifications to the REMS and other approvals relating to mifepristone do not open the door to claims challenging the original approval. Challenges to more recent agency decisions—such as those at issue in Washington—are appropriate and timely. *See State of Washington v. U.S. Food and Drug Admin.*, No. 1:23-CV-3026-TOR (E.D. Wash. Apr. 7, 2023) (order granting in part plaintiffs' motion for preliminary injunction). But the notion that a slight modification on a policy can re-open the entire history of related agency decisions to challenge is both contrary to logic and destabilizing. *Amici* local governments routinely make modifications and alterations to policies, some of which are

---

[6] In a recent order issued by the U.S. Supreme Court, Justice Alito (writing in dissent of the denial of a stay) noted that a lack of diligence can significantly undermine a request for emergency relief. *West Virginia v. B.P.J.*, 598 U. S. \_\_\_\_ (2023), No. 22A800 ("And it is a wise rule in general that a litigant whose claim of urgency is belied by its own conduct should not expect discretionary emergency relief from a court.") (Alito, J., dissenting).

longstanding. The most-recent amendment does not reopen all of those prior decisions to review.

### III.   COMPETING COURT RULINGS AND CONFUSION ABOUT IMPLEMENTATION OF AN IMMEDIATE INJUNCTION DEMONSTRATE THAT A STAY IS IMPERATIVE

Local governments and their public health systems must now account for this disruptive ruling that raises complex questions around implementation. The confusion is significant. Last week—and for almost 23 years prior—the availability of mifepristone was assured. Next week, access may be disrupted. But maybe not, given that there is a conflicting decision from a federal court in Washington that commands the FDA to preserve the status quo on mifepristone–at least in the 17 states that are party to that lawsuit and the District of Columbia.

Beside the point that the FDA may be unable to comply with both orders, questions are already proliferating. Will access to mifepristone remain intact in some states and not others? In those 17 states that are party to the Washington case, and those with overlapping health systems (state, county, city, federal, tribal), will anything change at all for their residents' access to the drug? What about when their residents (physicians, pharmacists) prescribe or dispense mifepristone to residents traveling from the other 33 states not party to the Washington case?

In those 33 states: can doses of mifepristone that have already been acquired be dispensed? Can licensed and certified physicians prescribe and administer

mifepristone for non-abortion purposes, such as for managing miscarriages? Can providers and pharmacists refer for mifepristone/medication abortion interstate, sending patients to the 17 states where access is presumably protected by the Washington order?[7] A negative or unclear answer to any one of these questions may cause some local governments to radically alter staff and other resources on a dime—without knowing for how long—on the basis of the district court's order. Other local governments will change nothing. Others still may risk harming their residents and their health and social services systems out of an abundance of caution to comply with the order. No matter the choices, there will be significant uncertainty, confusion, and inconsistency. FDA's drug regulatory regime is designed to be national in scope. Failing to issue a stay here will result in incongruous implementation.

## IV.    THE PUBLIC INTEREST DEMANDS THE ISSUANCE OF A STAY

*Amici* rely on the courts as neutral arbiters of disputes—both large and small—covering a range of matters from employment to property to torts and contracts. We frequently litigate as both plaintiffs and defendants in courts, including the federal courts. Most of our cases do not receive significant attention,

---

[7] Among other questions, providers have inquired whether FDA's approval of mifepristone for Cushing's disease allows for off-label prescribing for abortion. Off-label prescriptions are generally permissible, when supported by scientific data, under state licensure regimes.

but they are important to us and the litigants, and to our broader communities. Having a court system that has public confidence is crucial to allowing us to conduct our business and resolve our disputes. The district court's raw exercise of power where plaintiffs lack standing to invoke such power undermines confidence in the federal court system. For at least three reasons, a stay is required to ensure a considered and complete review of that flawed decision before its impacts are realized.

*First*, the district court substituted its own judgment for the considered evaluation of an expert agency, as well as an established track record of safety for mifepristone. This should be disfavored. *See, e.g.*, *Food & Drug Admin. v. Am. Coll. of Obstetricians & Gynecologists*, 141 S. Ct. 578, 579 (2021) ("[C]ourts owe significant deference to the politically accountable entities with the background, competence, and expertise to assess public health.") (Roberts, C.J., concurring) (internal citations omitted). To turn access to care on its head and to create confusion in the marketplace with an immediately implemented order, especially without the benefit of a trial and consideration of tested evidence, sows doubt as to whether the court sits as a neutral rather than yet another political actor in our constitutional system. This district court's hasty, poorly informed decision should be reversed for a host of reasons. But at the very least, it should be stayed pending further consideration of its merits. Reliance on affidavit testimony, unscientific web

postings, and spurious and discredited journal articles should not be enough to override the expert decision-making authority on food and drug safety in America.

*Second*, the selection of venue orchestrated through an eleventh-hour formulation of a corporate entity undermines confidence in the impartiality of the judiciary. Plaintiffs registered the Alliance for Hippocratic Medicine in Amarillo a mere three months before filing suit. The location of this entity—which could be nearly anywhere, but happened to be in the Texas panhandle—appears purposefully designed to create venue in a particular division of the Northern District of Texas. More specifically, it appeared to be geared toward ensuring the assignment of Judge Kacsmaryk (who has a well-known background as an anti-abortion litigator) to the case.

To be sure, all of this may fall within the bounds of what federal courts permit. But allowing a single, hand-picked judge to remove from the market a medication that has been safely used by millions undercuts confidence in the judiciary. "Justice must satisfy the appearance of justice." *In re Murchison*, 349 U.S. 133, 136 (1955). The appearance of gamesmanship in this case—combined with the legal and factual infirmities in the district court's ruling—warrant, at the very least, a stay.

*Third*, disruption in access to mifepristone will imperil the lives and health of pregnant people in our localities, causing immense harm to those individuals and to our public health, social services, and emergency medical services. Those who lose

access to mifepristone may undergo more expensive and invasive procedural abortion that requires more days off work for the procedure and recovery—potentially hundreds of miles from home. The district court's decision will exacerbate the delays and overcrowding at clinics and hospitals in jurisdictions that are already managing an influx of patients seeking care. Many who lose access to mifepristone may turn to drastic and more dangerous alternatives to ending a pregnancy. Others who are experiencing miscarriages for which mifepristone would be otherwise prescribed will lose access to that care and will need to access less effective alternatives. And others still will delay abortion care, leading to *more* complications, *worse* health outcomes, and greater strain on medical providers and local governments alike.

## <u>CONCLUSION</u>

For the foregoing reasons and for the reasons provided by the Government and Intervenor and their other *amici,* the request for an emergency stay pending appeal should be granted.

Respectfully submitted,

*/s/ Joshua A. Rosenthal*

Joshua A. Rosenthal
Aadika Singh
Hilary Burke Chan
Jonathan B. Miller
PUBLIC RIGHTS PROJECT
490 43rd Street, #115
Oakland, CA 94609
josh@publicrightsproject.org

Dated: April 11, 2023

## ADDITIONAL COUNSEL

ANNE L. MORGAN
City Attorney
P.O. Box 1546
Austin, TX 78767
*Attorney for the City of Austin, Texas*

EBONY M. THOMPSON
Acting City Solicitor
Baltimore City Department of Law
100 N. Holliday Street
Baltimore, MD 21202
*Attorney for the City of Baltimore, Maryland*

ADAM CEDERBAUM
Corporation Counsel
City Hall, Room 615
Boston, MA 02201
*Attorney for the City of Boston, Massachusetts*

JOSEPH J. KHAN
County Solicitor
55 East Court St.
Doylestown, PA 18901
*Counsel for the County of Bucks, Pennsylvania*

EMILY SMART WOERNER
City Solicitor
801 Plum Street, Room 214
Cincinnati, OH 45202
*Attorney for the City of Cincinnati, Ohio*

MARK D. GRIFFIN
Chief Legal Officer and Law Director
601 Lakeside Ave., Room 106
Cleveland, OH 44114
*Counsel for the City of Cleveland, Ohio*

ZACHARY M. KLEIN
Columbus City Attorney
77 North Front Street, 4th Floor
Columbus, OH 43215
*Attorney for the City of Columbus, Ohio*

KERRY TIPPER
City Attorney
1437 Bannock St., Room 353
Denver, CO 80202
*Counsel for the City and County of Denver, Colorado*

CHRISTIAN D. MENEFEE
County Attorney Harris
County Attorney's Office
1019 Congress St.
Houston, TX 77002
*Office of the Harris County, Texas Attorney*

DAWYN HARRISON
County Counsel
Jon Scott Kuhn
Steven De Salvo
500 W. Temple Street
Los Angeles, CA 90012
*Attorneys for the County of Los Angeles, California*

MICHAEL R. HAAS
City Attorney
210 Martin Luther King Jr. Blvd.
Room 401
Madison, WI 53703
*Attorney for the City of Madison,
Wisconsin*

MARGARET C. DAUN
Corporation Counsel
901 North 9th St., Room 303
Milwaukee, WI 53233
*Counsel for Milwaukee County,
Wisconsin*

JOHN P. MARKOVS
County Attorney
Montgomery County, Maryland
101 Monroe Street, 3rd Floor
Rockville, Maryland 20850
*Attorney for Montgomery County,
Maryland*

BARBARA J. PARKER
City Attorney
Oakland City Hall
1 Frank H. Ogawa Plaza
Oakland, CA 94612
*Attorney for the City of Oakland,
California*

LAURA CONOVER
County Attorney
Pima County Attorney's Office
32 N. Stone Ave.
Tucson, AZ 85745
*Pima County Attorney*

KRYSIA KUBIAK
City Solicitor and Chief Legal
Officer
414 Grant Street
Pittsburgh, PA 15219
*Attorney for the City of
Pittsburgh, Pennsylvania*

ROBERT TAYLOR
City Attorney
1221 SW Fourth Avenue
Room 430
Portland, OR 97204
*Attorney for the City of Portland,
Oregon*

LYNDSEY M. OLSON
City Attorney
400 City Hall & Court House
15 West Kellogg Boulevard
St. Paul, MN 55102
*Attorney for the City of St. Paul,
Minnesota*

ANTHONY P. CONDOTTI,
Atchison, Barisone & Condotti
P.O. Box 481
Santa Cruz, CA 95061
*Attorney for the City of Santa
Cruz, California*

MIKE RANKIN
City Attorney
City of Tucson, Arizona
P.O. Box 27210
Tucson, AZ 85726-7210
*Attorney for City of Tucson,
Arizona*

ANDY BROWN
Travis County Judge
Office of Travis County Judge
P.O. Box 1748
Austin, Texas 78767
*Judge for Travis County, Texas*

DELIA GARZA
Travis County Attorney
P.O. Box 1748
Austin, TX 78701
*Counsel for Travis County, Texas*

ELI SAVIT
Washtenaw County Prosecuting
    Attorney
200 N. Main Street, Suite 300
Ann Arbor, MI 48107
*Washtenaw County Prosecuting
    Attorney's Office*

## APPENDIX A — LIST OF AMICI

City of Austin, Texas

City of Baltimore, Maryland

City of Birmingham, Alabama

City of Boston, Massachusetts

Bucks County, Pennsylvania

City of Cincinnati, Ohio

City of Cleveland, Ohio

City of Columbus, Ohio

City and County of Denver, Colorado

Harris County, Texas Attorney Christian Menefee

County of Los Angeles, California

City of Madison, Wisconsin

Milwaukee County, Wisconsin

City of Minneapolis, Minnesota

Montgomery County, Maryland

City of Montgomery, Alabama

City of Newark, New Jersey

City of Oakland, California

Pima County Attorney's Office, Arizona

City of Pittsburgh, Pennsylvania

City of Portland, Oregon

City of Sacramento, California

City of Santa Cruz, California

City of St. Paul, Minnesota

City of Tucson, Arizona

Travis County Judge Andy Brown

Travis County Attorney Delia Garza

Washtenaw County Prosecuting Attorney's Office

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Rule 32(a) of the Federal Rules of Appellate Procedure, Joshua A. Rosenthal, counsel of record, hereby certifies that according to the word count feature of the word processing program used to prepare this brief, the brief contains 3,851 words and complies with the typeface requirements and length limits of Rules 27, 29, and 32(a)(5)-(7) and the corresponding local rules.

<u>/s/ Joshua A. Rosenthal</u>
Joshua A. Rosenthal

Dated: April 11, 2023