Cite as: 598 U. S. ____ (2023)    1

ALITO, J., dissenting

# SUPREME COURT OF THE UNITED STATES

————

No. 22A901

————

## DANCO LABORATORIES, LLC *v.* ALLIANCE FOR HIPPOCRATIC MEDICINE, ET AL.

ON APPLICATION FOR STAY

————

No. 22A902

————

## FOOD AND DRUG ADMINISTRATION, ET AL. *v.* ALLIANCE FOR HIPPOCRATIC MEDICINE, ET AL.

ON APPLICATION FOR STAY

[April 21, 2023]

The applications for stays presented to JUSTICE ALITO and by him referred to the Court are granted. The April 7, 2023 order of the United States District Court for the Northern District of Texas, case No. 2:22–cv–223, is stayed pending disposition of the appeal in the United States Court of Appeals for the Fifth Circuit and disposition of a petition for a writ of certiorari, if such a writ is timely sought. Should certiorari be denied, this stay shall terminate automatically. In the event certiorari is granted, the stay shall terminate upon the sending down of the judgment of this Court.

JUSTICE THOMAS would deny the applications for stays.

JUSTICE ALITO, dissenting from grant of applications for stays.

In recent cases, this Court has been lambasted for staying a District Court order "based on the scanty review this Court gives matters on its shadow docket," *Merrill* v. *Milligan*, 595 U. S. ___, ___ (2022) (KAGAN, J., dissenting) (slip

op., at 2). In another, we were criticized for ruling on a stay
application while "barely bother[ing] to explain [our] con-
clusion," a disposition that was labeled as "emblematic of
too much of this Court's shadow-docket decisionmaking—
which every day becomes more unreasoned." *Whole
Woman's Health* v. *Jackson*, 594 U. S. ___, ___–___ (2021)
(KAGAN, J., dissenting from denial of application for injunc-
tive relief) (slip op., at 1–2). And in a third case in which a
stay was granted, we were condemned for not exhibiting the
"restraint" that was supposedly exercised in the past and
for not "resisting" the Government's effort to "shortcut" nor-
mal process. *Barr* v. *East Bay Sanctuary Covenant*, 588
U. S. ___, ___ (2019) (SOTOMAYOR, J., dissenting) (slip op.,
at 5). Cf. *Does 1–3* v. *Mills*, 595 U. S. ___, ___ (2021)
(BARRETT, J., concurring in denial of application for injunc-
tive relief) (slip op., at 1) (warning that the Court should
not act "on a short fuse without benefit of full briefing and
oral argument" in a case that is "first to address the ques-
tions presented").

I did not agree with these criticisms at the time, but if
they were warranted in the cases in which they were made,
they are emphatically true here. As narrowed by the Court
of Appeals, the stay that would apply if we failed to broaden
it would not remove mifepristone from the market. It would
simply restore the circumstances that existed (and that the
Government defended) from 2000 to 2016 under three Pres-
idential administrations. In addition, because the appli-
cants' Fifth Circuit appeal has been put on a fast track, with
oral argument scheduled to take place in 26 days, there is
reason to believe that they would get the relief they now
seek—from either the Court of Appeals or this Court—in
the near future if their arguments on the merits are per-
suasive.

At present, the applicants are not entitled to a stay be-
cause they have not shown that they are likely to suffer ir-
reparable harm in the interim. The applicants claim that

ALITO, J., dissenting

regulatory "chaos" would occur due to an alleged conflict be-
tween the relief awarded in these cases and the relief pro-
vided by a decision of the United States District Court for
the Eastern District of Washington.  It is not clear that
there actually is a conflict because the relief in these cases
is a stay, not an injunction, but even if there is a conflict,
that should not be given any weight.  Our granting of a stay
of a lower-court decision is an equitable remedy.  It should
not be given if the moving party has not acted equitably,
and that is the situation here.  The Food and Drug Admin-
istration (FDA) has engaged in what has become the prac-
tice of "leverag[ing]" district court injunctions "as a basis"
for implementing a desired policy while evading both nec-
essary agency procedures and judicial review.  *Arizona* v.
*City and County of San Francisco,* 596 U. S. ___, ___ (2022)
(ROBERTS, C. J., concurring) (slip op., at 2).

The Washington District Court enjoined the FDA from
altering its current practice regarding mifepristone—some-
thing that the FDA had never hinted it was contemplating.
The FDA did not appeal that appealable order, and when
seven States that might take such an appeal asked to inter-
vene, the FDA opposed their request.  This series of events
laid the foundation for the Government's regulatory "chaos"
argument.

Once this argument is put aside, the applicants' argu-
ment on irreparable harm is largely reduced to the claim
that Danco could not continue to market mifepristone be-
cause the drug would be mislabeled and that distribution
could not resume until Danco jumped through a series of
regulatory steps that would be largely perfunctory under
present circumstances.  That would not take place, how-
ever, unless the FDA elected to use its enforcement discre-
tion to stop Danco, and the applicants' papers do not pro-
vide any reason to believe the FDA would make that choice.
The FDA has previously invoked enforcement discretion to
permit the distribution of mifepristone in a way that the

regulations then in force prohibited, and here, the Government has not dispelled legitimate doubts that it would even obey an unfavorable order in these cases, much less that it would choose to take enforcement actions to which it has strong objections.

For these reasons, I would deny the stay applications. Contrary to the impression that may be held by many, that disposition would not express any view on the merits of the question whether the FDA acted lawfully in any of its actions regarding mifepristone. Rather, it would simply refuse to take a step that has not been shown as necessary to avoid the threat of any real harm during the presumably short period at issue.