No. 23-10362

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

ALLIANCE FOR HIPPOCRATIC MEDICINE, *et al.*,
*Plaintiffs-Appellees,*

v.

U.S. FOOD AND DRUG ADMINISTRATION, *et al.,*
*Defendants-Appellants*,

DANCO LABORATORIES, LLC,
*Intervenor-Defendant-Appellant.*

On Appeal from the United States District Court for the
Northern District of Texas, Case No. 2:22-cv-00223-z

## AMICUS CURIAE BRIEF OF THE AMERICAN
## CENTER FOR LAW AND JUSTICE IN SUPPORT OF
## PLAINTIFFS-APPELLEES AND URGING AFFIRMANCE

Jay Alan Sekulow
Walter M. Weber
Stuart J. Roth*
Jordan Sekulow*
Olivia F. Summers*
American Center for Law & Justice
201 Maryland Ave., NE
Washington, DC 20001
Telephone: (202) 546-8890
Facsimile:  (202) 546-9309

* Not active Fifth Circuit Bar
  members

Edward L. White III
American Center for Law & Justice
3001 Plymouth Road, Suite 203
Ann Arbor, Michigan 48105
Telephone: (734) 680-8007
Facsimile:  (734) 680-8006
ewhite@aclj.org

*Counsel for the American Center for
  Law & Justice*

Dated: May 9, 2023

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal. In addition to the persons or entities listed by the parties and other amici:

American Center for Law and Justice

Stuart J. Roth

Jay Alan Sekulow

Jordan Sekulow

Olivia F. Summers

Walter M. Weber

Edward L. White III

/s/Edward L. White III
Edward L. White III
American Center for Law & Justice
3001 Plymouth Road, Suite 203
Ann Arbor, Michigan 48105
Telephone: (734) 680-8007
Facsimile:  (734) 680-8006
ewhite@aclj.org

*Counsel for the American Center for Law & Justice*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

TABLE OF AUTHORITIES ................................................................................. iii

INTEREST OF THE AMICUS ...............................................................................1

SUMMARY OF ARGUMENT ...............................................................................2

ARGUMENT .........................................................................................................2

OLC'S DECEMBER 23, 2022 OPINION FAILS TO REFUTE THE
PLAIN TEXT FEDERAL PROHIBITION ON MAILING ABORTION
DRUGS AND DEVICES .......................................................................................2

I.      The OLC Opinion Comports with the Administration's Desire to
        Circumvent *Dobbs*. ..................................................................................2

II.     The OLC Opinion Is Legally Unpersuasive. ...........................................5

        A.      Section 1461 is not hostage to state law.......................................5

        B.      Section 1461 does not require a separate "unlawful use" element .......6

                1.  *The text supports no "unlawfulness" element*......................................6

                2.  *The cases OLC cites support no "unlawfulness" element.* ...................7

                3.  *There is thus no Congressional ratification of this nonexistent element*...............................................................16

                4.  *USPS statements do not generate an unlawfulness element.* ..............17

CONCLUSION.....................................................................................................18

CERTIFICATE OF SERVICE .............................................................................19

CERTIFICATE OF COMPLIANCE.....................................................................19

# TABLE OF AUTHORITIES

## Cases

*Albernaz v. United States*, 450 U.S. 333 (1981) ........................................................7

*Bours v. United States*, 229 F. 960 (7th Cir. 1915) ........................................ 6, 8-11

*Consumers Union of United States, Inc. v. Walker*, 145 F.2d 33 (D.C. Cir. 1944) ..........................................................................14

*Davis v. United States*, 62 F.2d 473 (6th Cir. 1933) ............................... 10-11, 14-16

*Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022) ..............2

*Lamie v. United States Trustee*, 540 U.S. 526 (2004) ...............................................6

*Poe v. Ullman*, 367 U.S. 497 (1961) ......................................................................15

*Roe v. Wade*, 410 U.S. 113 (1973) ...........................................................................2

*United States v. Nicholas*, 97 F.2d 510 (2d Cir. 1938) ................................ 13-14, 16

*United States v. One Package*, 86 F.2d 737 (2d Cir. 1936) .............................. 11-16

*Youngs Rubber Corp. v. C.I. Lee & Co.*, 45 F.2d 103 (2d Cir. 1930) ......9-11, 13-16

## Statutes

18 U.S.C. § 334 ......................................................................................................12

18 U.S.C. § 396 ......................................................................................................12

18 U.S.C. § 1461 .............................................................................................. 3-7, 17

19 U.S.C. § 1305 ....................................................................................................12

## Other Authorities

"Application of the Comstock Act to the Mailing of Prescription Drugs That Can Be Used for Abortions" (Dec. 23, 2022) .........5, 8-11, 13-16

"Attorney General Merrick B. Garland Statement on Supreme Court Ruling in Dobbs v. Jackson Women's Health Organization" (June 24, 2022)...........3

"FACT SHEET: President Biden Announces Actions In Light of Today's Supreme Court Decision on Dobbs v. Jackson Women's Health Organization" (June 24, 2022)..........................................................................3

Ed Whelan, "Unreliable OLC Opinion on Mailing of Abortion Drugs – Part 2," Bench Memos, *National Review Online* (Jan. 5, 2023) ..........................17

## INTEREST OF THE AMICUS[1]

The American Center for Law and Justice (ACLJ) is an organization dedicated to the defense of constitutional liberties secured by law, including the defense of the sanctity of human life. The ACLJ has submitted amicus briefs, *inter alia*, in a variety of abortion-related cases, including in the district court, this Court, and the Supreme Court in the present case. This ACLJ amicus brief focuses on the discrete question – addressed by the district court, Doc. 137 at 32-38, and briefly by this Court in its ruling on the motion for stay, slip op. at 40-42 (5th Cir. Apr. 12, 2023) – whether *federal law prohibits, under the Comstock Act, the mailing of abortion pills*. The Office of Legal Counsel (OLC) in December of 2022 issued an opinion contending that the pertinent federal statute does *not* forbid the mailing of abortion articles *unless* the person committing the act has *the intent that the recipient of the drugs will use them unlawfully*. This is an unwarranted construction of the relevant federal statute. Given the previously long-standing high reputation of the OLC, this amicus brief offers a detailed refutation of the OLC's arguments, showing them ultimately to be wholly inadequate.

---

[1] No counsel for any party authored this brief in whole or in part. No person or entity aside from amicus, its members, or its counsel made a monetary contribution intended to fund the preparation or submission of this brief. The parties consented to the filing of this brief.

**SUMMARY OF ARGUMENT**

The OLC argues that the federal prohibition on the mailing of abortion pills is not what it seems – that, contrary to the plain text, the statute only proscribes mailing abortion pills with "the intent that the recipient of the drugs will use them unlawfully." This argument may be understandable as an effort to support the Administration's political position. It is not, however, a persuasive legal argument. Neither the statutory text, nor the lower court cases interpreting that text, support the OLC's attempt to hobble the reach of the statutory prohibition.

**ARGUMENT**

**OLC's DECEMBER 23, 2022 OPINION FAILS TO REFUTE THE PLAIN TEXT FEDERAL PROHIBITION ON MAILING ABORTION DRUGS AND DEVICES.**

**I.    The OLC Opinion Comports with the Administration's Desire to Circumvent *Dobbs*.**

In *Roe v. Wade*, 410 U.S. 113 (1973), the Supreme Court invented a right to kill tiny human beings before birth through abortion. That decision stripped legal protection from a whole category of human beings, creating a profound violation of human rights. In *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022), the Supreme Court corrected that profound error by overruling *Roe* and restoring the ability of states (and, where within federal powers, the Congress) to protect human offspring (and their mothers) from the lethal practice of abortion.

The Biden Administration immediately and vociferously denounced *Dobbs*. "FACT SHEET: President Biden Announces Actions In Light of Today's Supreme Court Decision on Dobbs v. Jackson Women's Health Organization" (June 24, 2022).[2] The Administration pledged specifically to "protect women's access to . . . medication abortion," i.e., abortion pills. *Id.* The Department of Justice (DOJ), meanwhile, stated that it too "strongly disagree[d]" with *Dobbs*. "Attorney General Merrick B. Garland Statement on Supreme Court Ruling in Dobbs v. Jackson Women's Health Organization" (June 24, 2022).[3] The Attorney General noted in particular the DOJ's desire to "preserve access" to "medication" abortions. *Id.* The AG further noted the role of the Office of Legal Counsel (OLC) as part of the DOJ's efforts "to protect and preserve access to reproductive care." *Id.* ("Reproductive care" here is a euphemism for interrupting human reproduction by killing the growing child.)

One major obstacle to the federal government's efforts to ensure access to abortion pills, however, is a federal criminal statute, 18 U.S.C. § 1461. That statute provides, in pertinent part:

---

[2]  https://www.whitehouse.gov/briefing-room/statements-releases/2022/06/24/fact-sheet-president-biden-announces-actions-in-light-of-todays-supreme-court-decision-on-dobbs-v-jackson-womens-health-organization/

[3]   https://www.justice.gov/opa/pr/attorney-general-merrick-b-garland-statement-supreme-court-ruling-dobbs-v-jackson-women-s#:~:text=States%20may%20not%20ban%20Mifepristone,extent%20authorized%20by%20federal%20law

### § 1461. Mailing obscene or crime-inciting matter

. . .

*Every article or thing designed, adapted, or intended for producing abortion*, or for any indecent or immoral use; and

*Every article, instrument, substance, drug, medicine, or thing which is advertised or described in a manner calculated to lead another to use or apply it for producing abortion*, or for any indecent or immoral purpose;. . .

*Is declared to be nonmailable matter* and shall not be conveyed in the mails or delivered from any post office or by any letter carrier.

Whoever knowingly uses the mails for the mailing, carriage in the mails, or delivery of anything declared by this section or section 3001(e) of title 39 to be nonmailable, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, or knowingly takes any such thing from the mails for the purpose of circulating or disposing thereof, or of aiding in the circulation or disposition thereof, shall be fined under this title or imprisoned not more than five years, or both, for the first such offense, and shall be fined under this title or imprisoned not more than ten years, or both, for each such offense thereafter.
. . .

*Id.* (emphasis added). This statute makes it a federal offense to mail abortion drugs (or devices or equipment). The statute does not qualify its prohibition by adding a limiting phrase like "when unlawful under the law of the state to which it is mailed," or "except when used for [fill in the blank scenario]" or "except where a federal agency approves the drug." Rather, the prohibition is simple and complete.

In response, the DOJ's OLC on December 23, 2022, issued a legal opinion, "Application of the Comstock Act to the Mailing of Prescription Drugs That Can Be Used for Abortions" (Dec. 23, 2022)[4] purporting to create a major loophole in the statute, a loophole that largely, perhaps completely, would negate the statutory prohibition. As the OLC summarizes (p. 1):

> Section 1461 of title 18 of the U.S. Code does not prohibit the mailing of certain drugs that can be used to perform abortions where the sender lacks the intent that the recipient of the drugs will use them unlawfully. Because there are manifold ways in which recipients in every state may lawfully use such drugs, including to produce an abortion, the mere mailing of such drugs to a particular jurisdiction is an insufficient basis for concluding that the sender intends them to be used unlawfully.

In other words, the statute only would apply if the sender of the abortion pills intends the recipient to break the law – that is, some other law aside from § 1461. This rewrites the statute in the service of a pro-abortion agenda. The following analysis explains why the OLC's contortion of the statute is legally incorrect.

## II.     The OLC Opinion Is Legally Unpersuasive.

### A.     Section 1461 is not hostage to state law.

The OLC opinion goes astray right off the bat when it ties the scope of § 1461 to *state* law. As the OLC states (p. 2 n.5): "We also assume without deciding that state law, as well as federal, is relevant to the application of section 1461." This is incorrect. Nothing in § 1461 mentions or purports to incorporate state law. Indeed,

---

[4] https://www.justice.gov/olc/opinion/file/1560596/download

a federal court decision that the OLC memo itself cites and relies upon, *Bours v.*

*United States*, 229 F. 960 (7th Cir. 1915), states the contrary in so many words:

> In applying the national statute to an alleged offensive use of the mails
> at a named place, *it is immaterial what the local statutory definition of*
> *abortion is, what acts of abortion are included, or what excluded.* So
> the word "abortion" in the national statute must be taken in its general
> medical sense. Its inclusion in the statute governing the use of the mails
> indicates a national policy of discountenancing abortion as inimical to
> the national life.

*Id.* at 964 (emphasis added). The federal prohibition, in short, is not at the mercy of

state law. Whether a state outlaws or permits medication abortions is simply beside

the point.

> **B.     Section 1461 does not require a separate "unlawful use" element.**
>
> **1.  *The text supports no "unlawfulness" element.***

As noted above, there is no textual support for the OLC's argument that §

1461 only applies where someone mails abortion pills with "intent that the recipient

of the drugs will use them unlawfully." Such an element is completely absent from

the words of the statute. As the Supreme Court has said, a court should not "read an

absent word into the statute" in an effort "to soften the import of Congress' chosen

words even if we believe the words lead to a harsh outcome," *Lamie v. United States*

*Trustee*, 540 U.S. 526, 538 (2004). (Of course, protecting tiny humans from death

by abortion pill can only be considered "harsh" by those who minimize, or are

indifferent to, the killing of such children.)

That § 1461 is a criminal statute does not alter this conclusion. While the rule of lenity comes into play where a statute is ambiguous, it would not apply here. As the Supreme Court has explained:

> the touchstone of the rule of lenity is statutory ambiguity. . . . Where Congress has manifested its intention, we may not manufacture ambiguity in order to defeat that intent. Lenity thus serves only as an aid for resolving an ambiguity; it is not to be used to beget one. The rule comes into operation at the end of the process of construing what Congress has expressed, not at the beginning as an overriding consideration of being lenient to wrongdoers. In light of these principles, the rule of lenity simply has no application in this case; we are not confronted with any statutory ambiguity. To the contrary, we are presented with statutory provisions which are unambiguous on their face. . . .

*Albernaz v. United States*, 450 U.S. 333, 342-43 (1981) (internal quotation marks, citations, and paragraph break omitted).

Moreover, if there were such an element of intended unlawfulness as OLC claims, it would profoundly undercut the effectiveness of the statute (which may be OLC's goal), as many states legally allow abortion pills, and the person or business mailing the pills could always profess ignorance as to whether the pills might be used in such jurisdictions.

## 2. *The cases OLC cites support no "unlawfulness" element.*

Faced with these difficulties, the OLC memo seeks to extract an "unlawfulness" element from a set of lower court cases. These cases, however, do not read § 1461 to permit anything a state legalizes. To the contrary, these cases

7

adopt a common-sense position that (1) the abortion prohibition does not apply to efforts to save the life of the mother (or child), and (2) the contraceptive prohibition in the same statute does not apply to measures undertaken for health reasons, as opposed to birth control. That the cases treat "unlawful" as interchangeable with "not undertaken to save the life of the mother" or "done for birth control purposes" reflects the courts' construction of what is lawful to mail, or not, under § 1461.

The first of these cases OLC cites (pp. 5-6) is *Bours v. United States*, 229 F. 960 (7th Cir. 1915). That case observed that "Congress has no power to penalize or to legalize the act of producing an abortion." *Id.* at 964. Rather, Congress may exercise "the national power of controlling the mails," *id*. Because restricting the "alleged offensive use of the mails" is not dependent on "the local statutory definition of abortion," it follows that a uniform federal meaning governs: "the word 'abortion' in the national statute must be taken in its general medical sense. Its inclusion in the statute governing the use of the mails indicates a national policy of discountenancing abortion as inimical to the national life." But, the *Bours* court noted, "a reasonable construction in view of the disclosed national purpose would exclude those acts that are in the interest of the national life." *Id.* In other words, the court reasoned, the national pro-life policy on abortion embodied in this statute must be read not to disallow procedures undertaken "to save life." *Id*. As the court elaborates:

> Therefore a physician may lawfully use the mails to say that if an examination shows the *necessity of an operation to save life* he will operate, if such in truth is his real position. If he use the mails to give information that he elects, intends, is willing to perform *abortions for destroying life*, he is guilty, irrespective of whether he has expressly or impliedly bound himself to operate.

*Id.* (emphasis added). In short, the *Bours* court construed the statute not to reach life-of-the-mother or life-of-the-child situations. The court did not in any way tie this construction to "lawfulness" and in fact rejected the idea that legality under state law was in any way relevant. *Bours* does not support the OLC memo, and in fact stands in direct opposition to it with its reading of the statute to incorporate a national pro-life policy on abortion.

The next case the OLC cites (p. 6) is *Youngs Rubber Corp. v. C.I. Lee & Co.*, 45 F.2d 103 (2d Cir. 1930). That case dealt with contraceptive devices, not abortion. In *dicta* ("we do not find it necessary to decide this question in the present case," *id*. at 108), the court opined that because condoms could be used for "legitimate" purposes, such as "for the prevention of disease, or for the prevention of conception, where that is not forbidden by local law," *id*. at 107, it would be "reasonable" to construe the statute as only covering mailings to "be used for illegal contraception or abortion or for indecent or immoral purposes," *id.* at 108. The *Youngs* court used the terms "illegal," "illicit," and "immoral" interchangeably in this passage. Indeed, its reference to "illegal contraception or abortion *or* for indecent or immoral purposes" would make no sense if illegality under local law were *the* determinant of

9

whether the item was not mailable. Lest there remain any doubt, the court – immediately after the quoted passage – cited *Bours*, which, as explained above, read the statute as containing a "life" exception and not being dependent on state law. In short, *Youngs* essentially followed *Bours* in reading the statute not to proscribe "legitimate" uses, i.e., "proper medical purposes." 45 F.2d at 108. "Proper medical purposes," under *Bours* and *Youngs*, would mean to save a life with respect to abortion and for disease prevention or lawful birth control with respect to condoms. Were *lawfulness* the sole consideration, the repeated reference to immoral purposes would have been pointless.

The third case OLC cites in this line (pp. 6-7), *Davis v. United States*, 62 F.2d 473 (6th Cir. 1933), also involved condoms ("rubber sundries," *id*. at 474). *Davis*, like *Youngs*, addressed whether the possibility of "legitimate medical and surgical use [of the condoms] in treatment and prevention of disease," *id*. at 474, mattered. The court juxtaposed "legitimate use" with the "immoral or contraceptive purposes condemned by the sections involved," *id*. Answering in the affirmative, the *Davis* court quoted *Youngs* and also cited *Bours* in support of giving the statute a "reasonable construction" that would limit its scope to the "condemned purposes" (*id*. at 475) which, as quoted previously, meant "immoral or contraceptive purposes." *Davis* thus agreed with *Bours* and *Youngs* that because the items in question could have "a legitimate use," 62 F.2d at 474, the government had to prove

that the items "were to be used for condemned purposes," *id*. at 475. (As noted earlier, with respect to abortion, "condemned purposes" means "destroying life" in the womb.)

OLC next (pp. 7-9) cites *United States v. One Package*, 86 F.2d 737 (2d Cir. 1936). That case involved "vaginal pessaries" supposedly designed "for contraceptive purposes." *Id*. at 738. The case proceeded under a distinct statute – the Tariff Act of 1930, *id.* at 738 – but the *One Package* court looked to the precedents discussed above for guidance, and came to the same conclusion: the key question was whether the items were to be used for the immoral, condemned purposes or for other, legitimate purposes. The following quotations are illustrative:

> The question is whether physicians who import such articles as those involved in the present case in order to *use them for the health of their patients* are excepted by implication from the literal terms of the statute. Certainly they are excepted in the case of an *abortive* which is prescribed *to save life*, for section 305(a) of the Tariff Act only prohibits the importation of articles for causing "unlawful abortion." This was the very point decided in *Bours v. United States*, 229 F. 960 (C.C.A. 7), where a similar statute . . . was held not to cover physicians using the mails in order to say that they will operate upon a patient if an examination shows the necessity of an operation to save life. . . . In *Youngs Rubber Corporation v. C. I. Lee & Co.*, 45 F.(2d) 103 (C.C.A. 2), Judge Swan, writing for this court, construed the mailing statute in the same way. In referring to the mailing of contraceptive articles bearing the plaintiff's trade-mark, he adverted to the fact that the articles might be capable of legitimate use. . . .

> While Judge Swan's remarks were perhaps dicta, they are in full accord with the opinion of Judge Mack in *Bours* . . . and were relied on by the Court of Appeals of the Sixth Circuit when construing the mailing statute in *Davis v. United States*, 62 F.(2d) 473.

> Section 305(a) of the Tariff Act of 1930 (19 U.S.C.A. § 1305(a), as well as title 18, section 334, of the U.S. Code (18 U.S.C.A. § 334), prohibiting the mailing, and title 18, section 396 of the U.S. Code (18 U.S.C.A. § 396), prohibiting the importing or transporting in interstate commerce of articles "designed, adapted, or intended for preventing conception, or producing abortion," all originated from the so-called Comstock Act of 1873 (17 Stat. 598), which was entitled "An Act for the Suppression of Trade in, and Circulation of, obscene Literature and Articles of immoral Use." . . . All the statutes we have referred to were part of a continuous scheme to suppress *immoral* articles and obscene literature and should so far as possible be construed together and consistently. If this be done, the articles here in question ought not to be forfeited when not intended for an *immoral purpose*. Such was the interpretation in the decisions of the Circuit Courts of Appeal of the Sixth and Seventh Circuits and of this court in *Youngs Rubber Corporation v. C. I. Lee & Co*, when construing the statute forbidding an improper use of the mails.

*One Package*, 86 F.2d at 738-39 (emphasis added). Note that the court repeatedly references "immorality" which it contrasts with "abortions if used to safeguard life, and . . . articles for preventing conception . . . employed by a physician in the practice of his profession in order to protect the health of his patients or to save them from infection." *Id*. at 739. To be sure, the *One Package* court did suggest that the word "unlawful" would accurately capture that same distinction:

> It is argued that section 305(a) of the Tariff Act of 1930 (19 U.S.C.A. § 1305(a) differs from the statutes prohibiting carriage by mail and in interstate commerce of articles "intended for preventing conception or producing abortion" because in section 305(a) the adjective "unlawful" is coupled with the word "abortion," but not with the words "prevention of conception." But in the Comstock Act, from which the others are derived, the word "unlawful" was sometimes inserted to qualify the word "abortion," and sometimes omitted. It seems hard to suppose that under the second and third sections articles intended for use in

procuring abortions were prohibited in all cases while, under the first section, they were only prohibited when intended for use in an "unlawful abortion." Nor can we see why the statute should, at least in section 1, except articles for producing abortions if used to safeguard life, and bar articles for preventing conception though employed by a physician in the practice of his profession in order to protect the health of his patients or to save them from infection.

[W]e are satisfied that this statute, as well as all the acts we have referred to, *embraced only such articles as Congress would have denounced as immoral* if it had understood all the conditions under which they were to be used. Its design, in our opinion, was not to prevent the importation, sale, or carriage by mail of things which might intelligently be employed by conscientious and competent physicians for the purpose of saving life or promoting the well being of their patients. *The word "unlawful" would make this clear as to articles for producing abortion*, and the courts have read an exemption into the act covering such articles even where the word "unlawful" is not used. The same exception should apply to articles for preventing conception.

86 F.2d at 739-40 (emphasis added). Clearly, however, this equation of "unlawful" and "immoral" rested on the premise that the two were practically identical.

The *One Package* court went on to note the particular perniciousness of abortions because they "destroy incipient life," *id*. at 740. That the OLC would offer this case in support of its argument for allowing expansive destruction of such life is truly remarkable.

OLC's next case (p. 9), *United States v. Nicholas*, 97 F.2d 510 (2d Cir. 1938), involving publications about contraceptives, simply repeats the proposition that "contraconceptive articles may have lawful uses and that statutes prohibiting them should be read as forbidding them only when unlawfully employed," *id*. at 512,

citing *Youngs* and *Davis*. As already explained at length above, the term "unlawful" here means falling within the immoral purposes condemned by Congress. To take it to mean literally that the planned use must be unlawful under state law would be to jettison the substance of those cases and replace them with a few words ripped out of context.

OLC then (p. 10) cites *Consumers Union of United States, Inc. v. Walker*, 145 F.2d 33, 33 (D.C. Cir. 1944), which involved the mailing of a consumer review of contraceptive materials, *id*. at 33, "advising [readers] of the dangers involved in using some of the contrivances and some of the drugs . . ., advising them in others that the drugs and contrivances sold were not useful for the purposes described," *id*. at 36. The *Consumers Union* court declared itself "inclined to follow" the rulings in *Nicholas*, *Davis*, *Youngs*, and *One Package*, *see* 145 F.2d at 35 & n.11, "namely, that Congress did not intend to exclude from the mails properly prepared information intended for properly qualified people," *id*. at 35. The *Consumers Union* court does not say anything about imposing an element of "unlawfulness." Rather, the court holds that a "sensible construction" must apply, *id*. at 34 (internal quotation marks and citation omitted), which, as described in the cases above, means in the context of birth control that information mailed to "married" couples acting "on the advice of a physician" did not violate the statute, *id*. at 36. *Consumers Union* is thus simply

14

more of the same; it offers no support to the OLC's attempt to inject an "unlawfulness" element into the statute.

The OLC then cites (pp. 10-11) a smattering of district court cases that quote language from the federal appellate rulings discussed above. Tellingly, two of those four cases, *as quoted in the OLC's memo*, set forth the language about the statute applying where the conduct is "illegal . . . *or* indecent or immoral," a phrasing completely incompatible with the OLC's contention that illegality is the sole determinant of the statute's reach. There is no indication in the passages OLC quotes that any of these cases departed from the line of appellate decisions discussed above; such a departure would be required if the court were to adopt an "unlawfulness" element.

Along the way, OLC (p. 10) cites Justice Harlan's dissent in *Poe v. Ullman*, 367 U.S. 497 (1961), a birth control case in which the Justice notes that "judicial interpretation" in lower courts had read the federal nonmailable statute "to exclude professional medical use" of contraceptives, *id*. at 546 n.12 (Harlan, J., dissenting), citing *Youngs*, *Davis*, and *One Package*. Again, there is no mention of an "unlawfulness" element. Nor is it likely that the OLC, under the Biden Administration, endorses Justice Harlan's view, expressed on the very same page of his dissent, that states may properly ban "adultery, fornication and homosexual practices," as well as "abortion, and sterilization, or euthanasia and suicide," 367

15

U.S. at 546 (Harlan, J., dissenting). Once more, the authority the OLC cites militates *against*, not for, the OLC's position.

**3.** ***There is thus no Congressional ratification of this nonexistent element.***

OLC contends (pp. 11-15) that Congress ratified the "unlawfulness" element when it readopted or amended other parts of the statute subsequent to the court rulings detailed above. But since those rulings did not embrace an "unlawfulness" element, as explained at length in the preceding discussion, there was no such element to ratify. That various documents in the legislative history cite those cases and quote from their text simply begs the question already answered against the OLC's position above.

The OLC relies most heavily (pp. 12-13 & nn.14-15) upon the "Historical and Revision Note that was included in the 1945 report of the House Committee on the Revision of the Laws." That Note, of course, is not part of the statutory text which Congress adopted. Indeed, the OLC memo concedes (p. 12) that it was "subsequently . . . appended" to the U.S. Code entries – i.e., after the fact. Moreover, the Note simply references *Youngs*, *Nicholas*, *Davis*, and *One Package*, discussed above, and, consistent with those cases, interchangeably uses – and thus equates – such terms as "illegal . . . or for indecent or immoral purposes," "unlawful[]," "for condemned purposes," and not "legitimate" or "for proper medical purposes."

16

Notably, the OLC fails to mention that there *was* actually an attempt, in 1978, to add an unlawfulness element to the statute. Ed Whelan, "Unreliable OLC Opinion on Mailing of Abortion Drugs – Part 2," Bench Memos, *National Review Online* (Jan. 5, 2023) (point 2(d). That attempt was not successful. *Id*.

### 4. *USPS statements do not generate an unlawfulness element.*

OLC cites (p. 15) communications from the USPS that contraceptives mailed "for medicinal purposes" do not violate the statute. That is fully consonant with the discussion above and gives no warrant for importing an "unlawfulness" element as to abortion.

The OLC memo attempts to write into §1461 an "unlawfulness" element that would sharply limit the scope of that statute as to the mailing of abortion drugs. As demonstrated above, the OLC's memo is entirely unpersuasive in its efforts to derive such an element from the text, history, or judicial interpretation of that statute and its predecessors.

**CONCLUSION**

This Court should affirm the district court's ruling.

Respectfully submitted,

/s/Edward L. White III

Jay Alan Sekulow
Walter M. Weber
Stuart J. Roth*
Jordan Sekulow*
Olivia F. Summers*
American Center for Law & Justice
201 Maryland Ave., NE
Washington, DC 20001
Telephone: (202) 546-8890
Facsimile: (202) 546-9309

\* Not active Fifth Circuit Bar
  members

Edward L. White III
American Center for Law & Justice
3001 Plymouth Road, Suite 203
Ann Arbor, Michigan 48105
Telephone: (734) 680-8007
Facsimile:  (734) 680-8006
ewhite@aclj.org

*Counsel for the American Center for
  Law & Justice*

Dated: May 9, 2023

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 9, 2023, the above amicus curiae brief was filed with this Court via the CM/ECF system, which will send notice of said filing to all counsel of record.

**CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that, pursuant to Rules 29 and 32 of the Federal Rules of Appellate Procedure, the brief was prepared in Times New Roman, 14-point font and its word count is 4,522, which is no more than half of the allotted 13,000 words for Plaintiffs' response brief.

/s/ Edward L. White III
Edward L. White III
American Center for Law & Justice
3001 Plymouth Road, Suite 203
Ann Arbor, Michigan 48105
Telephone: (734) 680-8007
Facsimile:  (734) 680-8006
ewhite@aclj.org

*Counsel for the American*
*Center for Law & Justice*
