No. 23-10362

_____

IN THE UNITED STATES COURT OF
APPEALS FOR THE FIFTH CIRCUIT

_____

ALLIANCE FOR HIPPOCRATIC MEDICINE; American Association of Pro-Life
Obstetricians & Gynecologists; American College of Pediatricians; Christian
Medical & dental Associations; Shaun Jester, D.O.; Regina Frost-Clark, M.D.;
Tyler Johnson, D.O.; George Delgado, M.D.,

*Plaintiffs-Appellees*,

v.

U.S. FOOD AND DRUG ADMINISTRATION; Robert M. Califf,
Commissioner of Food and Drugs; Janet Woodcock, M.D., in her official
capacity as Principal Deputy Commissioner, U.S. Food and Drug
Administration; Patrizia Cavazzoni, M.D., in her official capacity as Director,
Center for Drug Evaluation and Research, U.S. Food and Drug Administration;
United States Department of Health and Human Services; Xavier Becerra,
Secretary, U.S. Department of Health and Human Services,

*Defendants-Appellants,*

and

DANCO LABORATORIES, L.L.C.,

*Intervenor-Appellant.*

_____

On Appeal from the United States District Court for the Northern District of
Texas, Amarillo Division
Case No. 2:22-cv-00223-Z, Judge Matthew J. Kacsmaryk

_____

**IN SUPPORT OF PLAINTIFFS-APPELLEES**

_____

_____

**BRIEF OF *AMICI CURIAE* WOMEN INJURED BY ABORTION\*; ABBY JOHNSON; DEBORAH TILDEN; AND MELINDA THYBAULT, INDIVIDUALLY AND ACTING ON BEHALF OF 539,108 SIGNERS OF THE MORAL OUTCRY PETITION**

_____

ALLAN E. PARKER, JR.
R. CLAYTON TROTTER
MARY J. BROWNING
THE JUSTICE FOUNDATION
8023 VANTAGE DRIVE
SAN ANTONIO, TEXAS 78230
*(Identities listed in Tab 1)*

## CORPORATE DISCLOSURE STATEMENT

The Justice Foundation is a non-profit public interest litigation corporation with no parent corporation and no stockholders. *Amici* Women Injured By Abortion whose names or initials are listed in Tab 1 of the Brief are women who suffered individual abortion-related physical and psychological injuries. Abby Johnson and Melinda Thybault are individuals.

## NO CONTRIBUTIONS BY PARTIES TO *AMICUS*

No party's counsel authored this brief in whole or in part;

No party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and

No person – other than The Justice Foundation, a Texas non-profit, public interest legal services provider and its donors – contributed money that was intended to fund preparing or submitting the brief.

## SUPPLEMENTAL CERTIFICATE OF INTERESTED PARTIES

The *Amici* listed in Tab 1, Abby Johnson, Deborah Tilden and Melinda Thybault are the only new interested parties.

/s/ Allan E. Parker____
Allan E. Parker, Jr.,
Lead Attorney for
*Amici Curiae*

i

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 6,374 according to the word count feature in Microsoft Word, excluding the part of the brief exempted by Fed. R. App. P. 32(f).  This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(7) because it has been prepared in a proportionally-spaced typeface using Microsoft Word in size 14 Times New Roman font.


/s/ Allan E. Parker, Jr.
Allan E. Parker, Jr.
Lead Attorney for *Amici Curiae*

Dated May 12, 2023


**CERTIFICATE OF SERVICE**

I certify that this document was filed electronically with the Court's CM/ECF system on May 12, 2023.  Service will be effectuated by the Court's electronic notification system upon all parties and counsel of record


/s/  Allan E. Parker, Jr.
Allan E. Parker, Jr.
Lead Counsel for *Amici Curiae*

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................. iii

TABLE OF AUTHORITIES.............................................................. iii

INTEREST OF *AMICI CURIAE* ..................................................... 1

- *Amici* Women Injured By Abortion.............................................. 1
- *Amicus* Abby Johnson .............................................................. 1
- *Amicus* Deborah Tilden............................................................. 3
- *Amicus* Melinda Thybault ......................................................... 3

SUMMARY OF ARGUMENT............................................................ 4

ARGUMENT ................................................................................ 5

**I.** This Decision Below Should Be Affirmed Because Surgical Abortion Is Still Available For Women And Far Less Traumatic Than Chemical Abortion. The Injury From Surgical Abortion Does Not Occur In The Woman's Own Home, And Does Not Involve Actually Seeing The Aborted Child.  The Decision Below Is Justified Because There Is A Substantial Threat Of Irreparable Injury And Harm To Multitudes Of Women. This Injury Outweighs Any Harm That Will Result If The Decision Below Is Affirmed Since There Is No Harm To Other Women Who Can Still Obtain Surgical Abortions And The Decision Is In The Public Interest ……………………………………………………..…..5

A. Women Injured By Abortion Support Third Party Standing For Doctors Supporting Regulations For Women's Safety............................................14

B. *Amici* Agree Their Pregnancies Were Not An "Illness" Or "Disease"........20

C. The Failure To Have Contact With A Physician, Along With Mail And Common Carrier Delivery, Increases The Irreparable Harm Of Unduly Pressured, Coerced Or Forced Abortions....................................20

**II.** There Is No Irreparable Harm To Women If The Stay Below Continues Because, In Addition To Surgical Abortions Still Available In States Where Abortion Is Legal, All Fifty States Now Have Safe Haven Laws Which Eliminate All Burden Of Parenting An Unwanted Child. Safe Haven Provides A Free Safety Net, An Alternative To Abortion With No Abortion Related Trauma.  .......................22

**III.** The Statutory Ban On Distribution Of Abortion-Inducing Drugs Is Textually Clear And Unambiguous.  The Plain Text Of The Statute Should Only Be Changed By Congress, The People's Elected Representatives, Not The Executive or Judicial Branch. Strict Enforcement Of That Law Is Necessary To

Prevent Even More Destructive, Unregulated Drugs From Being Distributed Without FDA Approval ….…………………………………………………...24

PRAYER ....................................................................................................26

**APPENDIX – *AMICI* WOMEN INJURED BY ABORTION**….………..…Tab 1

# TABLE OF AUTHORITIES

## Cases

*Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2028 (2022) ................. *Passim*

*Doe v. Bolton*, 410 U.S. 179 (1973) ................................................................. *Passim*

*Gonzales v. Carhart,* 550 U.S. 124 (2007) ....................................................... *Passim*

*June Med. Servs. L.L.C. v. Russo*, 140 S. Ct. 2103, 2168 (2020) ........................... 20

*Planned Parenthood v. Casey,* 505 U.S. 833, (1992) ......................................... 7, 30

*Planned Parenthood v. Rounds,* 686 F. 3d. 889 (Eighth Cir. 2012) ....................... 29

*Roe v. Wade*, 410 U.S. 113 (1973) ................................................................. *Passim*

*West Virginia v. EPA,* 577 U.S. 1126 (2016)

## Statutes

18 U.S.C. §§ 1461—1462 ...................................................................................... 10

## Other Authorities

Aid Access, https://aidaccess.org/ ...................................................................... 18

Katherine A. Rafferty and Tessa Longbons, #Abortion Changes You! A Case to Understand the Communication Tensions in Women's Medication Abortion Narratives, 36 Health Commun. 1485, 1485-94 (2021) ............................... 18

Maysoon Kahn, New York latest state to stockpile abortion-inducing pills, ASSOCIATED PRESS (APR. 11, 2023), https://apnews.com/article/new-york-abortion-pill-stockpile-b8192dee6ac02b1b3f066d6a6300a41f ...................... 31

Infant Safe Haven Laws, Child Welfare Information Gateway, www.childwelfare.gov ........................................................................ 28

LMTOnline News Article, https://www.lmtonline.com/local/article/laredo-police-woman-tried-forcing-teen-daughter-17880448.php ................................ 27

National Safe Haven Alliance, www.nationalsafehavenalliance.org ...................... 28

The Comstock Act ........................................................................................ 25

## INTEREST OF *AMICI CURIAE*

### *Amici* Women Injured By Abortion[1]

*Amici Curiae* Women Injured by Abortion are women who were injured by their own abortions. The Supreme Court has recognized that

> "While we find no reliable data to measure the phenomenon, it seems unexceptionable to conclude **some women come to regret their choice to abort the infant life they once created and sustained.** *See* Brief for Sandra Cano *et al.* as *Amici Curiae* in No. 05-380, pp. 22-24. **Severe depression and loss of esteem can follow**." (emphasis added).

*Gonzales v. Carhart*, 550 U.S. 124, at 159 (2007). The Supreme Court in *Gonzales* cited to the *Amici* Brief of Sandra Cano, the former Mary Doe of *Doe v. Bolton* and, et al., who were 180 Women Injured By Abortion. Some of those *Amici* are now part of the group of *Amici* in this case. *Amici* are thus particularly well suited to say that easy access to under-regulated abortion does not protect women or help them; it damaged *Amici* severely. Nor should abortionists be the only ones given standing to speak for women in court.

---

[1]    Attached as Appendix 1 is the list of the initials, first names, or full names of the *Amicus Curiae*. In order to protect their identities, some of the women have requested that we use initials only or first name only. Each of these women's sworn affidavits or declarations are on file at The Justice Foundation. Protecting the identity of women who have had abortions or seek abortions has been customary since *Roe v. Wade*, 410 U.S. 113 (1973) and *Doe v. Bolton*, 410 U.S. 179 (1973) with *Roe* and *Doe* both being pseudonyms. Some of the *Amici* Women Injured by Abortion also wish their names listed on behalf of, or in memory of their aborted children and have supplied the names they have given to the children they aborted. Many feel it is important for their proper grieving and healing process to recognize the humanity of the child they, and those around them, undervalued and diminished by not treating as human.

As early as 1992, the Supreme Court recognized that abortion can cause "devastating psychological consequences" to some women, as *Amici* can attest. *Planned Parenthood v. Casey*, 505 U.S. 833 at 882, (1992), overruled by *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022).

*Amici* Women Injured by Abortion know from their personal experience that, in balancing the harms and public interest, the Court must heavily weigh the irreparable injury that will occur to women if the district court stay below of the FDA approval is lifted. Allowing unlimited, mail order, under-regulated access to chemical abortion will mean countless women will suffer devastating psychological injuries which may last a lifetime, and many will suffer a risk of death, as the Court below correctly found. The scientific descriptions in the record of increased harm of chemical abortion are important, but cannot adequately describe the true pain and damage of abortion, as *Amici* can testify.

### *Amicus* Abby Johnson

*Amicus* Abby Johnson is a former volunteer and, later, an employee, of a Planned Parenthood affiliate. She experienced first a surgical abortion and second, a chemical abortion. The chemical abortion was deeply traumatizing and changed her life forever because she felt she could die, saw the baby's body, and struggled whether to flush it down the toilet. As a result, she became an advocate for surgical abortions.

After seeing a sonogram guided abortion on a live sonogram screen while working at Planned Parenthood, she began to realize that a living human being was being killed in abortion and left Planned Parenthood as an employee.

### *Amicus* Deborah Tilden

Deborah Tilden, a woman hurt by abortion, is Co-Founder of a professional consultancy, S.M.A.R.T. Women's Healthcare – Science Matters in Abortion Related Trauma, and has experience working with countless women, men, couples, and families for 20+ years in abortion healing and recovery.

*Amicus* Tilden co-founded S.M.A.R.T. Women's Healthcare – to change the narrative in the marketplace, and impact public policy with the world's best available science about abortion's risk, complications and causal links to adverse consequences.  Women deserve to be given full disclosure and informed consent of the truth about abortion's real aftermath.

### *Amicus* Melinda Thybault

*Amicus* Melinda Thybault (pronounced TEE-boe), the Founder of The Moral Outcry Petition, acting individually and on behalf of over 539,108 signers, is actively seeking to protect everyone from the harm of abortion to women and its "devastating psychological consequences," as factually recognized by the Supreme Court in *Casey, supra.*

*Amici* Melinda Thybault and her husband Denny, after raising three of their

own biological children, felt the call to adopt three additional children in danger of abortion through domestic newborn adoption. With these three little adopted ones still in the home, and after reaching menopause, Mindy and Denny "adopted" four human beings at the frozen embryo stage. The Moral Outcry Petition promotes awareness that abortion in a crime against humanity, it hurts women, and Safe Haven laws are a less damaging alternative for women.

## SUMMARY OF ARGUMENT

### I.

This Court's stay of the lower court decision should be completely lifted, and the decision below affirmed, because surgical abortion is still available for women and far less traumatic than chemical abortion. After having a chemical abortion, even *Amicus* Abby Johnson, as a Planned Parenthood employee, constantly urged women to get a surgical abortion over chemical abortion because of chemical abortion dangers and the psychological trauma of seeing her dead child in her own home, unlike surgical abortion. The decision below is justified because there is a substantial threat of irreparable injury and harm from chemical abortion to multitudes of women. This irreparable injury to the lives of women outweighs any harm that might come from less access to chemical abortion. There is no irreparable harm to other women who can still obtain surgical abortions and the decision below is in the public interest.

II.

There is no harm to women if chemical abortion pills are unavailable because, in addition to surgical abortions still available in states where abortion is legal, all fifty states now have Safe Haven laws which eliminate all burden of parenting an unwanted child. Safe Haven provides a free safety net, a readily accessible alternative to abortion, with no abortion related trauma or death. Utilizing a Safe Haven is free, unlike abortion, which is costly, and can be harmful to women, but which is certainly profitable for the abortion industry.

III.

The statutory ban on distribution of abortion-inducing drugs, 18 U.S.C. §§ 1461—1462, is textually clear and unambiguous. The statute should only be changed by Congress—the People's elected representatives—not the Executive or Judicial Branch. Strict enforcement of that law is necessary to prevent even more destructive, unregulated, abortion-inducing drugs from being distributed.

**ARGUMENT**

**I.    This Decision Below Should Be Affirmed Because Surgical Abortion Is Still Available For Women And Far Less Traumatic Than Chemical Abortion. The Injury From Surgical Abortion Does Not Occur In The Woman's Own Home, And Does Not Involve Actually Seeing The Aborted Child. The Decision Below Is Justified Because There Is A Substantial Threat Of Irreparable Injury And Harm To Multitudes Of Women. This Injury Outweighs Any Harm That Will Result If The Decision Below is Upheld, Since There Is No Harm To Other Women**

**Who Can Still Obtain Surgical Abortions And The Decision Below Is In The Public Interest.**

As both the decisions of the Motions Panel, and the evidence below indicate, there is substantially more trauma to women from the chemical abortion's essentially unregulated protocol the FDA allowed for political reasons. ROA. 4477-79. Accessibility has been the priority, at the cost of sacrificing women and girl's health and safety. The argument that women will be hurt by lack of access to chemical abortions ignores the fact that surgical abortion is still legally available in all those states which continue to keep abortion legal.

In any state where abortion remains legal, women still have access to surgical abortion. In this respect, there is no irreparable harm to women as a class from the unavailability of the far riskier and more emotionally damaging chemical abortion process.

Why is chemical abortion more dangerous and emotionally traumatic to women? Chemical abortion is different in that the woman becomes the abortionist. She administers the chemicals to herself - usually in the privacy of her own home, dormitory, a boyfriend's or friend's home. There is guilt and other emotional trauma that is often associated with abortion, simply because it is the taking of a "infant life" per *Gonzales v. Carhart*, 550 U.S. 124, at 159 (2007). This guilt and trauma can be deeply compounded after the abortion by the fact that she does the

6

abortion to herself and observes the bloody results in her home.

In addition, the abortion industry misrepresents the level of pain caused by the chemical abortion by deceptively comparing it to Ibuprofen or Tylenol, which are designed to relieve pain, not cause it. The industry also hides the fact that what is "discarded", the "product of conception", is actually a human being that looks like a baby when expelled from the mother's womb to her bed or toilet because it is a baby. Women have been known to state upon seeing the child in their hand, if they pick up the baby or retrieve the baby from the toilet, such things as "My God! They lied to me. It is a baby."

*Amici* Abby Johnson states:

"In 2000, I had a surgical abortion at an abortion facility in Houston, Texas. I was given conscious sedation during my procedure."

"In 2001, I started volunteering for Planned Parenthood. Shortly after, I had a chemical abortion. I chose a chemical abortion over a surgical abortion because I was told by the clinic staff that it would be more "natural." I was told that it would be "like having a heavy period."

"I was given the Mifepristone pill in the clinic and told that would 'stop the pregnancy.' I was told to insert 800mcg of Misoprostol vaginally 24 hours later. Within 30 minutes of inserting the Misoprostol, I began to hemorrhage and pass clots. I experienced intense cramping. I had never experienced pain so severe. Now

that I have had children, I realize that I was experiencing labor-like contractions. I began to vomit from the pain. I was passing clots the size of lemons. I remember passing my baby. I scooped my baby up in my hands and for a moment, wasn't sure what to do. No one had prepared me for that moment. I didn't expect to recognize my baby. It felt wrong to flush my baby down the toilet, but I didn't know what else to do. In the end, I dropped my child in the toilet, closed my eyes, and flushed."

"I continued to hemorrhage for hours. I didn't have enough strength to get into my bed, so I just laid on my bathroom floor. I laid there for at least 6 hours. There was a puddle of blood underneath me. Blood was everywhere. My bathroom looked like a crime scene; in a sense, it was. After all, I had made the decision to kill my child. I remember falling asleep on the floor and praying that I wouldn't die."

"I bled and passed large clots for eight weeks. The cramps were debilitating for eight weeks. It was difficult for me to work and go to class because I never knew when I would begin to cramp and pass a huge clot."

"I went back to volunteer at Planned Parenthood about three months after my abortion. I decided that my goal would be to convince every chemical abortion patient to have a surgical abortion instead. I didn't want any woman to go through what I had gone through. In my mind, I was "helping women" by protecting them

against chemical abortion. It wasn't until many years later that I realized that truly helping women means protecting not just the women, but also protecting their babies from these dangerous abortion procedures."[2]

These are further women's actual chemical abortion experiences as written in their own words:

**Katherine, "Silence Broken":**

".... I drove myself to the abortion clinic, there was no way I could have another abortion.  I hated myself!  How could I be in this situation again? Chemical abortion was my answer, they told me just take a couple of pills and the whole thing will be over.  I was given a pill to take at the clinic and sent home with pills to place internally in the comfort of my home.  What they failed to tell me was what was truly going to happen, the intense cramping, the bleeding, the large pieces of bloody tissue I would pass, the nausea, the weakness.  I thought I was going to die there all alone.  I was sure I needed medical attention but I was so afraid of the exposure of what I had done." https://www.silentnomoreawareness.org/testimonies/testimony.aspx?ID=2329

**Courtney, "Abortion Hurts …":**

".... There was definitely pressure to go through with it. I remember thinking I couldn't change my mind even if I wanted to, that it would make the staff mad. After meeting with the counselor, I was given the pill- the RU-486- to take there in the clinic. They never told me that what this pill would do is essentially starve my baby to death by cutting off its nourishment and blood- they just said it would stop my pregnancy and keep my "embryo" from becoming a baby. They made it seem as safe and easy as taking a Tylenol. They then gave me a second pill (Cytotec) to take the next day.

---

[2] Quoted from *Amicus* email to counsel.

They didn't tell me the reason for it was to induce strong contractions to expel my baby's corpse- they just told me it was necessary to ensure my abortion was successful. I took the second pill while laying on my bed, expecting some mild menstrual cramps as they had told me.

That's not what it was at all-I experienced very intense, painful cramps as my body expelled my baby's body into the toilet. My baby was disposed of in a toilet. A toilet. I wish so much now that I would've taken the remains of that precious little body and buried it.

This abortion was even harder on me than the surgical abortion in some ways. With this abortion, I felt like I aided in the murder of my child. I didn't just make the decision to let a doctor do it- I actually was engaged in the process. It definitely increased my sense of responsibility. I was told a pill was "easier and safer" than a surgical abortion; it's not …."
https://www.silentnomoreawareness.org/testimonies/testimony.aspx?ID=2256

**Patricia, "Everything the Doctor Told Me Was a Lie"**

"…. After being given the different abortion options, I decided on the "abortion pill" which at the time I viewed as an "easy way out."

One week later, I returned to planned parenthood and spoke with the clinic doctor, where he confirmed that I wanted to take the pills, and explained the process of how they work, and how they would affect my body. He told me that there was nothing to worry about, that I would have "some bleeding, and possibly clotting", and that complications resulting from pills were rare, I believed him.

The next day, at home alone with my infant son, I took the abortion pills. Within one hour I knew that everything the doctor had told me was a lie. I was bleeding so heavily, I believed I was dying. I was passing clots the size of baseballs, and I was in the worst physical pain of my life, worse than childbirth. The worst part of my experience was when I was sitting on the toilet and I felt myself pass a clot that felt strange. I looked into the toilet and saw my baby. It had a head, body, and tiny arms and legs. The shame and guilt that I

10

felt at that moment, as I was forced to flush my aborted baby down the toilet, is impossible to describe. …

About 3 weeks later, I woke up from a nap covered in blood, and still bleeding. I rushed to the ER where I was informed that my body had not passed all of my former pregnancy. A doctor used several giant q-tips to scrape my insides, and I had weekly visits to my OBGYN after that to confirm that my HCG levels were steadily going down….”
https://www.silentnomoreawareness.org/testimonies/testimony.aspx?ID=4202

**Elizabeth G:**

I finally took the first medication in order to leave the office. . . I left the office and went home where the rest of the abortion took place. I was given no follow up treatment, counseling, appointments or care.

I took the second pill at home the next day. The cramping and the bleeding was far worse than I had imagined. There was so much pain and blood that I thought I might die. I locked myself in the bathroom and stayed on the toilet for over an hour as blood poured out. I wondered if I would bleed to death on the bathroom floor. The cramping was intolerable. I tried hot pads and pain-relieving medication but nothing relieved the severe pain.

But the worst part was when I passed the gestational sac. The gestational sac came out whole, and I realized immediately what it was because it was unlike the blood clots that I had already passed. It was transparent yellow, about the size and shape of a tennis ball. When I picked it up, I could see the baby inside. He looked like a little gummy bear. I sat and held him and cried. Then I flushed my baby down the toilet.

The bleeding continued even after I passed the fetus. And when I took the antibiotics the clinic had given me, they made me vomit severely. No one from Planned Parenthood ever called to make sure I was okay, and I was not offered a follow-up visit.

After the abortion was over, I felt overwhelming guilt that wouldn’t

go away. I began having nightmares and became depressed. I struggled with anorexia and a series of failed and abusive relationships.

The long-lasting effects of the abortion will be with me forever. I know that my child is buried in the septic tank on my family's property, and the deep sadness I feel knowing this is intense and at times debilitating. I still have bouts of guilt, shame, and remorse that causes me to feel disconnected.

I have undergone cumulatively several years of counseling, but no amount of counseling can truly heal what chemical abortion did to me. I cannot unsee my child in my hands, or the blood coating my toilet and floor. I cannot un-flush my own child. I cannot heal the emotional pain that still follows me, over a decade later.[3]

The District Court Memorandum Opinion and Order below further documents this extreme trauma to women on page 8, ROA.4430, citing a study which shows:

"14% of women and girls reporting having received insufficient information about side effects, the intensity of cramping and bleeding, the next steps after expelling the aborted human life, and the potential negative emotional reactions like fear, uncertainty, sadness, regret and pain." *See* Katherine A. Rafferty and Tessa Longbons, #Abortion Changes You! A Case to Understand the Communication Tensions in Women's Medication Abortion Narratives, 36 Health Commun. 1485, 1485-94 (2021).

Injuries to women are also unreported because online or mail sellers encourage women to report complications as being the result of miscarriage, not

---

[3] Quoted from *Amicus* email to counsel.

abortion. For example, AidAccess.org[4], an online abortion pill distributor, sends an email when chemicals for a do-it-yourself at-home abortion are shipped. The email instructs on how to administer the different pills and what to expect. The information in the email causes grave questions regarding the under-reporting of information available about complications from do-it-yourself chemical abortions by saying:

> ". . . There are no blood tests that can show that you have taken Misoprostol, so there will be no way to prove that you tried to do an abortion. . . If you think you might have a complication you should go to a doctor immediately. You do not have to tell the medical staff that you tried to induce an abortion; if you choose, you can tell them that you think you had a spontaneous miscarriage. Doctors have the obligation to help in all cases. . . **If the process with the medicines did not work, you will need to get an aspiration procedure in a medical facility because Misoprostol slightly increases the risks of birth-defects. . ."**

There is no explanation that an "aspiration" is a surgical abortion.

The distributor encourages women not to let an actual emergency health care provider know that she is having complications from an attempted do-it-yourself, at-home chemical abortion. If there is an increase in the incidents of miscarriage, it could likely be due to the under-reporting of complications from do-it-yourself, at-home chemical abortions. This communication does not demonstrate an interest in 1) protecting women or 2) making sure valid data is available to gauge the

---

[4] *See* https://aidaccess.org/ (Email on file with *Amici* attorneys.)

efficacy of chemical abortions.    Misinformation and lack of appropriate examination of chemical abortions are red flags for the approval of the drug. Both of these factors support affirming The District Court.

## A. Women Injured By Abortion Support Third Party Standing for Doctors Supporting Regulations For Women's Safety

*Amici* are extremely grateful to the Plaintiff physicians and medical organizations in this case who have attempted to ensure proper medical protections for patients.  Unlike the abortion industry, which misrepresents the facts about the nature and consequences of abortion to women, these medical doctors want patients to be fully informed as to the nature and consequences of abortion.  The FDA chemical abortion protocol eliminates this informed consent for women as the testimonies above, and the trial record below, demonstrate.

*Amici* strongly support the right of these medical doctors and associations to represent their rights as injured parties from abortion, rather than having their rights often countermanded or struck down by the abortion industry which wants to make the procedure more high volume, less safe and more profitable for the abortion industry.  The abortionists and medication manufacturer have a conflict of interest with women seeking abortions.

*Amici* strongly concur with the district court's decision below that Alliance for Hippocratic Medicine doctors should have third party standing on their behalf. Even with surgical abortions, there is usually no real doctor patient relationship

between the women and their abortionist.  Most of the time the women never see

their doctor until he is performing the abortion. *See June Med. Servs. L.L.C. v.*

*Russo*, 140 S. Ct. 2103, 2168 (2020) (Alito, J., dissenting) abrogated by *Dobbs v.*

*Jackson Women's Health Org*., 142 S. Ct. 2028 (2022).

This problem of lack of a real doctor/patient relationship is exacerbated by

chemical abortions where they **never** see a doctor.  The FDA and abortion industry

have created a process through chemical abortion to avoid seeing the woman at all

while delegating their physician duty to non-physicians. Where is the doctor

patient relationship in this commercial transaction?  The  Alliance for Hippocratic

Medicine doctors' desire for safety aligns with their patients' interests and women

seeking abortions,  unlike abortionists.  High volume, low- or no-doctor contact

chemical abortions by pill distribution increases profits for the sellers and increases

the risk of harm and death to women.

*Amici* Women Injured by Abortion are part of Operation Outcry which has

collected 4,728 legally admissible affidavits or declarations of this incredible

deception by the abortion industry. This deception culminates in pain and injury to

women.  This collection of evidence is the largest body of direct sworn testimony

in the world about the effects of abortion on women.  It was also provided to the

U.S. Supreme Court in the *Dobbs* case.[5]

One of the questions on the sworn affidavits asked women: "Were you adequately informed of the nature and consequences of abortion?" Most say the abortion industry did not adequately inform them. *See* FN 5.

Even ardent abortion defender Justice Ginsburg agreed that abortion is "painful and difficult." *Gonzales* , *supra* at 83, n7 (Ginsburg, J., dissenting). Why? Not because a woman is removing a "piece of tissue" like a wart, but because abortion is killing an "infant life, per *Gonzales* at 159, or some say a potential life. If women want freedom from parental responsibility, abortion is no longer the only solution.   With Safe Haven laws, women do not need to go through the trauma of abortion to obtain freedom from parenting responsibility, *infra* section II.

The following are illustrative *Amici* sworn examples of the irreparable and personal consequences of abortion, in the women's own words.  The Declarations or Affidavits  asked:

"*How has your abortion affected you?*"

**Rhonda**

"At that time in my life I had an ongoing problem with drugs.  After the

---

[5]  *See* 4,728 testimonies of Women Injured By Abortion collected by Operation Outcry, a project of The Justice Foundation beginning in 2000 for Norma McCorvey, the "*Roe*" of *Roe v. Wade* and Sandra Cano, the "*Doe*" of *Doe v. Bolton*, as they eventually asked this Court (*McCorvey v. Hill*, 385 F.3d 846 (5th Cir. 2004) (*cert*. denied)) to reverse their own cases through Rule 60 Motions. https://www.dropbox.com/sh/p2fi4taxmrbivyz/AAAP_aenldXwXb34Ktcq_X8la?dl=0

abortion, my drug use escalated, I became depressed and out of control.  I felt very guilty about the abortion even though I told myself it was the right thing. I eventually ended up in long term rehabilitation."

**Nona**

"The abortion industry lied to me about my baby being a blob of tissue. The abortion industry did not tell me the high risk of miscarriages and ectopic pregnancies or breast cancer risks. After my abortion at age 15, I suffered 5 miscarriages, 3 of them ectopic pregnancies, very near-death experiences. I believe I also suffered with breast cancer as a result of that abortion, I had genetic testing proving I am not a carrier of the breast cancer gene.  I have suffered from several bouts of depression and attempted suicide, self-mutilation and an 18 year-long abusive marriage as an aftermath of the abortion."

**Jennifer**

"Abortion has been the most destructive and hurtful thing in my life.  I wasn't told about the many emotional consequences, I was expected to just move on.  After my abortion, I felt hollow on the inside.  A part of me died that day, physically and emotionally in addition to the killing of my own baby… Abortion destroyed my life for 12 years.  I had issues with severe depression, I had suicidal thoughts shortly after, I hated myself for choosing the abortion."

**Christine**

"I never focused on the 3 abortions for years (about 25 years) and then after a marital separation these memories started to come back. I am forgiven for the 3 abortions, and using the IUD's, and the consequences are that I am divorced, I have to constantly work thru depression, I feel very inadequate and empty with no real purpose in life as a woman."

**Michelle**

"It has negatively affected every relationship in my life. Anger, irritable, guilt, shame, crying, suicidal thoughts, depression, regret, nightmares, flashbacks, alcohol, drugs."

**Mary Lee**

"The moment I walked out the door of the abortion clinic I was different. Not only the physical pain I had but the emotional pain was so deep I didn't understand. I started drinking heavily to deaden the pain. I kept it a secret for 20 years and it ate a huge hole in my heart. Every time I saw or heard the word abortion I would cry and go into a dark depression period. Every Year around the anniversary of my abortion I would sob uncontrollably and would be depressed for weeks."

***Amicus* Deborah Tilden states:**

"In 1980, my choice to end the life of my unborn first child through abortion was based on the limited, and deceptive, misinformation I was given

at the abortion facility in Portland, Oregon. The same misinformation women are given today. That misinformation being: 'It's not a baby yet'; 'It's just a blob of tissue'; 'Life can get back to normal, just go home and relax for a few days, have a nice hot bubble bath'; and, 'No one has to know.'"

"I was forever changed as a woman, wife-to-be, daughter, sister, friend, and whole person the day I walked out the back alley of the abortion clinic. For years, I have asked myself, 'If the abortion clinic is such a 'healthcare' place, why do women come in the front door for their abortions, but exit out the back alley afterwards?' And, the ONLY time I saw the 'doctor' was when he came into the procedure room gowned and masked, after they had given me a sedative. All I remember after meeting him, is moments later the suction machine started, tears running down the side of my face, painful pinching as the suction machine was sucking the LIFE of my child out of my womb."[6]

In addition to emotional injuries, the chemical abortion by the FDA's own admissions will cause problems which require "emergency care" from an actual doctor. Unpublished Stay Order, Fifth Circuit, p. 12, ROA.4378 *et.al.* In addition, the Fifth Circuit *recognized* the admitted **100,000 to 350,000** injured women who have already had unsuccessful chemical abortions. These are

---

[6] Quote from *Amicus* to counsel.

irreparable damages. If only 500,000 women a year get chemical abortions, that would be 10,000 to 35,000 injured women a year. Is a procedure that requires emergency room treatment and hospitalization afterward "safe"?

In weighing the balance, irreparable injury can be avoided, especially when surgical abortion is available and Safe Haven laws in every state offer a free, non-lethal way to remove all burden of unwanted parenting. *See* Section II, *infra*. The women's injuries, documented in the evidence below, include hospital admissions for sepsis, intravenous anti-biotics, blood transfusions, IV hydrations, surgical completion of abortion, *Id*. at 13, uterine infections and "torrential bleeding." *Id.* at 14. *See* also District Court Opinion at 29. ROA. 4461 *Amici* Women Injured by Abortion say enough women's blood has already been shed. The district court reviewed the evidence of women irreparably injured by chemical abortion. ROA.4466-69.

**B.** *Amici* **Agree Their Pregnancies Were Not An "Illness" Or "Disease".**

Finally *Amici* Women strongly agree with the District Court's conclusion that **pregnancy is not a "serious or life-threatening illness**." FDA Subpart H authority. They were not ill or dying, they were just pregnant. *Id*. at ROA.4462-4463.

**C. The Failure To Have Contact With A Physician, Along With Mail And Common Carrier Delivery, Increases The Irreparable Harm Of Unduly Pressured, Coerced Or Forced Abortions**

Without physician supervision, and with mail and common carrier delivery, the FDA procedure does not adequately screen for unduly pressured, coerced or forced abortions.  Of the 4,728 Operation Outcry testimonies of Women Injured By Abortion, approximately half, or over 2,000 women, say they were pressured by someone into having an abortion.  *See* FN 6. Coerced abortion is a common problem throughout the United States, and the FDA's new procedure makes forced or coerced abortions even more likely to occur.

The FDA's approval of unsupervised abortions, mail order and internet pill abortions with postal or common carrier delivery will result in irreparable injuries to women forced into abortion.  Minors have reported to *Amici* that they were pressured by their parents to take mail order abortion pills.  One Texas mother has already been arrested for forcing her child to take an abortion pill.[7]  These events will be more frequent if abortion pills can be obtained by mail. Men who want their wives or girlfriends to abort, can simply pretend to be women, and order mail or internet abortion pills and deliver them into the food or drink of their partner. The result will be procuring an abortion to suit the man's will, not the woman's desires.

This is one of the reasons why the District Court's stay of the FDA regime,

---

[7]  https://www.lmtonline.com/local/article/laredo-police-woman-tried-forcing-teen-daughter-17880448.php

coupled with enforcing the U.S. law against mailing or using a commercial carrier to transmit abortion inducing drugs should be upheld. Stopping this abuse is good for women and girls and prevents irreparable harm.

**II.    There Is No Irreparable Harm To Women If The Stay Below Continues Because, In Addition To Surgical Abortions Still Available In States Where Abortion Is Legal, All Fifty States Now Have Safe Haven Laws Which Eliminate All Burden Of Parenting An Unwanted Child. Safe Haven Provides A Free Safety Net As An Alternative to Abortion With No Abortion Related Trauma.**

In a remarkable social evolution between 1999 and 2016, that dramatically changed the law of criminal child endangerment or abandonment, every state now has a law which eliminates all parenting obligations of every mother.  This evolution completely eliminates any need in all 50 states for an actual abortion to eliminate the burden of parenting.  *See* National Safe Haven Alliance, www.nationalsafehavenalliance.org; *see* also www.childwelfare.gov for Safe Haven laws in all fifty states.  While discussing "important policy arguments" in favor of protecting life, the Supreme Court noted "that States have increasingly adopted 'Safe Haven' laws, which generally allow women to drop off babies anonymously". *Dobbs* at 2259.

If a woman is unable to obtain a less traumatic surgical abortion, or does not want one, all 50 states now **totally remove the burden of parenting as soon as the baby is born**.  If she cannot find an abortionist in her area, any woman afraid that a child would interfere with her life in any way, can safely surrender the child

to a Safe Haven location at or after the time of birth, up to a state designated time, (usually 3, 30, 60 or 90 days) at no cost to her, unlike abortion. She will have no impediment to her future education, lifestyle or career plans. All obligations of parenting have been removed, as a matter of law. All pregnancy medical expenses of low-income women in every state, including nutrition for all low-income pregnant mothers, and the expenses of childbirth and delivery are covered by state Medicaid programs.

The current law in every state shifts the entire burden of parenting to the state or adoptive parents, if the woman so desires. These laws eliminate any burden on women to parent the children they conceive, as a matter of law. The entire burden of care, feeding, education, medicine, every financial and social obligation of parenting can now be borne by others, at no cost to the mother. Safe Haven is free, unlike abortion.

The Safe Haven option is also safer for women. As the District Court below noted, "at least two women died from chemical abortions just last year." ROA.4483.

As the words of the Women Injured by Abortion detailed above demonstrate, many years – even decades – of silent suffering can occur after abortion. These women are often unable to share the horror of their experience with anyone and are tormented by their thoughts of suicide, guilt, shame, nightmares, sleeplessness, and depression.

For example, following *Gonzales,* the Eighth Circuit held that adequate scientific evidence exists to support the state's statutorily required abortion disclosure that **abortion increases a woman's risk for suicide and suicidal ideation.** *See Planned Parenthood v. Rounds,* 686 F. 3d. 889 (Eighth Cir. 2012) (*en banc*). Suicide is surely an irreparable injury. After extensive scientific review, the Eighth Circuit rejected the abortion industry and American Psychological Association assertion that this statement was false and misleading. Despite this judicial victory for women's safety, the abortion industry still does not reveal this risk. *See* Patient Agreement Form, Fifth Circuit Unpublished Order, p. 12. ROA. 4378, *et al*. Money damages for all these women would be impossible to recover and pointless in repairing the guilt of causing the death of one's child.

**III.    The Statutory Ban On Distribution Of Abortion-Inducing Drugs Is Textually Clear And Unambiguous.  The Plain Text Of The Statute Should Only Be Changed By Congress, The People's Elected Representatives, Not The Executive Or Judicial Branch.  Strict Enforcement Of That Law Is Necessary To Prevent Even More Destructive, Unregulated Abortion Producing Drugs From Being Distributed.**

Abortion is obviously a deeply controversial issue of great importance to the American people.  In reversing *Roe v. Wade* and *Planned Parenthood v. Casey*, the Supreme Court made it abundantly clear that the proper place to determine abortion law at this time is the elected representatives of the people.

With respect to the legality of distributing abortion producing drugs through

the mail or common carriers, Congress, the People's representatives, could not be more clear than in the text of a law that specifically addresses the issue, The Comstock Act. Even the government admits, "In their current form, those provisions restrict the importation, mailing, or interstate distribution by common carrier of (among other things) drugs "intended for producing abortions." 18 U.S.C. §§ 1461, 1462. Brief for Federal Appellants at 56.

It is up to the People's elected representatives to change the law, not administrative agencies as the Supreme Court has recently made even clearer. *Dobbs v. Jackson Women's Health Org*., 142 S. Ct. 2028 (2022); *West Virginia v. EPA*, 577 U. S. 1126 (2016).

News reports indicate that states like New York are stock piling the Misoprostol pill, which is the drug that expels the baby. Maysoon Kahn, *New York latest state to stockpile abortion-inducing pills*, ASSOCIATED PRESS (APR. 11, 2023), https://apnews.com/article/new-york-abortion-pill-stockpile-b8192dee6ac02b1b3f066d6a6300a41f. This use of Misoprostol has not been approved by the FDA, and using the drug as an abortion producing drug is an off-label use. Other abortion producing drugs also exist and the current law prohibits their distribution as well, thus protecting all women.

Others have briefed the issue more extensively, but it is clear that on an issue of such broad importance, it should be Congress, not the Courts or the Executive

Branch that has the final say.  While the Comstock Act may have been somewhat "dormant" under *Roe v. Wade*, it has never been repealed expressly by Congress. Congress has not embraced an unlimited federal right to abortion.

## PRAYER

*Amici* respectfully pray this Court affirm the District Court's decision below and allow it to go into effect.

Respectfully submitted,

/s/ Allan E. Parker, Jr.
Allan E. Parker, Jr.
Counsel of Record *Amici Curiae*
R. Clayton Trotter
Mary J. Browning
The Justice Foundation
8023 Vantage Drive, Suite 1275
San Antonio, TX 78230
(210) 614-7157
aparker@txjf.org

26

# APPENDIX
## WOMEN INJURED BY ABORTION

Molly White, in memory of my children, William Conrad (Little Bill) and Josie Gayle;  Myra Jean Myers in memory of  my child, Joshua;  Nona Ellington in memory of my child, Darren Nicholas;  Maria M. Banks in memory of my child, Matthew;  Lorraine Debra Agold-Rich, in memory of my child, Esther Rachel; Linda, in memory of  my children, Matthew Jay and Mark;   Sharra, in memory of my child, Hannah Grace; Julie, in memory of my child, Cody;  Madonna,  in memory of my child, Pua Lililehua;  Betty Underwood in memory of my children, Thomas and Olivia Diane;  Lisa Skowron in memory of my child, Jonathan Allen;  Kelly, in memory of  my child, Isaac;   Julia, in memory of my child, Joseph Gale Jones; Cathy, in memory of my child, Nicola Dawn; Helen, in memory of children, Michelle and Samuel;  Jennifer, in memory of my children, Stephen and Anna;  Ruth McLemore in memory of my children, Elisabeth Rose and Aidan; Toni, in memory of my child, Elijah; Penne Logan in memory of my children, Elizabeth Marie, Nathaniel, and Jacqueline Ashton; Tracy Reynolds in memory of my child, Debbie; Luana Stoltenberg in memory of my children Ashley, Ruth, and Jacob;  Paulette Bunting in memory of my child, Owen;  Lisa Beair in memory of my child, Matthew Gabriel;  Carol Rowe in memory of my child, Amy;  Denise Mixson in memory of my child, Joshua Caleb;  Kathy Rickman Rutledge in memory of my child, Nathaniel Isaac;  Dianne Kirkwood in memory of my two unnamed children;  Andrea Sosebee in memory of my child, Rosemerry;  Felicia L. in memory of my child, Christian; Susan Swander in memory of my three children, Luke Michael, Grace Anne and Benjamin Lawrence;  Melinda Chisum in memory of my child, Corey Wayne;   Toni Buckler in memory of my child, Francis Mary;  Kay Painter in memory of my child, Sarah;    Dr. Dianne Heynen in memory of my child, Amanda Marie;  Barbara Higgins in memory of my children, Daniel, Anna, Joshua and Lawrence;  Amanda Barron in memory of my child, Marilyn Joy;  Sonia L. in memory of my children, Angel and Gabriel;  Nadine A. Newman in memory of my child, Nathaniel Caleb; Stacy Lynn Massey in memory of my children,  Dylan Connor and Dory Kalani;  K. A. in memory of my child, E.S.;  Millie Lace, in memory of  my child, Jill Allison; Golda Sharon Ross Campbell Dunn in memory of my child, Cory James;  Danelle Marie Hallenbeck in memory my child, Grace Marie;  Kimberley Seward in memory of my children, Ariel and Amanda; Mary Kidney in memory of my child, Theresa Joy;  Stacy Branch-Boyd, in memory of my children, Isaiah and Niya;  Carla Stream in memory of my child, Aubrey;   Karen Bodle in memory of my child, Lauren Elizabeth; S.P. in memory of my aborted child; Sherry Neuenschwander in memory of my children, Andrew "Drew" Mitchell and Jakub Dean;  Laureen Metcalf in

memory of my aborted children;   Cecilia Sullivan in memory of my children, Michael Joshua, Jennifer Lynn, Sarah Renee and Matthew David;  Carolyn J. Barry in memory of my child,  Addison Joy;   Joyce Leslie Klosener Zounis in memory of my children, Michael, Glenn, Gregg, Christopher, Charlie, Jennings, and Dimitrios;  Susan Rowland in memory of my child, Robert Stephen;  Sherry Hearon in memory of my child, Robert Joseph;  Karen Holdren in memory of my aborted child, Katharine Hill in memory of my aborted child, Arlene Lehman in memory of my children, Trevor and Tiarra;   Ellen Garrison Philpot in memory of my children, Mathew Thompson, Jacob Clark, and Rebecca Mary;  Barbara Chapple in memory of my children, Melissa and Erwin, Melody Ashley in memory of my child, Ericka Rae;  Lee Karcher in memory of my child, Samuel;  Janet Hurguy in memory of my child, Kenny Lee;  and Nita Roder in memory of my child, Thomas Aaron Roder. Shanna Cates, Stella King, Beth Lizano, Amanda Coyle, Victoria Faber, Diane M. Szurleys, Melanie, Cyndi Saunders, C.H., Marsha George, L.D., Lisa Wolske, Nancy Bienvenue, Jamie Casey, K.H., Donna Barham, P.B., Mary Fain, Cynthia M. Adams, Amanda Brooks, Debbi Carlson, Mandy Henderson, Deborah, Amy McLeod, L.M., Karin Dawley, J.J., R.L., M., Cheryl Hall, Tina, Dortha Higgins, Melody Pipkin, N.W., Lee Matthews, Vickie Jackson, Cheryle, Holly Peacock, Mildred Ross, Clara Morrison, Bobbie, Michelle, Sue, Wanda Couch, C.E., Susan, Jennifer Ingram, Rita Wise, Karen Matthews, Myra Hammond, L.R., Leslie Davis, Cindy Harless, D.G., Jennifer, Lucille Patrick, Cynthia, Crystal Roden, Shatina Logan, Morgan, Darlene Reavis, Linda Jackson, J.H., Maria Pistole, Dickie Ann Lashlee, Kari Hodges, Lisa Nunley, Susan, Barbara Chambers, A.H., Kristi Hays, Kellie Eaton, L.G., Sandra Marin, Rita, K.C., Deanna Ekings, Jennifer Brannon, Andrea Christine Perez, M.B., Carolyn Roberts, Jessica, P.A., Dana Vasquez, S.B., Terry, Lynn, Kathy, L.L., C.H., Loretta, Jillian, Karen Mackean, C.J., Barbara, Stephanie, Laura, Susan Palm, Sandra Scott, Carolyn, Monica Jordan, Trish Shroyer, Rita Vehon, Kriston Delhommer, Gina Dwyer, Deborah, Tiffany Stuart, Charlotte Fortier, S.B.K., Judi Mountjoy, Kerri Swiniuch, F.A., Christina, Jasmine Cruz, Donette Fox, Sharon Brown, Pam Lanham, Carol, Cindy Seipel, Sandra, Yvonne Morris, Cynthia Chinn, Tamara, Lisa, Joy, Cassandra, Minda Martine, Barbara Miller, Linette Hollyfield, Renee Villani, Margaret Cavolina, Mayen Handy, Patricia Palmer, Gina Kent, Sally Swanson, S.T., Kerri, Deborah Stinson, L.P., Jennifer Serban, Lisa, J.B., Loretta Soto, Virginia, Jeannie Seanor, Janice Cleary, T.G., Kathy O'Shea, A.T., C.M.S., Vickie Munoz, L.C., Patricia Camper, Sandra West, S.N., L.B., C.R., M.A., Lisa, V., Lisa Zavitka, Taylor Orona, Kristin Walters, Valerie Robins, S.M., Christine Peterson, Christine Mabery, Susan Page, Tammy Mendoza, Shadia, L.M.K., Charlene Hoyer, Elizabeth, Samita Sigala, Marjorie DiCarlo, Joyce Crommett, Diana Slumskie, Bonnie Levorson, Maralyn Smith, M.O., Marie Knapp, Beverly Williams, N.R., Sylvia Chaffee, Rebecca, Sheri Del Core, Mary, D.L.,

Christl Siller, Angela Sisneroz, Dana Watson, Therese Dill, Lilly Simmons, Deborah Cross, Sunny, S.J.P., Kathleen White, Jacqueline, Dorothy Lampi, M.B., Gail Levin, GapHyun Oh, S.W., K.S., Michelle Ciotta, Chrissy Helmer, Debbie Pennington, Gina Bartok, F.O., Ammery Philebar, Beverly Cayubit, Nora Navarro-Smith, Paula Pearce, Cindy Silva, Janice Jackson, S.J., Kamala Dyer, Consuelo Shurtleff, Patricia Byrne, Patty, A.C., Sandy, Sonja Bates, Donna, Terri Blackburn, Jennifer Trier, Kelley, Vanessa Yaglinski, Heather Sparks, Jaclyn LaBarbera, Leslie Brunolli, Bethany Greenleaf-Perez, Paulette Williams.