No. 23-10362

# IN THE

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

Alliance for Hippocratic Medicine; American Association of Pro-Life Obstetricians & Gynecologists; American College of Pediatricians; Christian Medical & Dental Associations; Shaun Jester, D.O.; Regina Frost-Clark, M.D.; Tyler Johnson, D.O.; George Delgado, M.D.,

*Plaintiffs – Appellees*

v.

Food & Drug Administration; Robert M. Califf, Commissioner of Food and Drugs; Janet Woodcock, M.D., in her official capacity as Principal Deputy Commissioner, U.S. Food and Drug Administration; Patrizia Cavazzoni, M.D., in her official capacity as Director, Center for Drug Evaluation and Research, U.S. Food and Drug Administration; United States Department of Health and Human Services; Xavier Becerra, Secretary, U.S. Department of Health and Human Services,

*Defendants – Appellants*

v.

Danco Laboratories, L.L.C.,

*Intervenor – Appellant*

On Appeal from the United States District Court, N. Dist. of Tex. (Amarillo Div.), No. 2:22-cv-223, Judge Matthew J. Kacsmaryk

**UNOPPOSED MOTION FOR LEAVE TO FILE BRIEF OF DR. ALLAN SAWYER AS *AMICI CURIAE* SUPPORTING AFFIRMANCE**

## MOTION TO FOR LEAVE OF COURT
## TO ACCEPT AMICUS BRIEF

---

David Hogue
Hogue, Corbitt & Ward, PLC
700 S. German Lane, Suite 104
Conway, AR 72034
(501) 255-0112
*Counsel for* Amici Curiae,
*American Association of Pro Life*
*Obstetricians and Gynecologists*

# <u>CERTIFICATE OF INTERESTED PERSONS</u>

*Alliance for Hippocratic Medicine, et al. v.*
*U.S. Food and Drug Administration, et al.*, No. 23-10362

The undersigned counsel of record for the *Amici Curiae* certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

## <u>Plaintiffs-Appellees</u>

Alliance for Hippocratic Medicine

American Association of Pro-Life Obstetricians & Gynecologists

American College of Pediatricians

Christian Medical & Dental Associations

Shaun Jester, D.O.

Regina Frost-Clark, M.D.

Tyler Johnson, D.O.

George Delgado, M.D.

## <u>Defendants-Appellants</u>

U.S. Food and Drug Administration

U.S. Department of Health and Human Services

Robert M. Califf, M.D., in his official capacity as Commissioner of Food and Drugs, U.S. Food and Drug Administration

Janet Woodcock, M.D., in her official capacity as Principal Deputy Commissioner, U.S. Food and Drug Administration

Patrizia Cavazzoni, M.D., in her official capacity as Director, Center for Drug Evaluation and Research, U.S. Food and Drug Administration

Xavier Becerra, in his official capacity as Secretary, U.S Department of Health and Human Services

## Intervenor Defendant-Appellant

Danco Laboratories, LLC
(owned by Danco Investors Group, LP)

## *Amici Curiae*

Dr. Allan Sawyer

## Other Known Proposed *Amici Curiae* of Record

State of New York
State of Arizona
State of California
State of Colorado
State of Connecticut
State of Delaware
State of Hawaii
State of Illinois
State of Maine
State of Maryland
State of Massachusetts
State of Michigan
State of Minnesota
State of Nevada

State of New Jersey
State of New Mexico
State of North Carolina
State of Oregon
State of Pennsylvania
State of Rhode Island
State of Vermont
State of Washington
State of Wisconsin
District of Columbia

## **Counsel**

### For Plaintiffs-Appellees

Erik Christopher Baptist
Denise Harle
Erica Steinmiller-Perdomo
Erin Morrow Hawley
Julie Marie Blake
Matthew S. Bowman
Alliance Defending Freedom

Christian D. Stewart
Burdett Morgan & Williamson L.L.P.

### For Defendants-Appellants

Brian M. Boynton
Leigha Simonton
Sarah E. Harrington
Michael S. Raab
Cynthia A. Barmore
Noah T. Katzen
Christopher A. Eiswerth
Daniel Schwei
Emily B. Nestler
Julie Straus Harris

Kate Talmor
U.S. Department of Justice

For Intervenor Defendant-Appellant

     Catherine Emily Stetson
     Jessica Lynn Ellsworth
     Kaitlyn A. Golden
     Lynn Whipkey Mehler
     Marlan Golden
     Philip Katz
     Danielle Desaulniers Stempel
     Delia Scoville
     Hogan Lovells US LLP

     Ryan Patrick Brown

For *Amici Curiae*

     David Hogue
     Hogue, Corbitt & Ward, PLC

For Other Known Proposed *Amici Curiae* of Record

     Grace X. Zhou
     Letitia James
     Barbara D. Underwood
     Ester Murkukhayeva
     Galen Sherwin
     Kris Mayes
     Rob Bonta
     Philip J. Weiser
     William Tong
     Kathleen Jennings
     Anne E. Lopez
     Kwame Raoul
     Aaron M. Frey
     Anthony G. Brown

Andrea Joy Campbell
Dana Nessel
Keith Ellison
Aaron D. Ford
Matthew J. Platkin
Raul Torrez
Joshua H. Stein
Ellen F. Rosenblum
Michelle A. Henry
Peter F. Neronha
Charity R. Clark
Robert W. Ferguson
Joshua L. Kaul
Brian L. Schwalb

/s/ David Hogue

_____

David Hogue
*Counsel for* Amici Curiae,
*American Association of Pro Life*
*Obstetricians and Gynecologists*

Dated: May 12, 2023

## Motion to Accept Amicus Curiae

1. Pursuant to Rules 29, 31, and 32 of the Federal Rules of Appellate Procedure, and the applicable Fifth Circuit Rules and Internal Operating Procedures, proposed amicus curiae Dr. Allan Sawyer for leave to file the attached amicus brief in support of Plaintiffs-Appellees and affirmance in this case. Counsel for all parties have consented to this motion for leave to file the attached amicus brief.

2. This Court has broad discretion to grant leave to file an amicus brief. *See, e.g., Richardson v. Flores, 979 F.3d 1102, 1106 (5th Cir. 2020); see also, e.g., United States v. Gonzales-Wagner, 977 F.3d 323, 345 (5th Cir. 2020).* Leave should be granted here because the proposed amicus brief is both timely and useful to this Court.

WHEREFORE, Amicus Dr. Allan Sawyer respectfully submits this Motion to Accept the attached Amicus Brief. For these reasons, amicus curiae respectfully requests this court grant leave to file the attached amicus brief.

Respectfully submitted,

/s/ David Hogue

HOGUE, CORBITT & WARD, PLC
700 S. German Lane, Suite No. 104
Conway, AR 72034
(501) 255-0112
dh@hoguecorbittward.com

*Counsel for* Amici Curiae *American Association of Pro-Life Obstetricians and Gynecologists*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of May, 2023, an electronic copy of the foregoing motion was filed with an amicus brief with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, that all parties to the case are registered CM/ECF users, and that service will be accomplished by the appellate CM/ECF system.

/s/ David Hogue

_____

David Hogue

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This motion complies with the type-volume limitations of Federal Rules of Appellate Procedure 27(d)(2) and 29(a)(5) because it contains 5,184 words, as determined by the word-count function of Microsoft Word, excluding parts of the brief that are exempted from the word-count requirement by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2.

2.    This motion complies with the typeface requirements of Federal Rules of Appellate Procedure 29(a)(4) and 32(a)(5) and the typestyle requirements of Federal Rules of Appellate Procedure 29(a)(4) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point for text, and 12-point for footnotes, in Century Schoolbook font.

/s/ David Hogue

_____

David Hogue

Dated: May 12, 2023

No. 23-10362

IN THE

# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

Alliance for Hippocratic Medicine; American Association of Pro-Life
Obstetricians & Gynecologists; American College of Pediatricians;
Christian Medical & Dental Associations; Shaun Jester, D.O.; Regina
Frost-Clark, M.D.; Tyler Johnson, D.O.; George Delgado, M.D.,
*Plaintiffs – Appellees*

v.

Food & Drug Administration; Robert M. Califf, Commissioner of Food
and Drugs; Janet Woodcock, M.D., in her official capacity as Principal
Deputy Commissioner, U.S. Food and Drug Administration; Patrizia
Cavazzoni, M.D., in her official capacity as Director, Center for Drug
Evaluation and Research, U.S. Food and Drug Administration; United
States Department of Health and Human Services; Xavier Becerra,
Secretary, U.S. Department of Health and Human Services,
*Defendants – Appellants*

v.

Danco Laboratories, L.L.C.,
*Intervenor – Appellant*

On Appeal from the United States District Court, N. Dist. of Tex.
(Amarillo Div.), No. 2:22-cv-223, Judge Matthew J. Kacsmaryk

**BRIEF FOR *AMICI CURIAE* DR. ALLAN SAWYER, FORMER MEMBER OF THE AMERICAN COLLEGE OF OBSTETRICIANS AND GYNECOLOGISTS AND PAST PRESIDENT OF THE AMERICAN ASSOCIATION OF PRO-LIFE OBSTETRICIANS AND GYNECOLOGISTS**

David Hogue
Hogue, Corbitt & Ward, PLC
700 S. German Lane, Suite 104
Conway, AR 72034
(501) 255-0112
*Counsel for* Amici Curiae,
*Dr. Allan Sawyer*

## CERTIFICATE OF INTERESTED PERSONS

*Alliance for Hippocratic Medicine, et al. v.*
*U.S. Food and Drug Administration, et al.*, No. 23-10362

The undersigned counsel of record for the *Amici Curiae* certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

### Plaintiffs-Appellees

Alliance for Hippocratic Medicine

American Association of Pro-Life Obstetricians & Gynecologists

American College of Pediatricians

Christian Medical & Dental Associations

Shaun Jester, D.O.

Regina Frost-Clark, M.D.

Tyler Johnson, D.O.

George Delgado, M.D.

### Defendants-Appellants

U.S. Food and Drug Administration

U.S. Department of Health and Human Services

Robert M. Califf, M.D., in his official capacity as Commissioner of Food and Drugs, U.S. Food and Drug Administration

Janet Woodcock, M.D., in her official capacity as Principal Deputy Commissioner, U.S. Food and Drug Administration

Patrizia Cavazzoni, M.D., in her official capacity as Director, Center for Drug Evaluation and Research, U.S. Food and Drug Administration

Xavier Becerra, in his official capacity as Secretary, U.S Department of Health and Human Services

**Intervenor Defendant-Appellant**

Danco Laboratories, LLC
(owned by Danco Investors Group, LP)

**_Amici Curiae_**

Dr. Allan Sawyer

**Other Known Proposed _Amici Curiae_ of Record**

State of New York
State of Arizona
State of California
State of Colorado
State of Connecticut
State of Delaware
State of Hawaii
State of Illinois
State of Maine
State of Maryland
State of Massachusetts
State of Michigan
State of Minnesota
State of Nevada

State of New Jersey
State of New Mexico
State of North Carolina
State of Oregon
State of Pennsylvania
State of Rhode Island
State of Vermont
State of Washington
State of Wisconsin
District of Columbia

## **Counsel**

<u>For Plaintiffs-Appellees</u>

Erik Christopher Baptist
Denise Harle
Erica Steinmiller-Perdomo
Erin Morrow Hawley
Julie Marie Blake
Matthew S. Bowman
Alliance Defending Freedom

Christian D. Stewart
Burdett Morgan & Williamson L.L.P.

<u>For Defendants-Appellants</u>

Brian M. Boynton
Leigha Simonton
Sarah E. Harrington
Michael S. Raab
Cynthia A. Barmore
Noah T. Katzen
Christopher A. Eiswerth
Daniel Schwei
Emily B. Nestler
Julie Straus Harris

Kate Talmor
U.S. Department of Justice

For Intervenor Defendant-Appellant

Catherine Emily Stetson
Jessica Lynn Ellsworth
Kaitlyn A. Golden
Lynn Whipkey Mehler
Marlan Golden
Philip Katz
Danielle Desaulniers Stempel
Delia Scoville
Hogan Lovells US LLP

Ryan Patrick Brown

For *Amici Curiae*

David Hogue
Hogue, Corbitt & Ward, PLC

For Other Known Proposed *Amici Curiae* of Record

Grace X. Zhou
Letitia James
Barbara D. Underwood
Ester Murkukhayeva
Galen Sherwin
Kris Mayes
Rob Bonta
Philip J. Weiser
William Tong
Kathleen Jennings
Anne E. Lopez
Kwame Raoul
Aaron M. Frey
Anthony G. Brown

Andrea Joy Campbell
Dana Nessel
Keith Ellison
Aaron D. Ford
Matthew J. Platkin
Raul Torrez
Joshua H. Stein
Ellen F. Rosenblum
Michelle A. Henry
Peter F. Neronha
Charity R. Clark
Robert W. Ferguson
Joshua L. Kaul
Brian L. Schwalb

/s/ David Hogue

_____

David Hogue
*Counsel for* Amici Curiae,
*Dr. Allan Sawyer*

Dated: May 12, 2023

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .......................................iii

TABLE OF AUTHORITIES....................................................................ix

INTEREST OF *AMICI CURIAE*............................................................. 1

SUMMARY OF ARGUMENT ................................................................. 2

ARGUMENT ........................................................................................... 2

    I.    Despite promoting strict limits on therapeutic abortions since its founding, ACOG changed its policy for political reasons. ................ 2

    II.    In every major abortion case, the American College of Obstetricians and Gynecologists has consistently argued against any limitation of abortion................................................................................ 13

 CONCLUSION ....................................................................................... 27

CERTIFICATE OF SERVICE................................................................ 28

CERTIFICATE OF COMPLIANCE....................................................... 29

# TABLE OF AUTHORITIES

CASES

*Ayotte v. Planned Parenthood of Northern New England,*

  546 U.S. 320 (2006) ..........................................................................23

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,

  509 U.S. 579 (1993) ..........................................................................18

*Doe v. Bolton*, 410 U.S. 179 (1973) .......................................... 3, 9, 10, 18

*Glossip v. Gross*, 135 S.Ct.  2726 (2016) .................................................17

*Gonzales v. Carhart*, 550 U.S. 124 (2007).......................................... 5, 23

*Hartigan v. Zbaraz*, 484 U.S. 171 (1987) ...............................................20

*Hill v. Colorado*, 530 U.S. 703 (2000) ....................................................22

*McCullen v. Coakley*, 573 U.S.  464 (2014) .............................................24

*National Institute of Family and Life Advocates v. Becerra,*

  138 S.Ct. 2361 (2018) ......................................................................25

*Ohio v. Akron Center for Reproductive Health,*

497 U.S. 502 (1990) ........................................................21

*Planned Parenthood Ass'n of Kansas City, Mo., Inc. v. Ashcroft,*
462 U.S. 476 (1983) ........................................................18

*Planned Parenthood of Southeastern Pennsylvania v. Casey,*
505 U.S. 833 (1992) ........................................................21

*Roe v. Wade,* 410 U.S. 113 (1973) ..................................... 3, 20

*Rust v. Sullivan,* 500 U.S. 173 (1991) ..................................21

*Schenck v. Pro-Choice Network of Western New York,*
519 U.S. 357 (1997) ........................................................22

*Simopoulos v. Virginia,* 462 U.S. 506 (1983) .........................18

*Stenberg v. Carhart,* 530 U.S. 914 (2000) ................................. 14, 18, 22

*Webster v. Reproductive Health Services,*
492 U.S. 490 (1989) ........................................................21

*Whole Woman's Health v. Hellerstedt,*
136 S.Ct. 2292 (2016) ......................................................25

## OTHER AUTHORITIES

ACOG, Item 4.1 Report of President, Transcript of Executive Board
Meeting, 3–4 December 1971:8–31
.................................................................................................11

ACOG, Item 5 Report of Committee on Obstetric-Gynecologic Practice,
Minutes of the Executive Board Meetings, 1967–1970, 17 April
1970:2 ........................................................................................10

ACOG, Item 6.2.13 Report of Therapeutic Abortion and Sterilization
Committee, Transcript of Executive Board Meeting, November
1956:1 .....................................................................................7, 8

ACOG, Item 6.39 Report of the Committee to Study Liberalization of
the Laws Governing Therapeutic Abortion: Transcript of Executive
Board Meeting, 9 May 1968:4 ..................................................9

American College of Obstetricians and Gynecologists American
Congress of Obstetricians and Gynecologists: What We Are and The
Reasons Why, PowerPoint presentation (2015), available at:
https://web.archive.org/web/20150604164111/ http://www.acog.org/-
/media/ Departments/District-and-Section-Activities/
C3C6info.pdf?la=en (accessed December 20,
2019) ...................................................................................12, 13

American College of Obstetricians and Gynecologists (ACOG), Manual
of Standards in Obstetric–Gynecologic Practice (Chicago: ACOG,
1959) ................................................................................ 6, 8, 19

Amici Curiae Brief of the American Academy of Pediatrics, California,
et al., in Support of Respondents, *National Institute of Family and Life
Advocates v. Becerra*, 138 S.Ct. 2361 (2018), 2018 WL 111004
.................................................................................27

Brief for American College of Obstetricians and Gynecologists, et al., as Amici Curiae, *Doe v. Bolton*, 410 U.S. 179 (1973), 1971 WL 128053 (U.S.) ....................................................................................19

Brief for American College of Obstetricians and Gynecologists, et al., as Amici Curiae, *June Medical Services L.L.C. v. Gee*, 2019 WL 6609234 ....................................................................................27

Brief for Amici Curiae Jill Stanek and the Association of Pro-Life Physicians in Support of Petitioner, *Gonzales v. Carha*rt, 550 U.S. 124 (2007), 2006 WL 2281977 ....................................................................................25

Brief for Planned Parenthood Federation of America and Physicians for Reproductive Health as Amici Curiae Supporting Respondents, National Institute of Family and Life Advocates v. Becerra, 138 S.Ct. 2361 (2018), 2018 WL 111003....................................................................................18

Brief for the American College of Obstetricians and Gynecologists, the National Abortion Federation, and Planned Parenthood Federation of America as Amici Curiae in Support of Respondents, *Schenck v. Pro-Choice Network of Western New York*, 519 U.S. 357 (1997),1996 WL 365807 ....................................................................................23

Brief of Amici Curiae American Association of Pro-Life Obstetricians and Gynecologists (AAPLOG), Senator Tom Coburn, M.D., Congressman Charles Boustany, Jr., M.D., Congressman Michael Burgess, M.D., Congressman Phil Gingrey, M.D., Congressman Dave Weldon, M.D., C. Everett Koop, M.D., Edmund D. Pellegrino, M.D. in Support of Petitioner, *Gonzales v. Carhart*, 550 U.S. 124 (2007), 2006 WL 1436688 ....................................................................................17, 18

Brief of Amici Curiae American Association of Pro-Life Obstetricians and Gynecologists, et al., in support of Petitioner, *Gonzales v. Carhart*, 550 US 124 (2007), 2006 WL 1436688 ....................................................................................25

Brief of Amici Curiae American College of Obstetricians and Gynecologists, American Medical Women's Association, National Abortion Federation, Physicians for Reproductive Choice and Health, and American Nurses Association in Support of Respondent, *Stenberg v. Carhart*, 530 U.S. 914 (2000), 2000 WL 340117 .....................................23

Brief of Amici Curiae American College of Obstetricians and Gynecologists, American Medical Association, and Massachusetts Medical Society in Support of Respondents, *McCullen v. Coakley*, 573 U.S.  464 (2014), 2013 WL 6213247 ........................................................25

Brief of Amici Curiae Congressman Ron Paul and Association of American Physicians and Surgeons in Support of Petitioner, *Gonzales v. Carhart*, 550 U.S. 124 (2007), 2006 WL1436689 ...................................25

Brief of Amici Curiae the American College of Obstetricians and Gynecologists, the American Academy of Pediatrics and the American Medical Women's Association in Support of Appellees, *Hartigan v. Zbaraz*, 484 U.S. 171 (1987), 1987 WL 881100 ......................... 20, 21, 22

Brief of Amici Curiae, 52 Members of Congress in Support of Planned Parenthood Federation, Inc., et al., and Motion for Leave to File Brief Out  of Time  in Support of Respondents LeRoy Carhart, M.D., et al., In Related Case No. 05-380, *Gonzales v. Planned Parenthood Federation of America, Inc.*, 2006 WL 2736635 ...........................................................17

Brief of the American College of Obstetricians and Gynecologists and the  American Medical Association as Amici Curiae in Support of Respondents, *Hill v. Colorad*o, 530 U.S. 703 (2000), 1999 WL 1186250 .............................................................................................................23

Brief of the American College of Obstetricians and Gynecologists as Amicus Curiae Supporting Respondents, *Gonzales v. Carhar*t, 550 U.S. 124 (2007), 2006 WL 2867888 ................................................................24

Brief of the American College of Obstetricians and Gynecologists, et al., as Amici Curiae in Support of Appellees, *Webster v. Reproductive Health Services*, 492 U.S. 490 (1989), 1989 WL 1127737 ...................................21

Brief of the American College of Obstetricians and Gynecologists, et al., as Amici Curiae in Support of Petitioners, *Rust v. Sullivan*, 500

U.S. 173 (1991), 1990 WL 10012642 ......................................................21

Brief of the American College of Obstetricians and Gynecologists, et al., as Amici Curiae in Support of the Petitioners, *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992), 1992 WL 12006402 .................................................................................................22

Brief of the American College of Obstetricians and Gynecologists, et al., as Amici Curiae in Support of Respondents, *Ayotte v. Planned Parenthood of Northern New England*, 546 U.S. 320 (2006), 2005 WL 2646471 ...................................................................................................24

"Bulletin for 2008: Maintenance of Certification," The American Board of Obstetrics and Gynecology (Nov. 2007), 10, 31, available at: http://www.cultureoflife.org/wp-content/uploads/2008/

05/www.abog.org_pdf_MOC2008.pdf (accessed

May 12, 2023) ........................................................................................14

C.A. Hartley and  L.H. Somerville, The Neuroscience of Adolescent Decision-Making, 5 Current Opinions  on Behavioral Science, 108–15 (2015), available at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4671080/ (accessed May 12, 2023..........................................................................................21

David C. Reardon, "The Abortion and Mental Health Controversy: A Comprehensive Literature Review of Common Ground Agreements, Disagreements, Actionable Recommendations, and Research Opportunities," SAGE Open Med.(October 29, 2018), available at: https:// journals.sagepub.com/doi/full/10.1177/2050312118807624 (accessed May 12, 2023).......................................................................... 25

Email correspondence of Ralph Hale, M.D., F.A.C.O.G. and Allan T. Sawyer, M.D., personal files of AAPLOG president Donna Harrison (February 2009)..........................................................................12

"HHS Secretary Calls on Certification Group to Protect Conscience Rights," HHS Press Office (2008), available at: https://aul.org/2008/03/14/hhs-secretary-calls-on-certification-group-to-protect-conscience-rights/ (accessed December 20, 2019) ...............................................................................................16

https://aaplog.org/about-us/history-of-aaplog/ (accessed May 12, 2023)................................................................................11, 12

https://aaplog.wildapricot.org/resources/Documents/ AAPLOG%20formal%20complaint%20with%20

HHS%20against%20ACOG.pdf (accessed December 21, 2019) ...........16

https://www.britannica.com/science/elective-abortion (accessed May 12, 2023)..................................................................................4

Increasing Access to Abortion," ACOG Committee Opinion No. 613 (2014), available at: https://pubmed.ncbi.nlm.nih.gov/25437742/ (accessed May 12, 2023) .................................................................16, 17

Lara Cartwright-Smith and Sara Rosenbaum, The Elusive Quest for Balance: the 2008 HHS Regulation Prohibiting Discrimination Against Health-Care Workers Based on Religious Beliefs, 124 Public Health Reports 603–06 (2009) ............................................................16

Letter from R. Schmidt to C. Randall, President, ACOG, personal files of R. Schmidt, 7 September 1971 ..........................................................11

Motion and Brief Amicus Curiae of Certain Physicians, Professors and Fellows of the American College of Obstetrics and Gynecology in Support of Appellees, Doe v. Bolton, 410 U.S. 179 (1973), 1971 WL 128057.........................................................................................19

Nancy Aries, The American College of Obstetricians and Gynecologists and the Evolution of Abortion Policy, 1951-1973: The Politics of Science, 93 American Journal of Public Health,1810–19 (2003), available at: https://www.ncbi. nlm.nih.gov/pmc/articles/PMC1448057/#r17 (accessed May 12, 2023).................................................................... passim

"Obama administration replaces controversial 'conscience' regulation for health-care workers," The Washington Post, February 19, 2011, available at: https://www.washingtonpost.com/national/health-conscience-rule-replaced/2011/02/18/AB7s9iH_story.html (accessed May 12, 2023)............................................................................16

R. Solinger, "A Complete Disaster": Abortion and the Politics of Hospital Abortion Committees, 1950–1970, 19 Feminist Studies (1993) ...................................................................................6

Royal College of Obstetricians and Gynaecologists, "Termination of Pregnancy for Fetal Abnormality in England, Scotland and Wales," at 29 (2010), available at: https://www.rcog.org.uk/media/21lfvl0e/terminationpregnancyreport18 may2010.pdf, (accessed May 12, 2023)......................................................5

"Teen Brain: Behavior, Problem Solving and Decision Making," American Academy of Child & Adolescent Psychiatry, Facts for Families, September 2016, available at: https://www.aacap.org/AACAP/Families_and_Youth/Facts_for_Families/ FFF-Guide/The-Teen-Brain-Behavior-Problem-Solving-and-Decision-Making-095.aspx (accessed May 12, 2023)...............................................21

"The Limits of Conscientious Refusal in Reproductive Medicine," ACOG Committee Opinion No. 385 (2007), available at: https://www.acog.org/clinical/clinical-guidance/committee-opinion/articles/2007/11/the-limits-of-conscientious-refusal-in-reproductive-medicine (accessed May 12, 2023) ....................................14

"The War on Science," National Review, June 29, 2010, available at: https://www.nationalreview. com/corner/war-science-yuval-levin/ (accessed May 12, 2023) ...................................................................13, 24

William C. Shiel, Jr., M.D., Medical Definition of the Hippocratic Oath (2018), available at: https://www.medicinenet.com/script/main/art.asp? articlekey=20909 (accessed May 12, 2023) ..............................................3

William Emery Studdiford, The Common Medical Indications for Therapeutic Abortion, 26 Bulletin of the New York Academy of Medicine (1950) ....................................................................................................4

## INTEREST OF *AMICI CURIAE*[1]

*Amici Curiae,* Dr. Allan Sawyer is the former President of The American Association of Pro-Life Obstetricians and Gynecologists ("AAPLOG"), which is the largest non-sectarian, pro-life physician organization in the world, with over 4,000 members across the United States and associate members on every continent. AAPLOG exists to equip its members and other concerned medical practitioners with an evidence-based rationale for defending the lives of both the pregnant mother and her unborn child.

Dr. Sawyer believes that physicians and medical practitioners are responsible for the care and well-being of both the pregnant woman and her unborn child; that the unborn child is a human being from the time of fertilization; that elective abortion of human life at any time from fertilization onward constitutes the willful destruction of an innocent human being; and that, consistent with the Hippocratic Oath, this procedure should have no place in our practice of the healing arts.

Dr. Sawyer has spent his career committed to educate abortion-vulnerable patients, the general public, lawmakers, pregnancy care center counselors, and medical colleagues regarding the medical and psychological complications associated with induced abortion, as evidenced in the peer-reviewed scientific literature.

Dr. Sawyer brings a wealth of education, experience, and credentials, including a Master of Science in Molecular Genetics/Biological Sciences from Stanford University, a fellowship of the American College of Obstetrics and Gynecologists (ACOG) from 1995 to 2017 and chair of several committees when he was active in ACOG.

---

[1] This brief is filed under Federal Rules of Appellate Procedure 27(a)(3)(A) and 29(a)(2) with the consent of all parties having been obtained. Undersigned counsel for *Amici* certifies that this brief was not authored in whole or part by counsel for any of the parties; no party or party's counsel contributed money that was intended to fund preparing or submitting the brief; and no one other than *Amici* or his counsel have contributed money that was intended to fund preparing or submitting this brief.

## SUMMARY OF ARGUMENT

The American College of Obstetricians and Gynecologists has always presented itself to the courts as a source of objective medical knowledge. However, when it comes to abortion, the College today is primarily a pro-abortion political advocacy organization.

Dating back to *Roe v. Wade* and *Doe v. Bolton*, ACOG has filed dozens of briefs in abortion cases but has never in any instance filed or joined a brief in support of any limitation whatsoever on elective abortion, even when ample scientific evidence and the medical standard of care for other comparable procedures would support that limitation.

## ARGUMENT

I.    DESPITE PROMOTING STRICT LIMITS ON THERAPEUTIC ABORTIONS SINCE ITS FOUNDING, ACOG CHANGED ITS POLICY FOR POLITICAL REASONS.

The Hippocratic Oath forbids doctors to perform abortions. The ancient Oath contains the following promises:

> I will neither give a deadly drug to any- body who asked for it, nor will I make a suggestion to this effect. Similarly, I will not give to a woman an abortive remedy.[2]

Physicians who practice in accordance with the Hippocratic Oath do not perform either elective abortions or euthanasia. When circumstances arise in which the continued union of the mother and her baby pose a genuine, imminent threat to the mother's life, then all OB-GYNs are trained to separate the mother and the baby. If this emergency separation takes place at a gestational age when the baby could survive out-side of the womb, then the separation is done in a way to maximize the chances of survival for both mother and baby.

---

[2] William C. Shiel, Jr., M.D., Medical Definition of the Hippocratic Oath  (2018), available at:  https://www.medicinenet.com/ script/main/art.asp?articlekey=20909 (accessed May 12, 2023).

Only rarely is this emergency separation necessary before the baby can survive outside of the womb. These pre-viability separations were historically termed "therapeutic abortions." They posed no violation of Hippocratic ethics, because the decision facing the doctor was the loss of one life (that of the baby) or the loss of two lives (that of both the baby and the mother).

"Therapeutic" abortions were medically justified only to protect the life of the mother. By the 1950s, only a few medical conditions remained (ectopic pregnancy, rheumatic heart disease, cardiac failure) that required a therapeutic abortion.[3]

In contrast, an "elective" abortion is an abortion for which there is no medical indication, no threat to the mother's life.[4]  The difference between an elective abortion and a delivery is that a delivery is designed to produce a live offspring and an elective abortion is designed to guarantee a dead offspring. The purpose of an elective abortion is to produce a dead baby, as delineated during testimony in Gonzales v. Carhart:

Yet one doctor would not allow delivery of a live fetus younger than 24 weeks because "the objective of [his] procedure is to perform an abortion," not a birth. App. in No. 05-1382, at 408-409. The doctor thus answered in the affirmative when asked whether he would "hold the fetus' head on the internal side of the cervix in order to collapse the skull" and kill the fetus before it is born. *Gonzales v. Carhar*t, 550 U.S. 124, 139-40 (2007). "When undertaking a termination of pregnancy, the intention is that the fetus should not survive and that the process of abortion should achieve this."[5]

---

[3] See William Emery Studdiford, The Common Medical Indi- cations for Therapeutic Abortion, 26 Bulletin of the New York Academy of Medicine, 721-35 (1950).

[4] https://www.britannica.com/science/elective-abortion (accessed December 20, 2019).

[5] Royal College of Obstetricians and Gynaecologists, "Termination of Pregnancy for Fetal Abnormality in England, Scotland and Wales," at 29  (2010), available at: https://www.rcog.org.uk/.

The failure to distinguish between abortions performed to save the mother's life ("therapeutic") and those performed to produce a dead baby ("elective") allows for the erroneous idea that elective abortions are "medical care." In fact, elective abortion solves no medical problem. Elective abortion treats no disease. The fact that an elective abortion is performed by a physician with drugs or surgery does not turn an elective abortion into medical care any more than an attack with a scalpel turns an assault into medical care. Consequently, a medical organization advocating for elective abortion has no more authority than any other abortion advocate.

Formed in the 1950s, ACOG's position on abortion adhered to the Hippocratic Oath taken by all physicians at the time. Thus ACOG supported the criminalization of elective abortions.

ACOG's 1959 Manual of Standards in Obstetric-Gynecologic Practice permitted abortion only "where the death of the mother might reasonably be expected to result from natural causes, growing out of or aggravated by the pregnancy, unless the child is destroyed."[6]

The Manual also mandated that abortions could be performed only in accredited hospitals.[7] ACOG's Committee on Maternal Welfare, noting that the justifications for therapeutic abortions were disappearing, "hoped that they may reach an absolute minimum within the foreseeable future," doing away with abortions altogether.[8]

---

globalassets/documents/guidelines/terminationpregnancyreport 18may2010.pdf, (accessed May 12, 2023).

[6] American College of Obstetricians and Gynecologists (ACOG), Manual of Standards in Obstetric-Gynecologic Practice (Chicago: ACOG, 1959), 35.

[7] R. Solinger, "A Complete Disaster": Abortion and the Politics of Hospital Abortion Committees, 1950-1970, 19 Feminist Studies 240-61 (1993).

[8] ACOG, Item 6.2.13 Report of Therapeutic Abortion and Sterilization Committee, Transcript of Executive Board Meeting, November 1956:1, see Nancy Aries, The American College of Obstetricians and Gynecologists and the Evolution of Abortion Policy, 1951-1973: The Politics of Science, 93 American Journal of Public Health, 1810-19 (2003), available at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1448057/#r17 (accessed December 22, 2019). This Brief relies upon the Aries paper extensively

4

As of the 950s, ACOG's contribution to public debate about abortion was based solely upon medical science. Dr. Duncan Reid of Harvard Medical School argued that "the medical profession should not become actively involved in debates about social mores. . . . [T]he emergence of abortion and sterilization as political issues would challenge the scientific basis on which physicians' decisions were based. Reid said, 'If it [abortion] becomes a social problem then the medical profession has to settle the social problem, and I think we, as doctors, are placed in a position where we do not belong.' "[9]

Dr. Reid correctly identified the core  problem of ACOG's current abortion advocacy: Elective abortion exists to solve a social problem, not a medical one.

The philosophical bent of some key members in the ACOG leadership in the 1960s caused these members look for ways to use ACOG to advocate for elective abortion on demand. By utilizing an expansive definition of "health," the pro-abortion ACOG leaders began to make subtle changes in the College's abortion policy.[10] These changes were invisible to the common ACOG member, who was not privy to the deliberations of ACOG Committees.

Pro-abortion members on ACOG's Standards Committee unilaterally changed the  criteria for therapeutic abortions.[11]  In  contrast to the 1959  Manual of Standards in Obstetric-Gynecologic Practice, which permitted  abortion  only  "where  the  death  of  the mother might reasonably be  expected to  result from natural  causes, growing out  of or  aggravated by  the pregnancy," the 1968 Report of the Committee to Study Liberalization  of  the  Laws   Governing Therapeutic Abortion declared that  "therapeutic" abortions were permissible "when

---

because it was based on the  ACOG archives, transcripts of Executive Board meetings, videotaped oral  histories, and  interviews with physicians active with ACOG.  Dr. Aries received support from ACOG  to  perform her  research.

[9] ACOG, Item 6.2.13   Report of Therapeutic Abortion and Sterilization Committee, Transcript of Executive Board Meeting, November 1956:1,  see Aries, supra at 1813.
[10] See Aries, supra at 1814-15.
[11] See Aries, supra at 1815.

continuation of the  pregnancy may threaten the  life of the  woman or seriously impair her health"[12] (emphasis added). The 1968 draft provided for the first time: "In determining whether or not there is such risk to health, account may be taken of the patient's total environment, actual or reasonably foreseeable" (emphasis added).[13]

By altering the definition of "therapeutic" with a novel "health" component, one so broad as to encompass any and every possible elective reason for desiring an abortion, ACOG leadership, without debate from the membership, had reversed its adherence to the Hippocratic Oath, and now allowed for elective abortion. This wording change in the ACOG Standards also set the stage for adoption of a similar "health" criterion later used in *Doe v. Bolto*n, 410 U.S. 179, 192 (1973) ("[T]he medical judgment may be exercised in the  light of all factors – physical, emotional, psychological, familial, and the woman's age – relevant to  the wellbeing of the  patient. All these factors may relate to health").

The *Doe* "health" exception allowed for no meaningful limitations   upon elective abortion in the post-Roe era, since all factors can be related to "health." Despite these changes, the ACOG policy required two opinions that the abortion was in fact "medically indicated" and that abortions "be performed only in a hospital accredited by the Joint Commission on Accreditation of Hospitals."[14]

 The swift evolution of ACOG's guidelines mirrored that of the growing political push for wider access to abortion. Indeed, the politics of abortion continued to change, based not on medical grounds but on the assertion of a woman's right to choose. When the state of New York

---

[12] ACOG, Item 6.39 Report of the Committee to Study Liberalization of the Laws Governing Therapeutic Abortion: Transcript of Executive Board Meeting, 9 May 1968:4, see Aries, supra at 1815.

[13] ACOG, Item 6.39 Report of the Committee to Study Liberalization of the Laws Governing Therapeutic Abortion: Transcript of Executive Board Meeting, 9 May 1968:4, see Aries, supra at 1815.

[14] ACOG, Item 6.39 Report of the Committee to Study Liberalization of the Laws Governing Therapeutic Abortion: Transcript of Executive Board Meeting, 9 May 1968:4,  cited  in Aries,  supra at 1816.

legalized abortion in 1970, ACOG leadership responded by announcing – again without any input from membership – that its policies for "therapeutic abortions" would now apply to "elective abortions."[15]

ACOG continued to demand pre-approval from two doctors and that abortions be performed in accredited hospitals.

By 1971, ACOG's leadership consisted of a narrowly pro-abortion majority. At that point, ACOG began advocating for liberalized abortion laws, again without engaging in any open discussion with its membership about elective abortion.[16] In 1971, ACOG approved a pro-abortion amicus brief in Doe v. Bolton.[17] Dr. Richard Schmidt, a member of ACOG's Executive Board and one of the founding members of AAPLOG, protested the positions taken by ACOG in its amicus brief in Bolton. In particular, ACOG as an organization had never to that point declared that "a medically safe abortion should be an open option available to any woman who does not want to have the child."[18]

Dr. Schmidt wrote in a letter to ACOG's president:

> I can find nothing in any statement of College policy, nor do I know of any consideration in any of the discussions leading to these policies, relating to the constitutional rights of a mother or to the nature of, or to the status of the fetus. On the contrary, the tendency has been to by-pass these questions as matters of personal conviction. . . . Again, my point is not the relative merits

---

[15] ACOG, Item 5 Report of Committee on Obstetric-Gynecologic Practice, Minutes of the Executive Board Meetings, 1967-1970, 17 April 1970:2, cited in Aries, supra at 1816.

[16] See Aries, supra at 1816 ("Three months after ACOG's Executive Board reaffirmed its original abortion policy, advocates for providing more liberal access to abortion found an administrative means to revise ACOG's policy without a divisive debate at the Executive Board or annual business meeting").

[17] See Aries, supra at 1817 ("In June 1971, the [ACOG] Executive Committee approved President Clyde Randall's endorsement of the amicus curiae brief filed by the James Madison Constitutional Law Institute in the case of Doe v. Bolton").

[18] ACOG, Item 4.1 Report of President, Transcript of Executive Board Meeting, 3-4 December 1971:8-31, see Aries, supra at1817.

of these questions, but rather that they are inherent in the issue and have never been considered by the College.[19]

Opposition among its members notwithstanding, in 1972 ACOG published "Behavior Aspects of Abortion," extolling abortion on demand, and "The Management of Sexual Crises in the Female," advocating abortions for minors without parental consent.[20] Thousands of obstetricians and gynecologists, including some within ACOG leadership, disagreed with ACOG's departure from its tradition of safeguarding both the mother and her unborn baby.[21]

Within a week after this Court decided Doe and Roe, dissenting ACOG members organized to form a pro-life contingent. Thirty-one obstetricians and gynecologists attended the founding of the American Association of Pro-Life Obstetrician and Gynecologists ("AAPLOG") in 1973. With several thousand members, AAPLOG functioned as the largest "special interest group" within ACOG for 40 years, from 1973 until 2013, until the College discontinued the "special interest group" designation.[22]

From the 1970s until now, ACOG has developed an increasingly radical abortion advocacy, leading to the formation of the American Congress of Obstetricians and Gynecologists, a 501(c)(6) lobbying organization, in 2010.[23] The Congress also operates under the acronym ACOG, which confuses the 501(c)(3) College with the 501(c)(6) Congress.

---

[19] Letter from R. Schmidt to C. Randall, President, ACOG, personal files of R. Schmidt, 7 September 1971, cited in Aries, supra at 1817.

[20] https://aaplog.org/about-us/history-of-aaplog/ (accessed May 12, 2023).

[21] https://aaplog.org/about-us/history-of-aaplog/ (accessed May 12, 2023).

[22] https://aaplog.org/about-us/history-of-aaplog/ (accessed May 12, 2023).

[23] American College of Obstetricians and Gynecologists – American Congress of Obstetricians and Gynecologists: What We Are and The Reasons Why, PowerPoint presentation (2015), avail- able at: https://web.archive.org/web/20150604164111/http://www. acog.org/-/media/Departments/District-and-Section-Activities/C3 C6info.pdf ?la=en (accessed May 12, 2023).

Because ACOG does not separate the funding of the College from that of the Congress, many AAPLOG members, most of whom were still ACOG members at the time, protested the use of their funds for pro-abortion lobbying.[24]

However, ACOG stated categorically that it would not allow members to designate their funds for the College alone, or prevent their funds from supporting the pro-abortion lobbying of the Congress.[25] Thus all ACOG members are forced to support the Congress financially, even if they do not agree with its pro-abortion advocacy.

In 1996, the U.S. Congress was working on legislation to ban the gruesome procedure called "intact D&X" (partial birth abortion). President Clinton refused to sign any bill that did not contain the expansive Doe "health" exception. A select committee of ACOG initially prepared a statement saying that ACOG "could identify no circumstances under which this procedure . . . would be the only option to save the life or preserve the health of the woman."

ACOG sent a pre-publication draft of the paper to the White House, where a senior staffer suggested that another sentence be added: "An intact D+X, however, may be the best or most appropriate procedure in a particular circumstance to save the life or preserve the health of a woman, and a doctor should be allowed to make this determination." ACOG included this political proviso in the position paper it released to the public.[26]

Three years later, this Court decided Stenberg v. Carhart, which declared Nebraska's ban on partial- birth abortion unconstitutional. The Court's opinion quoted verbatim the passage from the ACOG statement containing the White House staffer's insertion:

---

[24] Email correspondence of Ralph Hale, M.D., F.A.C.O.G. and Allan T. Sawyer, M.D., personal files of AAPLOG president Donna Harrison (February 2009).
[25] ACOG PowerPoint, supra n. 22.
[26] "The War on Science," National Review, June 29, 2010, available at: https://www.nationalreview.com/corner/war-science-yuval-levin/ (accessed May 12, 2023).

The District Court also noted that a select panel of the American College of Obstetricians and Gynecologists concluded that D&X "may be the best or most appropriate procedure in a particular circumstance to save the life or preserve the health of a woman." Stenberg v. Carhart, 530 U.S. 914, 932 (2000).

ACOG had successfully passed off a political statement as a scientific one. In November 2007, ACOG published Ethics Statement No. 385, which required all OB-GYNs either to perform or refer for elective abortions.[27] The Statement provided that OB-GYNs who did not perform elective abortions must relocate their practices near someone who did. This coercive statement was followed in January 2008 by a revision of the American Board of Obstetrics and Gynecology's ("ABOG") Maintenance of Certification Bulletin, which made disobedience grounds for revocation of board certification:[28]

   5.   Revoked Certificate

( . . . )

   b.    Cause in this case may be due to, but is not limited to, licensure revocation by any State Board of Medical Examiners, violation of ABOG or ACOG rules and/or ethics princi- ples. . . .

( . . . )

REVOCATION OF DIPLOMA OR CERTIFICATE

---

[27] "The Limits of Conscientious Refusal in Reproductive Medicine," ACOG Committee Opinion No. 385 (2007), available at: https://www.acog.org/-/media/Committee-Opinions/Committee-on-Ethics/co385.pdf?dmc=1&ts=20170906T1956212396 (accessed May 12, 2023).
[28] "Bulletin for 2008: Maintenance of Certification," The American Board of Obstetrics and Gynecology (Nov. 2007), 10, 31, available at: http://www.cultureoflife.org/wp-cont May 12, 2023December 20, 2019).

2.     Consequences of License Revocation, Restriction or Surrender

( . . . )

f.   [T]he   physician shall  have  violated any  of the "Ethical Considerations in the Practice of Obstetrics and Gynecology" currently published by the American College  of Obstetricians and   Gynecologists and  adhered to by the Board.

Ethics Statement No. 385  put  Hippocratic physicians at real legal  and professional risk, because most  hospitals require board certification for hospital privileges, and   accusations of unethical behavior can  result in revocation of state licensure. ACOG's  overreach was met  with universal protest from Hippocratic physician organizations including AAPLOG,  the  Catholic Medical Association, and  the  Christian Medical and  Dental Association. Their  protests  to  the   Department of Health and  Human Services resulted in the  promulgation  of the HHS  Conscience Rules,[29] later rescinded by the  Obama Administration.[30]

In  November 2014,  ACOG published its  Committee Opinion No.  613, "Increasing Access  to Abortion," which stated, in pertinent part:

The American College  of Obstetricians and Gynecologists . . . is  committed to  improving access to abortion. Access  to abortion is threatened by  state and  federal government

---

[29] Lara Cartwright-Smith and  Sara Rosenbaum, The Elusive Quest  for Balance: the 2008 HHS Regulation Prohibiting Discrimination Against Health-Care Workers Based on Religious Beliefs, 124  Public Health Reports 603-06  (2009);  see also "HHS  Secretary Calls on Certification Group to Protect Conscience Rights," HHS Press Office (2008),  available at:  https://aul.org/2008/03/14/ hhs-secretary-calls-on-certification-group-to-protect-conscience- rights/ (accessed December 20, 2019);  see also https://aaplog.wildapricot.org/resources/Documents/AAPLOG%20formal%20 complaint%20with%20HHS%20against%20ACOG.pdf (accessed May 12, 2023).
[30]  "Obama administration replaces controversial 'conscience' regulation for health-care workers," The Washington Post, February 19, 2011, available at: https://www.washingtonpost.com/national/ health-conscience-rule-replaced/2011/02/18/AB7s9iH_story.html (accessed May 12, 2023).

restrictions, limitations on public funding for abortion services and training, stigma violence against abortion providers and a dearth of abortion providers. Legislative restrictions fundamentally interfere with the patient-provider relationship and decrease access to abortion for all women and particularly for low-income women and those living long distances from health care providers. The American College of Obstetricians and Gynecologists calls for advocacy to oppose and overturn restrictions, improve access, and mainstream abortion as an integral component of women's health care.[31]

This is not a statement of medical science, but of political advocacy.

---

[31] "Increasing Access to Abortion," ACOG Committee Opinion No. 613 (2014), available at: https://www.acog.org/-/media/ Committee-Opinions/Committee-on-Health-Care-for-Underserved- Women/co613.pdf ?dmc=1&ts=20191221T0422278366 (accessed May 12, 2023).

## II.    IN EVERY MAJOR ABORTION CASE, THE AMERICAN COLLEGE OF OBSTETRICIANS AND GYNECOLOGISTS HAS CONSISTENTLY ARGUED AGAINST ANY LIMITATION OF ABORTION.

ACOG's shift from a medical organization opposed to abortion to a pro-abortion advocacy organization was invisible to the outside world. As a result, ACOG has often been cited as the principal medical authority on women's medicine.[32] This Court has cited ACOG's abortion policies and guidelines as examples of medical standards.[33]

"But just because a purported expert says something does not make it so." *Glossip v. Gross*, 135 S.Ct.2726, 2786 (2016) (Sotomayor, J., dissenting). To the extent ACOG's positions are political rather than scientific, such reliance on the College was misplaced.

It is the substance of an assertion that makes it "scientific knowledge," not the identity of the person making the claim. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 590 (1993) ("The adjective

---

[32] See, e.g., Brief of Amici Curiae, 52 Members of Congress in Support of Planned Parenthood Federation, Inc., et al., and Motion for Leave to File Brief Out of Time in Support of Respondents LeRoy Carhart, M.D., et al., In Related Case No. 05-380, *Gonzales v. Planned Parenthood Federation of America, Inc.*, 2006 WL 2736635, at 6. See also Brief of Amici Curiae American Association of Pro-Life Obstetricians and Gynecologists (AAPLOG), Senator Tom Coburn, M.D., Congressman Charles Boustany, Jr., M.D., Congressman Michael Burgess, M.D., Congressman Phil Gingrey, M.D., Congressman Dave Weldon, M.D., C. Everett Koop, M.D., Edmund D. Pellegrino, M.D. in Support of Petitioner, *Gonzales v. Carhart*, 550 U.S. 124 (2007), 2006 WL 1436688, at 6. See also Brief for Planned Parenthood Federation of America and Physicians for Reproductive Health as Amici Curiae Supporting Respondents, *National Institute of Family and Life Advocates v. Becerra*, 138 S.Ct. 2361 (2018), 2018 WL 111003, at 20 ("Moreover, the statement itself lacks scientific support and is opposed by major medical organizations like the American College of Obstetricians and Gynecologists").
[33] *Stenberg v. Carhart*, 530 U.S. 914, 916 (2000). See also *Simopoulos v. Virginia*, 462 U.S. 506, 517 (1983), and *Planned Parenthood Ass'n of Kansas City, Mo., Inc. v. Ashcroft*, 462 U.S. 476, 495-96 (1983) (Blackmun, concurring in part).

'scientific' implies a grounding in the  methods and  procedures of science. Similarly, the  word 'knowledge' con- notes  more   than subjective belief   or   unsupported speculation").

ACOG's amicus brief in Doe v. Bolton, 410 U.S. 179 (1973), argued that the  statutory "saving life" test was vague, because the  words  "save" and  "life" themselves were  vague:

The word "save" has  a broad range of possible meanings.  The Random  House  Dictionary lists, inter  alia, "to rescue from danger or possible  harm, . . . to avoid  . . . the  waste of, . . . to treat  carefully in order to  reduce  wear, fatigue, etc. . . . Life may  mean the vitality, the joy, the  spirit of existence, as  well  as  merely not dying.[34]

 The argument was a complete contradiction of ACOG's own  practice guidelines issued just 12 years earlier, when ACOG  advised that therapeutic abortion was only  indicated where necessary to save  the life of the mother.[35]

Certain dissenters within ACOG  filed  their  own brief  – a thorough medical review of the  biological humanity of the  unborn child,  whom they considered a patient under their care  along  with the  mother, as well as the  risks of abortion to women, with a bibliography of 150+ medical citations.[36]

Other than brief polling of ACOG members in the 1970s  regarding wording for "therapeutic abortion" (to which only  65% of the membership responded, out  of which only 50% approved of the expanded "health" definition), ACOG  members have not  been  polled

---

[34] Brief for American College of Obstetricians and Gynecologists, et al., as Amici Curiae, *Doe v. Bolton*, 410 U.S. 179 (1973), 1971 WL 128053 (U.S.) at 5-6.

[35] American College of Obstetricians and Gynecologists (ACOG),  Manual of Standards in Obstetric-Gynecologic Practice (Chicago: ACOG, 1959),  35.

[36] Motion and Brief Amicus Curiae of Certain Physicians, Professors and Fellows of the  American College  of Obstetrics and Gynecology in Support of Appellees, *Doe v. Bolton*, 410 U.S.  179 (1973), 1971 WL 128057 at 65-79.

14

about the extreme pro-abortion positions the College has taken in its amicus briefs in abortion cases.[37]

Since 1973, ACOG has entered the fray in every major abortion case, always in favor of the most extreme position advancing elective abortion:

•     In *Roe v. Wade*, 410 U.S. 113 (1973), the College argued against the Texas abortion statute, asserting that it unconstitutionally interfered with the physician's right to practice medicine and deprived patients of their right to medical treatment, a sharp departure from ACOG's 1970 position that elective abortion was not a medical issue but a social issue.[38]

•     In its amicus brief in *Hartigan v. Zbaraz*, 484 U.S. 171 (1987), ACOG argued against a 24-hour waiting period as well as parental notification requirement for minors seeking abortions, asserting that the only interest served by the Illinois statute at issue was to discourage pregnant minors from choosing abortion.[39]

Waiting periods and parental consent are standard of care for other comparable surgical procedures on minors, because it is recognized in both the legal and medical fields that adolescents do not have the developmental maturity to make com- plex, much less irrevocable, decisions.[40]

---

[37] See Aries, supra at 1815.

[38] See Aries, supra at 1816.

[39] See, e.g., Brief of Amici Curiae the American College of Obstetricians and Gynecologists, the American Academy of Pediatrics and the American Medical Women's Association in Support of Appellees, *Hartigan v. Zbaraz*, 484 U.S. 171 (1987), 1987 WL 881100.

[40] C.A. Hartley and L.H. Somerville, The Neuroscience of Adolescent Decision-Making, 5 Current Opinions on Behavioral Science, 108-15 (2015), available at: https://www.ncbi.nlm.nih.gov/ pmc/articles/PMC4671080/ (accessed May 12, 2023); see also "Teen Brain: Behavior, Problem Solving and Decision Making," American Academy of Child & Adolescent Psychiatry, Facts for Families, September 2016, available at: https://www.aacap.org/ AACAP/Families_and_Youth/Facts_for_Families/FFF-Guide/The- Teen-Brain-Behavior-Problem-Solving-and-Decision-Making-095. aspx (accessed May 12,

•   In its amicus brief in *Webster v. Reproductive Health Services*, 492 U.S. 490 (1989), ACOG argued for public funding for abortion.[41]

•   In *Ohio v. Akron Center for Reproductive Health*, 497 U.S. 502 (1990), the College argued against a mandatory parental notification law.[42]

•   In *Rust v. Sullivan*, 500 U.S. 173 (1991), ACOG's amicus brief advocated federal funding for family planning clinics' abortion-related activities, claiming that otherwise the "fundamental right of patients in Title X programs to choose to terminate their pregnancies" would be burdened.[43]   This was a political, not a medical argument.

•   In *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833 (1992), ACOG argued against Pennsylvania's spousal notification, informed consent, parental consent, medical emergency, and disclosure requirements as unconstitutional.[44]

Again, these were not medical, but philosophical arguments.

•   I*n Schenck v. Pro-Choice Network of Western New York*, 519 U.S. 357 (1997), ACOG joined with the National Abortion Federation and Planned Parenthood Federation of America as amici curiae, arguing in support of an injunction prohibiting sidewalk counselors within buffer zones outside abortion clinics.[45]

---

2023).

[41] See, e.g., Brief of the American College of Obstetricians and Gynecologists, et al., as Amici Curiae in Support of Appellees, *Webster v. Reproductive Health Services*, 492 U.S. 490 (1989), 1989 WL 1127737.

[42] See, e.g., Brief of the American College of Obstetricians and Gynecologists, et al., as Amici Curiae in Support of Petitioners, Rust v. Sullivan, 500 U.S. 173 (1991), 1990 WL 10012642.

[43] See, e.g., Brief of Amici Curiae the American College of Obstetricians and Gynecologists, the American Academy of Pediatrics and the American Medical Women's Association in Support of Appellees, *Hartigan v. Zbaraz*, 484 U.S. 171 (1987), 1987 WL 881100.

[44] See, e.g., Brief of the American College of Obstetricians and Gynecologists, et al., as Amici Curiae in Support of the Petitioners, *Planned Parenthood of Southeastern Pennsylvania v. Case*y, 505 U.S. 833 (1992), 1992 WL 12006402.

[45] See, e.g., Brief for the American College of Obstetricians and Gynecologists,

- In *Stenberg v. Carhart*, 530 U.S. 914 (2000), ACOG again filed a joint amici brief with the National Abortion Federation, as well as Physicians for Reproductive Choice, arguing in opposition to Nebraska's ban on partial-birth abortion.[46]

- In *Hill v. Colorado*, 530 U.S. 703 (2000), ACOG argued in support of a 100-foot buffer zone outside abortion clinic.[47] Again, this was not a medical, but a philosophical argument.

- In its joint amici brief with the American Medical Association in *Ayotte v. Planned Parenthood of Northern New England*, 546 U.S. 320 (2006), ACOG made the political argument, without scientific justification, that parental notification before a minor undergoes an abortion would "significantly jeopardize" her health, "im- pose inappropriate ethical and practical burdens on physicians," and cause com- plications in any minors that "require im- mediate abortions."[48]

- In *Gonzales v. Carhart*, 550 U.S. 124 (2007), the College filed an amicus brief opposing the federal ban on the brutal partial birth abortion method – which it exclusively and euphemistically referred to as "intact D&E" – asserting without any scientific justification whatsoever that partial birth abortion had significant safety benefits, was necessary to prevent serious harm, and was safest for women with certain conditions.[49] ACOG also asserted that "a medical

---

the National Abortion Federation, and Planned Parenthood Federation of America as Amici Curiae in Support of Respondents, *Schenck v. Pro-Choice Network of Western New York*, 519 U.S. 357 (1997), 1996 WL 365807.

[46] See, e.g., Brief of Amici Curiae American College of Obstetricians and Gynecologists, American Medical Women's Association, National Abortion Federation, Physicians for Reproductive Choice and Health, and American Nurses Association in Support of Respondent, *Stenberg v. Carhart*, 530 U.S. 914 (2000), 2000 WL 340117.

[47] Brief of the American College of Obstetricians and Gynecologists and the American Medical Association as Amici Curiae in Support of Respondents, *Hill v. Colorado*, 530 U.S. 703 (2000), 1999 WL 1186250 at 6.

[48] Brief of the American College of Obstetricians and Gynecologists, et al., as Amici Curiae in Support of Respondents, *Ayotte v. Planned Parenthood of Northern New England*, 546 U.S. 320 (2006), 2005 WL 2646471 at 5-6.

[49] Brief of the American College of Obstetricians and Gynecologists as Amicus

consensus recognizes that intact D&E offers health benefits," despite the fact that ACOG's own statement revealed that ACOG could identify no situations in which intact D&E would be the best or only option – i.e., there were no health benefits.[50] (AAPLOG and numerous other physicians as amici urged the exact opposite in their briefs.[51])

•    In *McCullen v. Coakley*, 573 U.S. 464 (2014), ACOG filed a brief asserting that "induced abortion does not lead to psychological harms" in support of an act creating buffer zones surrounding abortion clinics.[52]

This contradicted well-established scientific knowledge about long-term psychological harm in the majority of women who present to abortion clinics with known risk factors for adverse psychological outcomes.[53]

•    In *Whole Woman's Health v. Hellerstedt*, 136 S.Ct. 2292 (2016), ACOG argued against the Texas admitting privileges requirement,

---

Curiae Supporting Respondents, *Gonzales v. Carhart*, 550 U.S. 124 (2007), 2006 WL 2867888 at 10-13.

[50] "The War on Science," National Review, June 29, 2010, available at: https://www.nationalreview.com/corner/war-science-yuval-levin/ (accessed May 12, 2023).

[51] See, e.g., Brief of Amici Curiae American Association of Pro-Life Obstetricians and Gynecologists, et al., in Support of Petitioner, *Gonzales v. Carhart*, 550 US 124 (2007), 2006 WL 1436688. See also, e.g., Brief of Amici Curiae Congressman Ron Paul and Association of American Physicians and Surgeons in Support of Petitioner, *Gonzales v. Carhart*, 550 U.S. 124 (2007), 2006 WL 1436689. See also, e.g., Brief for Amici Curiae Jill Stanek and the Association of Pro-Life Physicians in Support of Petitioner, *Gonzales v. Carhart*, 550 U.S. 124 (2007), 2006 WL 2281977.

[52] Brief of Amici Curiae American College of Obstetricians and Gynecologists, American Medical Association, and Massachusetts Medical Society in Support of Respondents, *McCullen v. Coakley*, 573 U.S. 464 (2014), 2013 WL 6213247 at 25.

[53] David C. Reardon, "The Abortion and Mental Health Controversy: A Comprehensive Literature Review of Common Ground Agreements, Disagreements, Actionable Recommendations, and Research Opportunities," SAGE Open Med. (October 29, 2018), available at: https://journals.sagepub.com/doi/full/10.1177/2050312118807624 (accessed May 12, 2023).

despite the fact that admit- ting privileges for ambulatory surgical facilities performing surgical procedures comparable to abortion were required for accreditation as well as for Medicaid reimbursement by the Centers for Medicare & Medicaid Services. Although surgical abortion procedures require anesthesia as well as the insertion of instruments into the uterine cavity, and although abortion occasionally results in perforation through the uterus into the abdominal cavity, necessitating open surgery to correct bowel and bladder damage, ACOG argued that "[a]bortion procedures . . . do not require an incision into a woman's body and do not entail ex- posure of sterile tissue to the external environment, and performance of such procedures does not require a hospital- based or related out-patient setting."

• In *National Institute of Family and Life Advocates v. Becerra*, 138 S.Ct. 2361 (2018), ACOG – again joining with the National Abortion Federation as amici – defended California's Reproductive FACT Act, which forced pro-life pregnancy care centers to post a sign telling women how to obtain free or low-cost abortion from the state government. ACOG sided with California in the attempt to target those with pro-life viewpoints, in violation of their free speech rights, claiming that any delay in obtaining an abortion posed health risks to pregnant women, and that any such delay made it more likely that some women would be denied abortions.[54]

It is no coincidence that all of the supposedly "authoritative medical data" that ACOG presents favors the practice of abortion in every instance that this Court considers whether to limit it. A thorough review of ACOG's advocacy efforts did not reveal a single in- stance where the organization recognized the plurality of opinion about abortion within the ACOG membership or supported the limitation of abortion in any way, for any reason.

---

[54] Amici Curiae Brief of the American Academy of Pediatrics, California, et al., in Support of Respondents, *National Institute of Family and Life Advocates v. Becerra*, 138 S.Ct. 2361 (2018), 2018 WL 1110040 at 8.

As shown above, ACOG has not formulated its pro-abortion advocacy as a result of member input or scientific inquiry, but rather as a top-down imposition of the political opinions of ACOG leadership. AAPLOG would respectfully submit that ACOG's amicus briefs should be interpreted by the Court for what they are: political advocacy consistently favoring abortion.

ACOG's arguments should not be understood to communicate the opinion of its members as professional obstetricians and gynecologists, because unlike the radical pro-abortion position presented in ACOG's legal advocacy, ACOG's members are not monolithic in their views on abortion, and 85% of OB-GYNs in the U.S. do not perform elective abortions. AAPLOG was formed precisely because ACOG did not represent the views of thousands of pro-life obstetricians and gyne-cologists across the country.

In sum, because the American College of Obstetricians and Gynecologists zealously advocates for unlimited elective abortion as a political position, and for complete self-regulation by the practitioner of abortion as a policy matter, the Court should not rely on ACOG as a neutral authority on the scientific data or the medical literature.

CONCLUSION

Dr. Allan Sawyer—former Member of ACOG and past-President of AAPLOG—respectfully submits that this Court should read ACOG's amicus brief  not as an  authoritative recitation of settled science, but as  a partisan advocacy paper on behalf of a mere subset of American obstetricians and  gynecologists. The Court should affirm the lower court's injunction in full.

Respectfully submitted,

/s/ David Hogue

_____

HOGUE, CORBITT & WARD, PLC
700 S. German Lane, Suite No. 104
Conway, AR 72034
(501) 255-0112
dh@hoguecorbittward.com

*Counsel for* Amici Curiae *Dr. Allan Sawyer, former member of ACOG and past president of AAPLOG*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of May, 2023, an electronic copy of the foregoing brief was filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit using the appellate CM/ECF system, that all parties to the case are registered CM/ECF users, and that service will be accomplished by the appellate CM/ECF system.

/s/ David Hogue

_____

David Hogue

## **CERTIFICATE OF COMPLIANCE**

1.    This petition complies with the type-volume limitations of Federal Rules of Appellate Procedure 27(d)(2) and 29(a)(5) because it contains 5,184 words, as determined by the word-count function of Microsoft Word, excluding parts of the brief that are exempted from the word-count requirement by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2.

2.    This brief complies with the typeface requirements of Federal Rules of Appellate Procedure 29(a)(4) and 32(a)(5) and the typestyle requirements of Federal Rules of Appellate Procedure 29(a)(4) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point for text, and 12-point for footnotes, in Century Schoolbook font.

/s/ David Hogue

_____

David Hogue

Dated: May 12, 2023