# United States Court of Appeals
# for the Fifth Circuit

No. 23-10362

United States Court of Appeals
Fifth Circuit
**FILED**
September 16, 2024
Lyle W. Cayce
Clerk

ALLIANCE FOR HIPPOCRATIC MEDICINE; AMERICAN ASSOCIATION OF PRO-LIFE OBSTETRICIANS & GYNECOLOGISTS; AMERICAN COLLEGE OF PEDIATRICIANS; CHRISTIAN MEDICAL & DENTAL ASSOCIATIONS; SHAUN JESTER, D.O.; REGINA FROST-CLARK, M.D.; TYLER JOHNSON, D.O.; GEORGE DELGADO, M.D.,

*Plaintiffs—Appellees*,

versus

U.S. FOOD & DRUG ADMINISTRATION; ROBERT M. CALIFF, *Commissioner of Food and Drugs*; JANET WOODCOCK, M.D., *in her official capacity as Principal Deputy Commissioner, U.S. Food and Drug Administration*; PATRIZIA CAVAZZONI, M.D., *in her official capacity as Director, Center for Drug Evaluation and Research, U.S. Food and Drug Administration*; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; XAVIER BECERRA, *Secretary, U.S. Department of Health and Human Services*,

*Defendants—Appellants*,

versus

DANCO LABORATORIES, L.L.C.,

*Intervenor—Appellant*.

_____

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 2:22-CV-223

_____

ON REMAND FROM
THE SUPREME COURT OF THE UNITED STATES

Before Elrod, Ho, and Wilson, *Circuit Judges.*

Per Curiam:

    This case is before us on remand from the Supreme Court, which reversed our judgment and held that the Plaintiffs lack standing to challenge several FDA actions. *FDA v. All. for Hippocratic Medicine*, 602 U.S. 367, 372, 396–97 (2024). Accordingly, we VACATE the district court's stay order in its entirety and REMAND for further proceedings consistent with the Supreme Court's opinion. The Clerk is directed to issue the mandate forthwith.

No. 23-10362

James C. Ho, *Circuit Judge*, concurring:

The Supreme Court can adjust or amend its own precedents at its discretion. Inferior courts have no such luxury. The Supreme Court has repeatedly instructed us to follow its precedents, whether we agree with them or not—and whether we expect the Court itself to follow them or not. *See, e.g.*, *Rodriguez de Quijas v. Shearson/Am. Exp.*, 490 U.S. 477, 484 (1989); *Agostini v. Felton*, 521 U.S. 203, 237 (1997); *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997); *United States v. Hatter*, 532 U.S. 557, 567 (2001).

So we'd be defying the Court's express command if we decided cases based on anticipated changes to its precedents. It's up to the Court to modify or overrule its own precedents, as it alone deems appropriate—and to reverse us when it does. *See, e.g.*, *Jackson Women's Health Org. v. Dobbs*, 597 U.S. 215 (2022), *rev'g* 945 F.3d 265 (5th Cir. 2019).

That's exactly what happened here. Both the district court and this court applied governing Court precedent to determine whether Plaintiffs have standing to bring this suit. We all agreed that they do. No member of this court disagreed—not on the motions panel, the merits panel, or the en banc court. *See Alliance for Hippocratic Med. v. FDA*, 2023 WL 2913725 (5th Cir. 2023); *Alliance for Hippocratic Med. v. FDA*, 78 F.4th 210 (5th Cir. 2023).

The Supreme Court has now reversed. *See FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367 (2024). In so doing, the Court reaffirmed two long established principles of standing on which members of this court previously relied in this case.

First, the Court reaffirmed that "a conscience injury . . . constitutes a concrete injury in fact for purposes of Article III," and that "doctors would have standing to challenge a government action that likely would cause them to provide medical treatment against their consciences." *Id.* at 387.

No. 23-10362

The Court reversed, but only because, "*as the Government explains*, federal conscience laws definitively protect doctors from being required to perform abortions or to provide other treatment that violates their consciences." *Id.* (emphasis added).

There's a simple reason why our court—unlike the Supreme Court—was uncomfortable trusting federal conscience laws to protect doctors: The Government has taken precisely the *opposite* position on federal conscience laws in other cases and in other courts—including ours.

In our court, the Government insisted that federal law "*requires doctors to offer abortion care* to individuals when that care is necessary stabilizing treatment for an emergency medical condition." Brief for Appellants, *Texas v. Becerra*, 2023 WL 3345254, *25 (5th Cir. 2023) (emphasis added). "When pregnant women come to a Medicare-funded hospital with an emergency medical condition, EMTALA *obligates the treating physician to provide stabilizing treatment, including abortion care*." *Id.* at *27 (emphasis added). "[P]ermitting physicians to refuse to provide care that they deemed 'medically or ethically inappropriate' directly conflicted with EMTALA's stabilization requirement." *Id.* at *26 (citing *In re Baby K*, 16 F.3d 590, 597 (4th Cir. 1994)).

But the Government switched positions before the Supreme Court. It "*disclaimed* that reading of EMTALA." *Alliance*, 602 U.S. at 389 (emphasis added). It now believes that "EMTALA does *not* 'override an individual's doctor's conscience objections.'" *Id.* (emphasis added). It now agrees that "'[h]ospitals must accommodate doctors'" who have "conscience objections." *Id.*

Moreover, a representation by the Solicitor General to the Supreme Court carries greater weight than a statement by Government counsel before the inferior courts.

4

No. 23-10362

So the Court reversed because the Government reversed.[1]

Second, the Court also reaffirmed its longstanding directive to inferior courts to address novel questions of standing by analogizing the Court's precedents in other areas of the law—including environmental law. *See id.* at 384–85.

"Like 'most legal notions, the standing concepts have considerable definition from developing case law.' . . . [I]n 'many cases the standing question can be answered chiefly by comparing the allegations of the particular complaint to those made in prior standing cases.' . . . [A]ssessing standing 'in a particular case may be facilitated by clarifying principles or even clear rules developed in prior cases.'" *Id.* at 384 (quoting *Allen v. Wright*, 468 U.S. 737, 751–52 (1984)).

"Consistent with that understanding of how standing principles can develop and solidify, the Court has identified a variety of familiar circumstances where government regulation of a third-party individual or business may be likely to cause injury in fact to an unregulated plaintiff." *Id.* "When the government regulates parks, national forests, or bodies of water, for example, the regulation may cause harm to individual users." *Id.* at 385 (citing *Summers v. Earth Island Institute*, 555 U.S. 488, 494 (2009)).

*Summers* reaffirmed that "the mere esthetic interests of the plaintiff" is sufficient to establish standing. 555 U.S. at 494. The Court also invoked

---

[1] The Government also reversed itself in *Moyle v. United States*, 603 U.S. _ (2024). In the district court, the Government insisted that EMTALA "requires a physician to offer an abortion." Reply Memorandum in Support of Motion for a Preliminary Injunction at 6, *United States v. Idaho*, 623 F. Supp. 3d 1096 (D. Idaho 2022) (No: 1:22-cv-00329). But the Government again switched positions before the Supreme Court. *See* Brief for the Respondent, *Moyle v. United States*, 2024 WL 1298046, *17 (2024) ("EMTALA's stabilization obligation is imposed on 'hospitals,' not on 'individual providers'") (quotations omitted).

No. 23-10362

its decision in *Sierra Club v. Morton*, 405 U.S. 727 (1972). *See* 602 U.S. at 390 n.3. In *Sierra Club*, the Court noted that a plaintiff's "mere 'interest in a problem' . . . is not sufficient by itself to render [the litigant] 'adversely affected' or 'aggrieved.'" 405 U.S. at 739. But "[a]esthetic and environmental well-being, like economic well-being, are important ingredients of the quality of life in our society . . . deserving of legal protection through the judicial process." *Id.* at 734.

Civil rights groups, legal scholars, and the Justices themselves have all invoked the Supreme Court's environmental standing precedents in a variety of novel contexts. In *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), four Justices noted that citizens could claim "an aesthetic interest in viewing an accurate report" under the Fair Credit Reporting Act. *Id.* at 459 (Thomas, J., dissenting, joined by Breyer, Sotomayor, and Kagan, JJ.) (citing *Summers* and other environmental cases recognizing aesthetic injury). In *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), the Court granted standing to civil rights plaintiffs who asserted, *inter alia*, the "aesthetic benefits of interracial associations that arise from living in integrated communities free from discriminatory housing practices." *Id.* at 376. *See also* Heather Elliott, *Standing Lessons: What We Can Learn When Conservative Plaintiffs Lose Under Article III Standing Doctrine*, 87 Ind. L.J. 551, 585, 597–98 (2012) (courts should apply the same standing principles to environmentalists and pro-life litigants alike).

So it's no wonder that our earlier standing decisions in this case did not draw a single dissenting vote on our court. "[E]very member of our court agrees that we apply the same Article III principles whether you're black or white, Republican or Democrat, environmentalist or evangelical." *Jackson Mun. Airport Auth. v. Harkins*, 98 F.4th 144, 148 (5th Cir. 2024) (Ho, J., concurring).

No. 23-10362

\* \* \*

Establishing standing, of course, doesn't mean you're going to prevail on the merits. It just means that nothing in Article III of the Constitution requires us to close the courthouse doors to you.[2]

The Supreme Court has now held that Plaintiffs lack standing. I accordingly agree that we should remand this case to the district court for further proceedings consistent with the Court's decision.

---

[2] *See, e.g.*, *Jackson*, 98 F.4th at 148 (Ho, J., concurring) ("Standing is orthogonal to merits. . . . [W]e must always be careful not to conflate our views on one with our views on the other.").